IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RISEANDSHINE CORPORATION d/b/a RISE BREWING<br><br>            Plaintiff,<br><br>   vs.<br><br>PEPSICO, INC.<br><br>            Defendant. | CASE NO.: 1:21-cv-3198<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff RiseandShine Corp. d/b/a Rise Brewing ("Rise Brewing"), by and through its undersigned counsel, brings this action against Defendant PepsiCo, Inc. ("PepsiCo"), and in support thereof alleges as follows:

## NATURE AND BASIS OF THE ACTION

1.      Rise Brewing is a small but rapidly growing coffee company that, through hard work and innovation, developed, and now markets and sells throughout the United States, a full line of canned, shelf-stable nitro cold brew coffee drinks.

2.      Sold alongside other shelf-stable caffeinated drinks, Rise Brewing's RISE-branded products have gained a strong following among caffeine drinkers, and are particularly successful with millennial and Gen-Z consumers, as well as others who prefer the mellow taste of nitro cold brewed coffee over the more acidic, standard drip coffee.

3.      Unfortunately, Rise Brewing's hard-earned success is now being threatened by

PepsiCo, a marketplace giant with a well-documented history of misappropriating the rights of smaller, innovative brands.

4.     In this instance, three months ago PepsiCo launched its own RISE-branded caffeine drink to specifically target the morning coffee drinker, and positioned it to be sold alongside – and compete directly with – Rise Brewing's RISE-branded caffeine drinks.

5.     Rise Brewing contacted PepsiCo in an effort to resolve this dispute outside of the courts.  PepsiCo was dismissive of Rise Brewing's concerns, and refused to abandon any of its plans with respect to its infringing mark.

6.     Rise Brewing is an American success story, a business built on hard work, innovation, and a great tasting product that consumers have grown to love.  While Rise Brewing does not welcome this dispute, it cannot allow PepsiCo to destroy Rise Brewing's brand and the associated consumer goodwill through willful and reckless infringement of Rise Brewing's RISE marks.  Therefore, through this lawsuit, Rise Brewing chooses to rise and take a stand against PepsiCo's unlawful actions.

**A.     Plaintiff Rise Brewing and Its Success**

7.     Rise Brewing was founded in an East Village, New York apartment in 2014 by three childhood friends, Jarett McGovern, Grant Gyesky, and Justin Weinstein, along with their co-founder Hudson Gaines-Ross.  Having had enough of the chemical-laden, sugary, ready-to-drink coffee products on the store shelves, they sought to create something better, a new product that was responsibly sourced, environmentally friendly, and made from all organic ingredients.

8.     Rise Brewing's founders began experimenting with different beans and roasts. Rather than using traditional brewing techniques, they adopted a "nitro cold brew" process, which infuses nitrogen into the brewing process to give coffee a foamy, creamy texture, without the bitterness of typical drip coffees. Rise Brewing's first commercial product, available in large format

kegs similar to those used for beer, was sold at a popular Brooklyn restaurant.  Patrons of that restaurant enjoyed the product immensely, and contacted Rise Brewing to ask it to make its product available at office buildings in New York.

9.      Almost immediately, Rise Brewing's founders saw the potential for a *canned* nitro cold brewed product. Given that the available canned energy products were limited to either traditional energy drinks such as Monster Energy® and Red Bull®, or highly-sweetened ready-to-drink coffee drinks such as Starbucks Frappuccino®, Rise Brewing saw the need for a canned caffeine drink that did not have the chemicals, dairy, fat, and sugar associated with these available products.

10.     Rise Brewing began experimenting with nitrogen widgets, which are small plastic devices inside a can that store nitrogen.  As soon as you open the can, the widget releases bubbles, which rise to the top of the can or glass.  The widget creates the same cascade and smooth, creamy head that consumers enjoy from nitro cold brew coffee served on tap from a keg.

11.     Rise Brewing became the first brand in the United States to have a shelf-stable canned coffee product with a nitrogen widget that would require no refrigeration and thus enable easier transportation and storage of the product.

12.     Rise Brewing's founders did indeed fill a marketplace void, and its canned caffeine drinks were an instant success. Today, Rise Brewing sells tens of millions of dollars of its products, which  can be found in grocery stores, convenience stores, and other big box and online retailers across the country.

13.     Because Rise Brewing's RISE canned caffeine drinks are shelf-stable, they are sold on shelves alongside other shelf-stable canned energy drinks.

14.     Rise Brewing's products have expanded from the original nitro cold brew, and today

include several other canned caffeinated drinks, including an Earl Grey tea latte. Rise Brewing's products have also included citrus coffee products, *i.e.*, a blood orange coffee and a lemonade coffee. A sampling of Rise Brewing's product offerings sold under its RISE family of Marks (discussed below) are depicted in the image below.



15.     Rise Brewing's marketing targets all consumers, but the company runs specific marketing campaigns focusing on the athletic and wellness community, advertising its drinks as a source of energy to drive athletic performance. Given its specific focus on the athletic community, Rise Brewing has partnerships to promote its RISE-branded drinks with multiple Olympic sports teams, such as the USA Surf Team, USA Climb Team, and the US Ski & Snowboard Team. RISE-branded drinks are also stocked in the locker rooms of several major New York-area professional sports teams, including the New York Yankees, the New York Mets, and the New York Giants, as well as in MMA (mixed martial arts) facilities. Additionally, Rise Brewing was a sponsor of FOX Sports' 2020 college football season.

16.     In the years since its founding, Rise Brewing has been recognized with multiple

awards for its drinks.  Rise Brewing's nitro cold brew received the 2017 Best New Product award from *BevNET* and a 2018 Beverage Innovation of the Year award from *Beverage Industry*, two leading trade magazines. Rise Brewing also won a 2018 NEXTY Best New Organic Beverage award, administered by *New Hope Network*, a natural foods association.  And in 2019, Rise Brewing was awarded *People Magazine*'s Best Canned Coffee award for its canned nitro cold brew.

17.     As demonstrated in part by these awards, Rise Brewing has invested considerable time and expense in marketing and ensuring that its branding is recognizable to consumers.  It set out and achieved its mission to create a delicious, healthy caffeine drink, using all organic ingredients, and its brand has risen in popularity and renown since its humble beginnings.

18.     Rise Brewing's brand and hard-earned success is under an imminent threat by PepsiCo which, shortly before this complaint was filed, released its own RISE-branded caffeine drink that was designed to specifically target the morning coffee drinker, and is marketed as a morning caffeinated drink to replace ready-to-drink coffee drinks such as RISE.

**B.     PepsiCo's Long History of Being a Repeat Trademark Offender**

19.     On information and belief, PepsiCo was formed in 1965 with the merger of Pepsi-Cola Company and Frito-Lay, Inc. PepsiCo has since acquired numerous other companies, including Quaker Oats and Tropicana, and is now one of the largest food and beverage producers in the world. Upon information and belief, as of 2021, PepsiCo owns hundreds of brands, 23 of which are "billion dollar" brands, *i.e.*, brands with over a billion dollars of annual sales.

20.     When PepsiCo purchased the Gatorade line of products in the 2000s for billions of dollars, even then federal regulators recognized the monopoly that PepsiCo was solidifying in the beverage industry and the harm that could result. After squeaking by on a 2-2 vote after the Federal Trade Commission's antitrust investigation of PepsiCo's purchase of Gatorade's previous owner, Quaker Oats, commissioners Sheila F. Anthony and Mozelle W. Thompson warned that "PepsiCo's

acquisition of Quaker Oats is unlawful and contrary to the public interest. … As a result of the Commission's failure to act today, we believe that consumers of sports drinks and, indeed, all soft drinks will suffer the consequences."

21.     Those fears have come to pass in the ensuing decades, now most recently in PepsiCo's unlawful attempt to squeeze senior user Rise Brewing out of the market by launching its own infringing RISE-branded canned caffeine drink. Indeed, by adopting Rise Brewing's RISE Mark on its own canned caffeine drinks, PepsiCo's plan follows a well-established pattern— flooding the market with products bearing confusingly similar marks in order to cause consumers to confuse and improperly associate RISE with PepsiCo rather than Rise Brewing.

22.     PepsiCo's tactics, while unethical and unlawful, are not unfamiliar. Rather than fairly compete with brands it develops itself, PepsiCo has repeatedly demonstrated that it resorts to copying the ideas of its competitors and then uses its immense marketplace weight and nationwide distribution network to flood the market with its infringing products.

23.     For example, in 2006, PepsiCo was sued for copying the trade dress and product formulation of Glacéau's VitaminWater.  In that case, PepsiCo was accused of instigating deceptive and harmful marketing and sales practices in connection with the launch of its copycat product.  In response to these allegations, PepsiCo changed its packaging before the Court ruled on Glacéau's claims.

24.     In April of 2011, Polar Corp. obtained a preliminary injunction blocking PepsiCo from selling PepsiCo's frozen slush drink POLAR SHOCK as the product name was confusingly similar to that of Polar Corp.'s POLAR trademark.  Less than two months after that decision, PepsiCo settled the case.

25.     PepsiCo does not reserve its tactics for small competitors.  In 2011, PepsiCo faced

claims of trade dress misappropriation brought by Coca-Cola for the sale of PepsiCo's copycat Trop50 juice bottle design.   PepsiCo used a bottle that was alleged to be "virtually indistinguishable" from Coca-Cola's successful and well-known Simply Orange® orange juice trade dress.  PepsiCo settled the case less than six months after the complaint was filed.

26.      Most recently, approximately three months ago the United States District Court for the Southern District of Texas issued **_two_** nationwide temporary restraining orders to halt PepsiCo's rollout of its new Gatorade product that infringed a competitor's trade dress.  The allegations included "a deliberate attempt by PepsiCo and its agents to use deceptive tactics in the marketplace, and PepsiCo's outsized influence, to capitalize on the confusing similarity between [PepsiCo's product] and the [trademark owner's] ELECTROLIT branded beverages." *Laboratorios Pisa S.A. de C.V. v. PepsiCo, Inc.*, No. 7:21-cv-00062, D.I. 2-1, p. 28 (S.D. Tex. Feb. 18, 2021).

**C.      PepsiCo's Actions Are Causing "Reverse Confusion" in Violation of the Lanham Act**

27.      Trademark infringement is the unauthorized use of a trademark on or in connection with the sale of goods and/or services in a manner that is likely to cause confusion, deception, or mistake about the source of the goods and/or services, or as to an affiliation, connection, or association between the companies involved.

28.      In the traditional type of trademark infringement case, one sees a defendant, the "junior user" of the mark, enter the market with a trademark similar to the plaintiff's, the "senior user," causing consumers to believe the defendant or its products are associated with the plaintiff or its products. This is called "forward confusion."

29.      In a reverse confusion case, the consumer confusion goes the other way.  Because of PepsiCo's incredible market power and size, consumers are confused into believing that the Rise Brewing RISE drinks are associated or affiliated with, sponsored or endorsed by, or otherwise connected with PepsiCo and its "Mtn Dew RISE" product. This so called "reverse confusion"

constitutes trademark infringement and unfair competition and is a violation of the Lanham Act.

30.     Over forty years ago, the concept of "reverse confusion" was first pronounced in the Tenth Circuit's ruling in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977).  Instead of the traditional concept of forward confusion, in which consumers would be likely to be confused as to whether a junior user's goods are associated with that of a senior user, reverse confusion was designed to address the high burden on a small, less powerful senior user trying to prove that a larger, infringing junior user was trading on their trademark's goodwill, especially where the senior user's own customers were confused.  The *Big O* court recognized that something other than the traditional forward confusion theory of trademark infringement was necessary to prevent "anyone with adequate size and resources [from] adopt[ing] any trademark and develop[ing] a new meaning for that trademark as identification of the second user's products." *Id.* at 1372.

31.     This action presents a classic case of reverse confusion.  A larger, more powerful junior user (PepsiCo) adopted the trademark (RISE) of a smaller senior user (Rise Brewing) and uses its commercial dominance and superior resources to saturate the market with that mark.  The market flooding by the larger junior user (PepsiCo) overwhelms that of the senior user (Rise Brewing) and creates a likelihood of confusion as consumers come to assume that the senior user's products (Rise Brewing's RISE-branded products) are really those of the junior user (PepsiCo), or that the former has become somehow affiliated with or sponsored by the latter.  Some consumers even come to believe that the senior user (Rise Brewing) is an infringer of the junior user (PepsiCo), tarnishing the senior user's reputation.

32.     PepsiCo is no stranger to the reverse confusion doctrine. In fact, the law of reverse confusion was cemented in the Seventh Circuit involving the GATORADE sports drink, now one

of PepsiCo's billion-dollar brands.  In the seminal case on reverse confusion in this circuit, *Sands Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947 (7th Cir. 1992), the Seventh Circuit held that Quaker Oats' (then owner of the GATORADE brand) use of the THIRST AID slogan infringed the THIRST-AID trademark owned by the smaller senior user plaintiff, Sands, by causing reverse confusion.

33.    In *Sands*, the Seventh Circuit recognized the importance of protecting smaller brands from being overtaken by larger competitors, holding that "'the objectives of the Lanham Act—to protect an owner's interest in its trademark by keeping the public free from confusion as to the source of goods and ensuring fair competition—are as important in a case of reverse confusion as in typical [forward] trademark infringement.'"  *Id.* at 958 (quoting *Banff, LTd. v. Federated Dep't Stores, Inc*., 841 F.2d 486, 490 (2d Cir. 1988)).

**D.    PepsiCo Seeks to Capitalize on Rise Brewing's Success and Refuses to Change Its Product Name**

34.    Consistent with its prior practice, PepsiCo capitalized on Rise Brewing's success to increase its market share amongst morning caffeine drinkers.  According to public media reports, PepsiCo's consumer insights division developed a "Framework of Energy Management" that identified six occasions in which consumers use PepsiCo products, noting that the "biggest untapped moment for energy drinks is the 'get started' coffee hour, during which time PepsiCo claims millennials and Gen Zers have increasingly been reaching for a sweet energy drink instead of a bitter cup of coffee."  PepsiCo accordingly launched its own RISE drink to fill that gap.

35.    PepsiCo also likely knew that the launch of its PepsiCo RISE drink would also destroy a leading competitor to Starbucks' Ready-To-Drink (RTD) coffee drinks, which are distributed by PepsiCo through the North American Coffee Partnership.  Through this partnership with Starbucks, PepsiCo has been profiting off of the distribution of Starbucks RTD coffee for more

than 20 years.

36.     Additionally, Rise Brewing had a number of conversations over the years with both PepsiCo and Starbucks at beverage industry tradeshows.  Based on the foregoing, PepsiCo was aware of Rise Brewing, Rise Brewing's RISE Marks, and the company's remarkable success in the RTD category.

37.     Once Rise Brewing learned of PepsiCo's plan to launch an infringing drink, Rise Brewing immediately reached out to PepsiCo to notify it of the consumer confusion that PepsiCo's RISE product launch would certainly cause, given the similarity of the competing drinks' names, target markets, and Rise Brewing's pre-existing rights in its RISE family of Marks (listed below).

38.     PepsiCo was dismissive of Rise Brewing's concerns, despite knowing that the infringing drink they were about to launch would cause lasting and irreparable injury to Rise Brewing's brand.

39.     Following the launch of PepsiCo's drink, Rise Brewing once again contacted PepsiCo, noting that actual consumer confusion was occurring, and requesting that it change the name of the drink. PepsiCo again refused, claiming that no confusion was likely as its drink is a morning caffeine drink and not a coffee drink.  PepsiCo also maintained that its use of its house mark "Mtn Dew" in connection with RISE should absolve them of any wrongdoing in using an identical RISE mark as Rise Brewing.  But as PepsiCo knows well the use of a house mark is an ***aggravating*** factor in reverse confusion cases.  Indeed, in in the seminal *Sands* (Gatorade) case, Gatorade trotted out this same argument regarding a house mark and the Court stated that that fact would tend to exacerbate the reverse confusion, not alleviate it, as it invites consumers to draw the erroneous conclusion that RISE products emanate from PepsiCo, the owner of the Mtn Dew brand, rather than from the senior user Rise Brewing.

40.     PepsiCo has willfully and deliberately marketed its infringing drink as a substitute for coffee, using the tagline "CONQUER THE MORNING," and it has been sold on the same shelves as Rise Brewing's RISE drinks.  PepsiCo's actions have demonstrated not just a blatant disregard for Rise Brewing, or even a good-faith effort to compete on a level playing field, but a desire to copy and replace Rise Brewing's RISE drinks with PepsiCo's Mtn Dew RISE drinks, simply because it enjoys extreme market power due to its sheer size and immense resources.

41.     Mtn Dew RISE is not intended to be a small PepsiCo product offering.  Indeed, so important is the Mtn Dew RISE brand to PepsiCo, it hired LeBron James away from competitor The Coca-Cola Company to be the face of the new Mtn Dew RISE campaign.

42.     PepsiCo has also partnered with professional surfers Sage Erickson and Jack Robinson, and fitness and wellness model Julie "Jaws" Nelson. Promotional photos featuring the three all replicate the same extreme, solo sporting activities and environments Rise Brewing focuses on in its promotional campaigns with various surfers and skiers.

43.     PepsiCo's actions in unlawfully adopting Rise Brewing's mark are the latest chapter of its storied history of taking instead of innovating, a story that is well documented in prior litigations where PepsiCo has repeatedly been accused of and found liable for infringing on other's trademark rights.

44.     Rise Brewing did not want to file this lawsuit, but was left with no choice but to stand up for itself and the brand it has worked so hard to build.  To stop this unlawful conduct, and to recover the damages caused by it, Rise Brewing brings this action for trademark infringement in violation of 15 U.S.C. § 1114; false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); unfair competition and trademark infringement under Illinois common law; and unfair trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et*

*seq.*

## THE PARTIES

45.     Plaintiff Rise Brewing is a Delaware corporation with its principal place of business at 425 Fairfield Ave., Stamford, Connecticut, 06902. RISE is the owner of the RISE family of Marks (listed below) which are used to sell and promote its RISE canned coffee products.

46.     Defendant PepsiCo is a North Carolina corporation with offices at 700 Anderson Hill Road, Purchase, New York, 10577. PepsiCo has significant operations in Illinois and in this judicial district, where it employees over 1,300 corporate employees in its Chicago offices.

## JURISDICTION AND VENUE

47.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338 with respect to the claims arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b) with respect to the claims arising under the laws of the state of Illinois. This Court further has jurisdiction under 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy is more than $75,000.

48.     This Court has personal jurisdiction over PepsiCo because PepsiCo has substantial contacts in the Northern District of Illinois and regularly conducts business in this District. Upon information and belief, PepsiCo has a large office in this District at 433 W Van Buren St, Chicago, IL 60607. Upon information and belief, this office has 1,300 employees. Upon information and belief, PepsiCo's Chicago-based employees include individuals responsible for the marketing of its Mountain Dew Brand. PepsiCo has an additional office in this District at 617 West Main Street, Barrington, Illinois 60010.

49.     PepsiCo has continuous and systematic contacts with the State of Illinois such that they could reasonably foresee being brought into court in Illinois.

50.     This Court also has personal jurisdiction over PepsiCo because PepsiCo has committed tortious acts and sold infringing products in this State and District that are the subjects of the claims set forth herein.  PepsiCo has purposefully availed itself of the privilege of conducting business with residents of this District and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being brought into court in Illinois. Accordingly, the exercise of jurisdiction over PepsiCo comports with the traditional notions of fair play and substantial justice.

51.     Further, PepsiCo has recently litigated a trademark case in this District and did not contest jurisdiction in that case, indicating that it consents to jurisdiction in this district. *See SportFuel, Inc. v. PepsiCo, Inc*., 1-16-cv-07868, D.I. 15, pg. 6 (N.D. Ill. Sept. 30, 2016).

52.     Venue in this District is proper under 28 U.S.C. § 1391 because PepsiCo conducts or has conducted business in this judicial District and because this Court has personal jurisdiction over PepsiCo in this District.  Further, PepsiCo did not contest venue in this District in the recent *SportFuel* case, indicating that it consents to venue in this District.

**FACTUAL BACKGROUND**

**A.     The RISE Marks.**

53.     Rise Brewing owns multiple valid registered trademarks, which are registered with the United States Patent and Trademark Office ("USPTO"), as shown in the chart below (together with RISE's common law rights in these and other RISE-formative marks, these registered marks are referred to collectively herein as the "RISE Marks").  Copies of the registrations and status pages from the USPTO are attached as **Exhibit A.**

| Mark | Registration No. & Registration Date | Goods and Services |
|---|---|---|
| RISE BREWING CO. ("BREWING CO." disclaimed) | 5,168,377 March 21, 2017 | **Class 30:** Coffee; coffee; coffee and coffee substitutes; coffee and artificial coffee; coffee and tea; coffee based |

| Mark | Registration No. & Registration Date | Goods and Services |
|---|---|---|
| | | beverages; coffee beverages with milk; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; green coffee; iced coffee; prepared coffee and coffee-based beverages; unroasted coffee. |
| <br>RISE BREWING CO.<br>("BREWING CO."<br>disclaimed) | 5,333,635<br>November 14, 2017 | **Class 30:** Coffee; Coffee; Coffee and coffee substitutes; Coffee and artificial coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee capsules containing coffee for brewing; Coffee essences; Coffee extracts; Coffee pods; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Green coffee; Iced coffee; Prepared coffee and coffee-based beverages; Unroasted coffee.<br><br>**Class 31:** Unprocessed coffee<br><br>**Class 43:** Coffee bars; Coffee shops |
| <br>RISE NITRO<br>BREWING CO.<br>("NITRO BREWING<br>CO." disclaimed) | 6,140,084<br>September 1, 2020 | **Class 30**: Coffee; Coffee and coffee substitutes; Coffee based beverages; Coffee beans; Coffee extracts; Coffee pods; Coffee, tea, cocoa and artificial coffee; Caffeine-free coffee; Green coffee; Iced coffee |

| Mark | Registration No. & Registration Date | Goods and Services |
|---|---|---|
| RISE NITRO ("NITRO" disclaimed) | 5,188,284 April 18, 2017 | **Class 30**: Coffee; Coffee; Coffee and coffee substitutes; Coffee and artificial coffee; Coffee and tea; Coffee based beverages; Coffee beverages with milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Iced coffee; Prepared coffee and coffee-based beverages |
| RISE & GRIND | 4,396,118 September 3, 2013 | **Class 43**: Cafe services; Coffee shops |
| RISE MAKES YOU SHINE | 6,007,308 March 10, 2020 | **Class 30**: Coffee and coffee substitutes; Tea; Coffee based beverages<br><br>**Class 35**: Retail store services featuring Coffee and coffee substitutes; coffee-based beverages; tea.; On-line retail store services featuring Coffee and coffee substitutes; coffee-based beverages; tea |
| RISE-N-SHINE BLEND ("BLEND" disclaimed) | 3,253,782 June 19, 2007 | **Class 30**:  Coffee |

54.     Rise Brewing's registrations are valid, subsisting, and in full force and effect.

55.     Since long before PepsiCo launched its infringing Mtn Dew RISE drinks, Rise Brewing has prominently used and promoted its RISE Marks through extensive advertising, marketing, and sale of goods bearing the marks.  As a result of this adoption, continuous use, and heavy promotion of the RISE Marks, the RISE Marks have become invaluable assets of Rise Brewing, serving as a symbol of the quality goods provided by Rise Brewing.

56.     Rise Brewing also owns common law rights in a number of RISE-formative marks, including RISE COFFEE CO., RISE NITRO BREWING CO., HOW I RISE, ON THE RISE, RISE BREWING, and a stylized RISE NITRO BREWING CO. design, as depicted on cans of Rise Brewing's canned caffeine drinks, below.  Rise Brewing has used each of these RISE-formative

marks in connection with its canned caffeine drinks.



57.     As noted in the chart above, the wording "BREWING CO." and "NITRO" has been disclaimed in RISE's federal registrations, indicating that RISE is the prominent, distinctive portion of the registered RISE Marks. RISE is similarly the formative portion of the common law RISE-formative marks RISE COFFEE CO., RISE NITRO BREWING CO., and the stylized RISE NITRO BREWING CO. design.

**B.     PepsiCo and Its Unlawful Conduct.**

58.     One of the beverage brands sold by PepsiCo is Mountain Dew, a citrus-flavored caffeinated soft drink.  Upon information and belief, Mountain Dew is among the top five best-selling soft drinks in the United States.

59.     Upon information and belief, in an attempt to break into the market of morning caffeinated beverages using the strong consumer recognition of its Mountain Dew brand, in January 2021, PepsiCo announced plans to launch a drink named "Mtn Dew Rise Energy," but referred to as simply "Mtn Dew RISE" or "RISE."   As an energy drink catering to the morning caffeinated beverage consumers, Mtn Dew RISE was intended to be sold alongside other energy drinks and canned coffee drinks, including RISE caffeine drinks, instead of being sold alongside other sodas.

60.     Upon information and belief, in an effort to saturate the market with its Mtn Dew

16

RISE drinks as quickly as possible, PepsiCo hired international superstar LeBron James to be the spokesperson for this new product. PepsiCo also launched a website for its new drink, available at www.mountaindewrise.com. Similarly, PepsiCo's Instagram handle for its Mtn Dew RISE drink is @mountaindewrise.

61.     When Rise Brewing wrote to PepsiCo to explain the extent of confusion that would result from PepsiCo's launch of its infringing Mtn Dew RISE drink in light of Rise Brewing's own RISE Marks, PepsiCo dismissed Rise Brewing's claims as "grossly overreaching." Even though it acknowledged Mtn Dew RISE was being marketed to morning caffeinated beverage drinkers, PepsiCo, while conceding that it "markets products in virtually every segment of the beverage industry," told Rise Brewing that the distinction between energy drinks and canned coffee drinks was understood by "apparently [] everyone except" for Rise Brewing, and summarily dismissed Rise Brewing's concerns.

62.     Plowing forward, Mtn Dew RISE was launched in March of 2021, through a high-visibility marketing campaign featuring LeBron James and the tag lines "CHOOSE TO RISE" and "CONQUER THE MORNING."

## C.     PepsiCo's Infringement of the RISE Marks Is Likely to Cause Forward and Reverse Confusion

63.     Upon information and belief, and consistent with PepsiCo's past practices, PepsiCo's unauthorized use of its confusingly similar Mtn Dew RISE mark is an attempt to trade on the goodwill of Rise Brewing's RISE Marks, and to dominate the market by using its superior resources to cause consumers to associate RISE with Mountain Dew and PepsiCo rather than with Rise Brewing.

64.     PepsiCo's stylized Mtn Dew RISE mark, displayed on the packaging for its competing drink, is similar to the RISE Marks in sight, sound, connotation, and commercial

impression.  The mark is strikingly visually similar to the RISE Marks, as both feature RISE prominently in all capital letters.  As shown below, the design used on the Mtn Dew RISE cans also visually mimics that of RISE's beverage cans; both companies' cans feature a light-colored background with the word "RISE" in large colored capital letters, printed horizontally on the upper-half of the can.

 

65.    The Mtn Dew RISE cans also include the same statement regarding caffeination levels that Rise Brewing's original black coffee cans include, each company's label saying their respective RISE-branded drinks contains the same caffeine as two cups of coffee.

66.    On Rise Brewing's cans, the word "RISE" text is always printed in capitalized red font.  On the Mtn Dew RISE cans, for three of the six currently released flavors (Peach Mango Dawn, Strawberry Melon Spark, and Orange Breeze), the "RISE" text is printed in a similar red, red-orange, or red-pink color, and the word "RISE" is always capitalized.

67.    The non-RISE portions of the parties' respective marks are displayed with significantly less emphasis than the formative and identical RISE portions. On Rise Brewing's

drinks, the terms "Nitro Brewing Co." or "Brewing Co." appear in smaller, dark text below the prominent red RISE portion. On the Mtn Dew RISE cans, the identical word "RISE" is similarly, prominently featured.  The words "Mtn Dew" are printed in significantly smaller font, tucked into the word "RISE," while the word "Energy" is barely noticeable at all; it is smaller and to the right of "RISE" in a vertical position.  "Mtn Dew" appears in the light color of the background itself, allowing the bold-colored term "RISE" to have greater impact.

68.     Like Rise Brewing's RISE-branded drinks, Mtn Dew RISE drinks are available for sale at Walmart, Kroger, and other major grocery retailers, as well as convenience stores and gas stations.  Many retailers that sell Mtn Dew RISE also sell Rise Brewing's competing line of canned caffeinated drinks, often in the same aisles, shelves, or displays.  On the online platform GoPuff, a search for "Rise Brewing Co." shows the Mtn Dew RISE product immediately adjacent to that of Rise Brewing, as shown below.



69.     Further, on information and belief, as part of its plan to saturate the market and overtake Rise Brewing's reputation, PepsiCo has bid on the keyword "RISE" with various search engines.  For instance, a search on Google for "Rise Brewing drink" reveals results for Mtn Dew RISE directly above those for Rise Brewing's products. Similarly, a search on the Kroger website for "rise" automatically generates a suggested term of "Mountain Dew Rise."

70.     Lest there was any doubt about PepsiCo's intentions, after launching its Mtn Dew RISE drink, PepsiCo began marketing its product extensively as a substitute for coffee.  For instance, the homepage for the product website, https://www.mountaindewrise.com/ (which notably does not include the word "Energy"), promises that the drink will give consumers energy to "CONQUER THE MORNING."  Sample social media posts shown below also demonstrate how PepsiCo promotes Mtn Dew RISE as a product designed for mornings, in competition with coffee, and in the same manner that Rise Brewing promotes its RISE drinks.



MountainDewRise's official Instagram account, using the promotional language,
"Your morning energy, comin' atcha"



Rise Brewing Co.'s official Instagram account, using the promotional language,
"Angie are you 'RISEing' at sunrise or sunset?"



Rise Brewing Co.'s official Instagram account, using an image bearing the phrase "WAKE UP KICK ASS REPEAT"



MountainDewRise's official Instagram account, using an image depicting the phrase, "CONQUER THE MORNING"

71.     Moreover, PepsiCo's advertisements specifically target the athletic and wellness

communities so important to Rise Brewing.  As shown in the sample Instagram posts below, both Rise Brewing's and Mtn Dew RISE's Instagram accounts prominently feature photographs of people surfing and skiing. The surf and ski communities are two that Rise Brewing has already specifically targeted to promote its RISE drinks, by formally partnering with their respective official USA Olympic teams.  Mtn Dew RISE's partnership with LeBron James and professional surfers and fitness models shows that the athletic and wellness communities are a specific target of PepsiCo, as well.



Images from Rise Brewing Co.'s official Instagram account



Images from MountainDewRise's official Instagram account

72.    Despite PepsiCo's claim that there is no similarity between Rise Brewing's drinks and Mtn Dew RISE, media outlets honed in on PepsiCo's targeting of the coffee market

24

immediately upon Mtn Dew RISE's release.  On March 17, 2021, Fast Company published an article entitled "Mountain Dew debuts Rise, an energy drink designed to replace your morning coffee," reporting that PepsiCo's consumer insights division has a "Framework of Energy Management" which notes that the "biggest untapped moment for energy drinks is the 'get started' coffee hour, during which time PepsiCo claims millennials and Gen Zers have increasingly been reaching for a sweet energy drink *instead of a bitter cup of coffee*."

73.     Similarly, the same day, news outlet CNBC reported that PepsiCo's newly-unveiled Mtn Dew RISE drink is "meant to appeal to energy-drink fans and *draw in new consumers who usually stick to coffee* or juice."

74.     PepsiCo's in-store displays call attention to its Mtn Dew RISE drinks' obvious comparison to coffee by prominently advertising that its product contains as much caffeine as approximately two cups of coffee, which Rise Brewing also advertises in regard to its products:



75.     During the short time from the launch of Mtn Dew RISE until now, unsurprisingly, multiple instances of confusion have already been brought to Rise Brewing's attention.  For example, the shelves at one Northern California Walmart location were stocked with the Mtn Dew

RISE product on a shelf allocated for Rise Brewing's RISE products, as shown below.



76.     Upon information and belief, as it is PepsiCo employees who regularly stock PepsiCo products at large retailers like Walmart, it is most likely that a PepsiCo employee improperly stocked Mtn Dew RISE on the RISE drinks' shelf space.

77.     On another occasion, a supplier contacted Rise Brewing to ask about a display (known as a "rounder") that had been ordered, mistakenly thinking it was for Rise Brewing's drinks when in fact it was for Mtn Dew RISE.

78.     Moreover, at least one customer inquired of Rise Brewing whether a PepsiCo commercial featuring Lebron James was in association with Rise Brewing.

79.     Despite these and other instances of actual confusion, which were communicated to PepsiCo, PepsiCo has refused to alter its plans in any way, instead forging ahead with its pervasive advertising campaign, flooding the market with its competing Mtn Dew RISE drinks.

80.     PepsiCo's unlawful conduct is causing and will continue to cause serious and irreparable harm to Rise Brewing. Not only will retailers and consumers be confused into purchasing Mtn Dew RISE when they want RISE drinks, but PepsiCo is overwhelming the market such that consumers will think that Rise Brewing's RISE drinks are associated with PepsiCo. This conduct, if not enjoined, will eviscerate the goodwill Rise Brewing has spent years carefully cultivating for its RISE brand.

## COUNT I
### Trademark Infringement – Reverse and Forward Confusion
### (15 U.S.C. § 1114)

81.     Rise Brewing repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

82.     As alleged above, Rise Brewing owns federal trademark registrations for its RISE Marks.  The federally registered RISE Marks serve to identify to the public the quality products that are offered by Rise Brewing alone, and the products offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Rise Brewing, which, as demonstrated by the many awards it has received, has a reputation as a high quality manufacturer of caffeinated beverages.

83.     PepsiCo's use of the infringing Mtn Dew RISE mark, which emphasizes the RISE portion over the other word elements, in commerce in connection with the sale of competing canned caffeinated beverages, is without Rise Brewing's authorization or consent.

84.     PepsiCo's use of the infringing Mtn Dew RISE mark in combination with a confusingly similar can (a similarly light colored slim can, with RISE in dark, bold, all capital lettering), in commerce in connection with the sale of competing canned caffeinated drinks is without Rise Brewing's authorization or consent.

85.     PepsiCo has used its massive marketing budget and commercial strength in distribution to flood the market with advertising for its Mtn Dew RISE drinks, at times selling them on the same shelves as Rise Brewing's competing RISE drinks in the same stores (and even taking shelf space reserved for Rise Brewing), and using similar marketing strategies, causing confusion.

86.     In the three months since the Mtn Dew RISE drinks launched, PepsiCo's use of the infringing Mtn Dew RISE mark has already caused consumer confusion as to whether Mtn Dew RISE is sponsored by or affiliated with the RISE products.  As its marketing continues and expands,

PepsiCo's use of the Mtn Dew RISE mark is likely to continue to cause forward and/or reverse confusion, or to cause mistake, or to deceive as to the sponsorship, affiliation, connection, or association of PepsiCo's Mtn Dew RISE products with Rise Brewing or Rise Brewing's caffeine drinks sold under the RISE Marks, usurping the value of the RISE Marks and decreasing Rise Brewing's opportunity to continue to develop its goodwill and reputation because of public confusion as to ownership of the RISE Marks.

87.     As a direct and proximate result of PepsiCo's saturation of the market with marketing of its infringing Mtn Dew RISE mark, which is confusingly similar to Rise Brewing's RISE Marks, Rise Brewing has suffered and will continue to suffer damage to its business, its corporate identity, trade, reputation, and goodwill because of the erroneous perception among consumers that the RISE Marks identify PepsiCo.  Consumers have already been confused, and are likely to continue to be confused into believing that Rise Brewing's RISE products are associated or affiliated with, sponsored or endorsed by, or in some other manner connected with PepsiCo.

88.     Worse, as is typical in reverse confusion cases, some consumers are likely to assume that Rise Brewing is infringing upon PepsiCo's rights, despite Rise Brewing being the senior user of any RISE Mark as between the parties, thereby creating customer ill will, damaging Rise Brewing's reputation and impairing its goodwill.

89.     As evidenced by at least its refusal to concede to Rise Brewing's request that it rebrand prior to its launch after being put on notice of Rise Brewing's rights, PepsiCo's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Rise Brewing's prior rights, and therefore constitutes willful infringement of the RISE Marks.

90.     PepsiCo's conduct has damaged Rise Brewing by causing consumer confusion as to the source of the Mtn Dew RISE drinks and questions regarding whether Rise Brewing has a

partnership or other affiliation with PepsiCo, resulting in lost sales and a diminution in value of its brand.

91.    Moreover,  PepsiCo's conduct has enabled it to obtain profits to which it is not in law, equity or good conscience entitled, and has unjustly enriched PepsiCo, all to its profit and Rise Brewing's detriment.

92.    By such wrongful acts, PepsiCo has caused, and unless restrained by the Court, will continue to cause, serious irreparable injury and damage to Rise Brewing, and to the goodwill associated with the RISE Marks, as PepsiCo's actions threaten to overtake and erase Rise Brewing from the market. This harm constitutes an injury for which Rise Brewing has no adequate remedy at law.

93.    As a result of PepsiCo's willful and intentional misconduct, this is an exceptional case under the Lanham Act, and therefore Rise Brewing is also entitled to recover its costs and reasonable attorneys' fees, in an amount to be determined.

## COUNT II
### Federal Unfair Competition/False Designation of Origin - Reverse and Forward Confusion (15 U.S.C. § 1125(a))

94.    Rise Brewing repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

95.    In addition to Rise Brewing's federally registered RISE marks, discussed above, Rise Brewing possesses rights at common law in a number of RISE-formative marks, including RISE COFFEE CO., RISE NITRO BREWING CO., and a stylized RISE NITRO BREWING CO. design, depicted above.  Rise Brewing has used each of these marks in connection with its canned caffeine drinks.

96.    PepsiCo has intentionally adopted and used the infringing Mtn Dew RISE mark—

prominently featuring the term RISE—in commerce, without authorization or consent from Rise Brewing, in connection with the sale, offering for sale, distribution, and advertising of canned caffeinated beverages, in an attempt to trade on Rise Brewing's reputation.

97.     PepsiCo's use of the Mtn Dew RISE mark has already caused consumer confusion, and is likely to continue to cause confusion, mistake, or deception as to whether PepsiCo's products sold under that mark originate from, are associated, affiliated or connected with, or are sponsored, endorsed or approved by Rise Brewing, or vice versa.

98.     Accordingly, PepsiCo's conduct constitutes unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

99.     PepsiCo's conduct has damaged Rise Brewing and enabled PepsiCo to earn profits to which it is not in law, equity or good conscience entitled, and has unjustly enriched PepsiCo, all to its profit and Rise Brewing's damage.

100.    PepsiCo's adoption and use of the infringing Mtn Dew RISE mark was willful and intended for the purpose of trading on Rise Brewing's high-quality reputation and goodwill, and/or to improperly attribute to PepsiCo the valuable RISE Marks.

101.    PepsiCo has used its large marketing budget in an attempt to flood the market with advertising for its Mtn Dew RISE products, selling them on the same shelves as Rise Brewing's competing RISE products, causing reverse confusion.

102.    As a direct and proximate result of PepsiCo's conduct in violation of 15 U.S.C. § 1125(a),  Rise Brewing has suffered actual and irreparable injury for which no adequate remedy exists at law.

103.    PepsiCo's wrongful conduct will continue to cause such injury unless and until enjoined by this Court.

104.    As a result of PepsiCo's willful and intentional conduct, this is an exceptional case under the Lanham Act, and therefore Rise Brewing is also entitled to recover its costs and reasonable attorneys' fees, in an amount to be determined.

### COUNT III
**Unfair Competition Under Illinois Common Law**

105.     Rise Brewing repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

106.    PepsiCo has intentionally adopted and used the infringing Mtn Dew RISE mark— prominently featuring RISE—without  authorization or consent from Rise Brewing in commerce in connection with the sale, offering for sale, distribution, and advertising of competitive caffeine drinks sold in confusingly similar slim cans, in an attempt to trade on the high-quality reputation of the RISE Marks and to cause consumers to attribute that reputation to PepsiCo.

107.    PepsiCo's use of the infringing Mtn Dew RISE mark has already caused consumer confusion and is likely to continue to cause confusion, mistake, or deception as to whether PepsiCo's caffeine drinks sold under that mark originate from, are associated, affiliated or connected with, or are sponsored, endorsed or approved by Rise Brewing, or vice versa.

108.    PepsiCo's actions were willful. PepsiCo has used its large marketing budget to flood the market with advertising for its Mtn Dew RISE drinks, selling them on the same shelves as Rise Brewing's competing RISE drinks, in a deliberate attempt to cause confusion.

109.    PepsiCo's conduct described above constitutes unfair competition in violation of the common law of the state of Illinois.

110.    PepsiCo's wrongful conduct will continue to cause such injury to Rise Brewing unless and until enjoined by this Court.

111.    As a result of PepsiCo's willful and intentional misconduct, Rise Brewing is also

entitled to exemplary and punitive damages pursuant to the common law of Illinois and to recover its costs and reasonable attorneys' fees, in an amount to be determined.

**<u>COUNT IV</u>**
**Illinois Common Law Trademark Infringement**

112.    Rise Brewing repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

113.    Rise Brewing has used its RISE Marks continuously and exclusively in commerce in connection with canned, caffeinated drinks since 2016.

114.    PepsiCo's unauthorized use of the infringing Mtn Dew RISE mark in Illinois for related caffeinated drinks has infringed Rise Brewing's rights in its RISE Marks, including its rights under Illinois common law, as it is has already caused consumer confusion, and is likely cause further consumer confusion.  Such unauthorized use constitutes trademark infringement under Illinois common law.

115.    PepsiCo's actions complained of herein will undoubtedly deceive the public and create both forward and reverse confusion as to the source of Rise Brewing's and PepsiCo's products and as to the existence of an affiliation between PepsiCo and Rise Brewing.

116.    Customers have already expressed actual confusion in the short period of time since the PepsiCo product launched, and such confusion is only likely to expand as PepsiCo continues its plan to flood the market with advertising.

117.    PepsiCo's wrongful conduct will continue to cause injury to Rise Brewing and threaten to overtake and erase its products from the market unless and until enjoined by this Court.

118.    As a result of PepsiCo's willful and intentional misconduct, Rise Brewing is also entitled to exemplary and punitive damages pursuant to the common law of Illinois and to recover its costs and reasonable attorneys' fees, in an amount to be determined.

## COUNT V
### Violation of The Illinois Uniform Deceptive Trade Practices Act
### (815 ILCS 510/1 *et seq.*)

119.    Rise Brewing repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

120.    PepsiCo has engaged in unfair and/or deceptive trade practices act by once again attempting to overtake a popular smaller brand for its own benefit, adopting a mark confusingly similar to the RISE Marks owned by Rise Brewing in connection with a competing canned caffeinated drink.

121.    PepsiCo's use of the infringing Mtn Dew RISE mark creates competition with Rise Brewing and confers PepsiCo with a special advantage in that competition as PepsiCo rides on the high-quality reputation that was built by Rise Brewing based on its ingenuity and hard work over the many years since its founding.

122.    PepsiCo's aforesaid actions constitute unfair methods of competition and unfair or deceptive acts or practices, and create a likelihood of confusion or misunderstanding in the public's mind as to the parties' goods, all in violation of 815 ILCS 505/1 *et seq*.

123.    PepsiCo's unlawful actions have caused Rise Brewing to suffer irreparable damage, have resulted in unjust enrichment to PepsiCo, and have caused and will continue to cause, unless enjoined by this Court, substantial and irreparable harm to Rise Brewing for which it has no adequate remedy at law.

124.    Upon information and belief, PepsiCo's actions complained of herein were willful, thereby justifying recovery of Rise Brewing's attorneys' fees and costs.

### DEMAND FOR RELIEF

WHEREFORE, by virtue of PepsiCo's unlawful conduct as alleged in Counts I-V of this Complaint, Rise Brewing respectfully requests that this Court:

A. Enter judgment that PepsiCo, as a result of its unauthorized use of the Mtn Dew RISE mark, has:

1. Infringed Rise Brewing's rights in the federally registered RISE Marks in violation of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1);

2. Engaged in unfair competition and false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a);

3. Engaged in unfair competition in violation of the common law of Illinois;

4. Infringed Rise Brewing's rights in RISE Marks in violation of the common law of Illinois; and

5. Engaged in unfair and deceptive acts in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

B. Enter preliminary and permanent injunctions restraining PepsiCo and its officers, directors, employees, agents, affiliates, subsidiaries, divisions, successors, assigns, franchisees, licensees, and all those in privity or acting in concert with them from:

   i. Manufacturing, distributing, shipping, advertising, marketing, promoting, selling, or otherwise offering for sale the Mtn Dew RISE product using the infringing Mtn Dew RISE Mark or similarly confusing variations, including but not limited to any mark containing the term RISE;

   ii. All use, display, advertisement, or distribution of goods bearing Rise Brewing's RISE Marks, and any reproduction, counterfeit, copy, or colorable imitation thereof, in any form, or in any manner, or otherwise infringing the RISE Marks;

   iii. Otherwise unfairly competing with, injuring the business or reputation of, or damaging the goodwill of Rise Brewing in any manner;

   iv. Otherwise falsely representing themselves or any of their products as being associated or affiliated with, sponsored or endorsed by, or in any way connected with Rise Brewing;

   v. Taking any actions that would lead reasonable consumers to suffer reverse confusion, i.e., to be confused into believing that Rise Brewing or its

products are associated or affiliated with, sponsored or endorsed by, or in any way connected with PepsiCo or its products; and

    vi.  Otherwise harming the distinctive quality of the RISE Marks.

C.  Order that PepsiCo, its respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, be directed to file with this Court and serve on Rise Brewing within thirty (30) days after service of the injunction, a report in writing and under oath, setting forth in detail the manner and form in which PepsiCo has complied with the injunction;

D.  Order that PepsiCo account and pay over to Rise Brewing all gains, profits, and advantages derived from the conduct alleged herein, pursuant to 15 U.S.C. § 1117 and other applicable law;

E.  Order that PepsiCo pay Rise Brewing the actual damages that Rise Brewing has sustained by reason of the conduct alleged herein, including but not limited to compensation for Rise Brewing's lost profits, lost goodwill and diminution in value of its RISE brand, and the cost of corrective advertising to counteract the consumer confusion;

F.  Order that PepsiCo pay Rise Brewing a reasonable royalty for the unauthorized and infringing use of the RISE mark;

G.  Order that Rise Brewing is entitled to three times the amount of its actual damages pursuant to 15 U.S.C. § 1117, and enter judgment for that amount;

H.  Order that Rise Brewing's recovery based on PepsiCo's profits is inadequate, and enter judgment for an increased sum as the Court finds just, pursuant to 15 U.S.C. § 1117;

I.  Order that Rise Brewing be awarded punitive damages for PepsiCo's willful and

malicious acts of common law unfair competition and trademark infringement;

J.  Order that PepsiCo pay pre-judgment and post-judgment interest;

K.  Order that PepsiCo pay the costs of this action as provided by 15 U.S.C. § 1117 and other applicable law;

L.  Find that this is an "exceptional case" under the Lanham Act and Order that PepsiCo pay Rise Brewing's attorneys' fees as provided by 15 U.S.C. § 1117 and other applicable law;

M.  Order that PepsiCo be directed to deliver to the Clerk of this Court for destruction, or show proof of destruction, of any and all materials in PepsiCo's possession, custody, or control that depict or relate to the development, marketing, or sale of Mtn Dew RISE or any other products or related materials bearing marks confusingly similar to the RISE Marks in accordance with 15 U.S.C. § 1118;

N.  Order that PepsiCo publish a corrective advertising campaign to address the consumer confusion that has arisen due to the unlawful use of the infringing Mtn Dew RISE mark; and

O.  Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Rise Brewing demands a jury trial on all claims for which trial by jury is available.

Dated:  June 15, 2021

Respectfully Submitted,

By:    */s/Jason Rosenberg*
       Jason Rosenberg (Bar No. 6275801)
       Jason.Rosenberg@alston.com
       Holly Hawkins Saporito (PHV To Be Filed)
       Holly.Saporito@alston.com
       Emily Welch (PHV To Be Filed)
       Emily.Welch@alston.com

       ALSTON & BIRD LLP
       1201 W. Peachtree Street
       Atlanta, GA 30309
       Tel. (404) 881-7000
       Fax. (404) 881-7777

       Paul Tanck (PHV To Be Filed)
       Paul.Tanck@alston.com
       ALSTON & BIRD LLP
       90 Park Ave
       New York, NY 10016
       Tel. (212) 210-9400
       Fax. (212) 210-9444

       A. Colin Wexler
       Colin.Wexler@goldbergkohn.com
       Robert Leighton
       Robert.Leighton@goldbergkohn.com
       GOLDBERG KOHN, LTD.
       55 E. Monroe St.
       Suite 3300
       Chicago, IL  60603
       Tel. (312) 201-4000

       *Attorneys for Plaintiff, RiseandShine*
       *Corporation d/b/a Rise Brewing*