IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RISEANDSHINE CORPORATION d/b/a
RISE BREWING

                    Plaintiff,

        vs.

PEPSICO, INC.

                    Defendant.

CASE NO.: 1:21-cv-03198

Honorable John Z. Lee

JURY TRIAL DEMANDED

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSED MOTION
FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF THE FACTS ............................................................................ 2

   A.   Rise Brewing and Its RISE Marks ................................................................ 2

   B.   PepsiCo and Its Unlawful Conduct ............................................................... 4

   C.   The Parties' Competing RISE-Branded Products and Highly Similar Marketing Strategies ................................................................................................. 6

   D.   Actual Confusion Has Already Occurred ...................................................... 7

   E.   PepsiCo's Infringement Is Causing Irreparable Harm to Rise Brewing. ............ 8

III. ANALYSIS AND ARGUMENT ............................................................................ 8

   A.   A Preliminary Injunction is Available and Warranted .................................. 8

      i.   *The RISE Marks Are Protectable Trademarks* ........................................ 9

      ii.  *Consumer Confusion is Likely* ............................................................. 10

   F.   Rise Brewing Is Irreparably Harmed and Has No Adequate Remedy at Law ........ 17

   G.   The Balance of Equities Favors Injunctive Relief ...................................... 19

   H.   Injunctive Relief is in the Public Interest ................................................... 20

   I.   Injunction Bond ........................................................................................... 20

IV.  CONCLUSION ..................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Eli Lilly & Co. v. N. Answers, Inc.*,
   233 F.3d 456 (7th Cir. 2000) ...............................................................................20

*3BA Int'l LLC v. Lubahn*,
   No. C10-829RAJ, 2010 U.S. Dist. LEXIS 60079 (W.D. Wash. May 20, 2010)....................18

*7-Eleven, Inc. v. Spear*,
   No. 10 C 6697, 2011 U.S. Dist. LEXIS 21298 (N.D. Ill. Mar. 3, 2011) ................................17

*Alacritech, Inc. v. Microsoft Corp.*,
   No. C 04-03284 JSW, 2005 U.S. Dist. LEXIS 51698 (N.D. Cal. Apr. 12, 2005).................18

*Autozone, Inc. v. Strick*,
   543 F.3d 923 (7th Cir. 2008) ...............................................................................14

*Banff, Ltd. v. Federated Dep't Stores, Inc.*,
   841 F.2d 486 (2d Cir. 1988).................................................................................10

*Black & Decker Corp. v. Positec USA Inc.*,
   No. 11-cv-5426, 2015 U.S. Dist. LEXIS 42968 (N.D. Ill. Mar. 31, 2015) ............................15

*Cae, Inc. v. Clean Air Eng'g, Inc.*,
   267 F.3d 660 (7th Cir. 2001) ...............................................................................13

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*,
   843 F.2d 600 (1st Cir. 1988)................................................................................19

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009)................................................................13

*Deckers Outdoor Corp. v. DOES 1-100*,
   No. 12 C 10006, 2013 U.S. Dist. LEXIS 6404 (N.D. Ill. Jan. 16, 2013)................................17

*Dig. Mentor, Inc. v. Ovivo USA, LLC*,
   No. C17-1935-RAJ, 2018 U.S. Dist. LEXIS 11707 (W.D. Wash. Jan. 24, 2018) .................18

*Entm't One UK Ltd. v. 2012shiliang*,
   384 F. Supp. 3d 941 (N.D. Ill. 2019) ...................................................................13

*Fabick, Inc. v. FABCO Equip., Inc.*,
   296 F. Supp. 3d 1022 (W.D. Wis. 2017) .........................................................11, 14

*Foremost Farms USA v. Diamond V Mills, Inc.*,
   No. 16-cv-551, 2017 U.S. Dist. LEXIS 59154 (W.D. Wis. Apr. 18, 2017) .............................9

*Helene Curtis Indus. v. Church & Dwight Co.*,
   560 F.2d 1325 (7th Cir. 1977) ........................................................................19

*Henri's Food Prods. Co., Inc. v. Kraft, Inc.*,
   717 F.2d 352 (7th Cir. 1983) ..........................................................................11

*Huntington Learning Ctrs., Inc. v. BMW Educ.*,
   LLC, No. 10-C-79, 2010 U.S. Dist. LEXIS 24769 (E.D. Wis. Mar. 15, 2010) ......................20

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
   612 F.2d 1018 (7th Cir. 1979) ........................................................................20

*Imperial Toy Corp. v. Ty, Inc.*,
   No. 97 C 8895, 1998 U.S. Dist. LEXIS 14418 (N.D. Ill. Sep. 8, 1998) ................................16

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
   846 F.2d 1079 (7th Cir. 1988) ..........................................................................9

*James Burrough, Ltd. v. Lesher*,
   309 F. Supp. 1154 (S.D. Ind. 1969) ..................................................................13

*KJ Korea, Inc. v. Health Korea, Inc.*,
   66 F. Supp. 3d 1005 (N.D. Ill. 2014) ................................................................15

*Kohler Co. v. Whistling Oak Apts. LLC*,
   2021 U.S. Dist. LEXIS 111642 (E.D. Wis. June 14, 2021) ......................................17

*Laboratorios Pisa S.A. de C.V. v. PepsiCo, Inc.*,
   No. 7:21-cv-00062, 2021 U.S. Dist. LEXIS 36960 (S.D. Tex. Feb. 27, 2021) ..................6, 19

*Lakedreams v. Taylor*,
   932 F.2d 1103 (5th Cir. 1991) ......................................................................19, 20

*Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*,
   703 F. Supp. 2d 777 (N.D. Ill. 2010) ................................................................19

*McGraw-Edison Co. v. Walt Disney Prods.*,
   787 F.2d 1163 (7th Cir. 1986) ........................................................................15

*Monster Energy Co. v. BeastUp LLC*,
   395 F. Supp. 3d 1334 (E.D. Cal. 2019) ..............................................................13

*N. Am. Soccer League v. Nat'l Football League*,
   465 F. Supp. 665 (S.D.N.Y. 1979) ....................................................................18

*NAC Found., LLC v. Jodoin*,
   2:16-cv-01039, 2016 U.S. Dist. LEXIS 91551 (D. Nev. July 14, 2016) ..............................18

*Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc.*,
    469 U.S. 189 (1985)......................................................................................20

*Personeta, Inc. v. Persona Software, Inc.*,
    418 F. Supp. 2d 1013 (N.D. Ill. 2005) ............................................12, 13

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*,
    80 F. Supp. 2d 815 (N.D. Ill. 1999) ......................................................15

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ...............................................................13

*Promatek Indus., LTD v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ...................................................................9

*ReBath LLC v. Foothills Serv. Sols. Co.*,
    2021 U.S. Dist. LEXIS 108229 (D. Ariz. June 9, 2021) ......................17

*Sands Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) ..............................................10, 11, 14, 15

*Scherr v. Volpe*,
    466 F.2d 1027 (7th Cir. 1972) ...............................................................20

*SportFuel, Inc. v. PepsiCo, Inc.*,
    932 F.3d 589 (7th Cir. 2019) .................................................................16

*Squirt Co. v. Seven-Up Co.*,
    No. 78-375C (A), 1979 U.S. Dist. LEXIS 9986 (E.D. Mo. Sep. 6, 1979) ............................14

*Starbucks Corp. v. Lundberg*,
    No. 02-948-HA, 2005 U.S. Dist. LEXIS 32660 (D. Or. Nov. 29, 2005) ...............................14

*Stuller, Inc. v. Steak N Shake Enters., Inc.*,
    695 F.3d 676 (7th Cir. 2012) ..............................................................8, 9

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*,
    2021 U.S. Dist. LEXIS 24650 (D. Or. Feb. 9, 2021)............................17

*Top Tobacco v. Fantasia Distrib.*,
    101 F. Supp. 3d 783 (N.D. Ill. 2015) ..............................................12, 13

*TV Land, L.P. v. Viacom Int'l*,
    908 F. Supp. 543 (N.D. Ill. 1995) ...................................................11, 14

*Ty, Inc. v. Jones Grp. Inc.*,
    237 F.3d 891 (7th Cir. 2001) ....................................................... passim

**STATUTES**

15 U.S.C. § 1115..........................................................................................................9

15 U.S.C. § 1116(a).....................................................................................................17

**OTHER AUTHORITIES**

J. Thomas McCarthy, Trademarks and Unfair Competition § 11:24, at 505-6 (1991
    Supp.)......................................................................................................................14

Trademark Manual of Examining Procedure § 1231 (Oct. 2018) ................................12

Plaintiff RiseandShine Corporation ("Rise Brewing") respectfully submits this memorandum of law in support of its motion for a preliminary injunction ("PI").

## I.   INTRODUCTION

After years of building its RISE brand, Rise Brewing has earned the right to control how the company and its drinks are presented to consumers. But in the spring of this year, PepsiCo, Inc., ("PepsiCo") launched a competing drink under an identical infringing mark, which now threatens to destroy Rise Brewing and its RISE brand due to customer confusion. PepsiCo cannot claim innocence in adopting its infringing mark. PepsiCo met with Rise Brewing not once, but *five times* prior to creating and launching its infringing product.

PepsiCo realized that the morning caffeine beverage category is a lucrative market for which it did not have a product in its lineup.  In an effort to fill that void, PepsiCo sought out a meeting with Rise Brewing to discuss a potential partnership opportunity. Despite learning about Rise Brewing's history, products, and RISE Marks (as defined below) through numerous meetings and discussions, talks between the parties ultimately did not result in a partnership.  Undeterred, PepsiCo instead created its own morning caffeinated drink to compete with Rise Brewing's RISE and called it Mtn Dew RISE.  Despite the endless possibilities of non-infringing brand names to choose from, PepsiCo had to have Rise Brewing's RISE mark for itself.

The harm to Rise Brewing was almost immediate, and the likelihood of confusion is evident. Of the seven factors considered to assess likelihood of confusion in this Circuit, *all* overwhelmingly favor a finding of a likelihood of confusion: (1) the marks are *identical*; (2) the drinks are *highly similar*, both single serving, shelf stable, canned caffeinated beverages, that target and compete for the morning caffeine drinker; (3) the drinks are *sold in identical areas and manners*, stocked and sold literally side-by-side on the same store shelves; (4) the *degree of purchasing care is low* when

customers purchase off-the-shelf drinks that cost less than 5 dollars; (5) the **commercial strength** of PepsiCo (the infringing junior user) **is extremely high**, favoring a finding of a likelihood of reverse confusion; (6) there are already **numerous instances of actual confusion**; and (7) PepsiCo intended to trade on the goodwill of Rise Brewing's RISE brand, having **had prior awareness of Rise Brewing** and its RISE Marks, as defined below, and was warned of the risk of infringement prior to its product launch. *See Ty, Inc. v. Jones Grp. Inc.,* 237 F.3d 891, 897 (7th Cir. 2001).

Rise Brewing is suffering irreparable harm. Absent preliminary injunctive relief, Rise Brewing's product identity, corporate identity, control over its goodwill and reputation, ability to move into new markets, and ability to raise capital (to meet payroll, make product, and to keep its business afloat) will all be destroyed.

## II.   STATEMENT OF THE FACTS

### A.   Rise Brewing and Its RISE Marks

In 2014, friends Jarett McGovern, Grant Gyesky, and Justin Weinstein, and co-founder Hudson Gaines-Ross started experimenting with nitro cold brewed coffee, first in kegs, and in 2016, in cans. Rise Brewing was the first company in the United States to offer a shelf-stable nitro cold brew coffee can using a nitrogen widget for a smoother, creamier pour. *See* Declaration of Grant Gyesky, ¶¶ 3-7. Today, Rise Brewing sells its shelf-stable canned drinks, such as lattes, tea lattes, and citrus coffees, nationwide. *Id.*, ¶¶ 4-13, 23.

Many of Rise Brewing's marketing campaigns target the athletic and wellness community. Its RISE-branded drinks are in the locker rooms of the New York Yankees, Mets, and Giants, and mixed martial arts facilities. Rise Brewing has partnered with the USA Surf Team, USA Climbing Team, and US Ski & Snowboard Team, and was a sponsor of FOX Sports' 2020 college football season. *Id.,* ¶¶ 20-21. As a provider of coffee and tea-based drinks, Rise Brewing focuses on the morning beverage drinker. *Id.* Rise Brewing displays its RISE Mark on each can, with RISE in

2

large, red capital letters, printed on the light-colored upper half, as shown. Rise Brewing has generated over $20 million dollars in revenue from sales of these drinks. *Id.*, ¶¶ 4-13. Rise Brewing has invested approximately 17.5 million dollars in promoting its caffeinated RISE drinks. *Id.*, ¶ 19.



Rise Brewing has multiple federal trademark registrations reflecting its exclusive rights to its RISE family of marks, in addition to the common law marks it owns, including the mark RISE™ (all of Rise Brewing's registered and unregistered RISE-formative marks, collectively, the "RISE Mark"). Rise Brewing's federally-registered marks, all of which are for various coffee- and tea-based beverages and associated services, are set forth below:

| Mark | Registration No. & Registration Date |
|---|---|
| RISE BREWING CO. ("BREWING CO." disclaimed) | 5,168,377<br>March 21, 2017 |
| **RISE** BREWING CO.<br><br>RISE BREWING CO. ("BREWING CO." disclaimed) | 5,333,635<br>November 14, 2017 |
| RISE NITRO BREWING CO.<br><br>RISE NITRO BREWING CO. ("NITRO BREWING CO." disclaimed) | 6,140,084<br>September 1, 2020 |
| RISE NITRO ("NITRO" disclaimed) | 5,188,284<br>April 18, 2017 |
| RISE & GRIND | 4,396,118 |

| Mark | Registration No. & Registration Date |
|---|---|
|  | September 3, 2013 |
| RISE MAKES YOU SHINE | 6,007,308 |
|  | March 10, 2020 |
| RISE-N-SHINE BLEND ("BLEND" disclaimed) | 3,253,782 |
|  | June 19, 2007 |

*See* Declaration of Emily Welch, Ex. A.  Rise Brewing owns common law trademark rights in the standalone mark RISE as well, as seen on kegs of its original black nitro-brewed coffee, on its product and marketing offerings, as well as in various places on Rise Brewing's website, risebrewingco.com. Gyesky Dec., ¶¶ 14-18.

Rise Brewing has distinguished itself from its competitors, winning the 2017 Best New Product award from industry publication *BevNet* for its nitro cold brew. *Id.*, ¶ 22. More success followed, with a 2018 Beverage Innovation of the Year award from *Beverage Industry* magazine, and a 2018 NEXTY Best New Organic Beverage award. *Id.* Rise Brewing also won People Magazine's 2019 award for Best Canned Coffee for its canned nitro cold brew. *Id.*

### B.     PepsiCo and Its Unlawful Conduct

PepsiCo is one of the largest food and beverage producers in the world. PepsiCo owns hundreds of brands, 23 of which are "billion dollar" brands, *i.e.*, brands with over a billion dollars of annual sales. *See* Welch Dec., Ex. B.

Prior to the launch of its infringing drink, PepsiCo was intimately familiar with Rise Brewing, its RISE Marks, and drinks. As early as 2017, members of the PepsiCo Innovation team met with Rise Brewing's CEO, Grant Gyesky to discuss partnership opportunities. Gyesky Dec. ¶ 24. Rise Brewing, hopeful of a positive partnership with a major player, explained its business model, history, and the growing nitro beverage market to PepsiCo. *Id.* Jarrett McGovern, Rise Brewing's Chief Creative Officer, later met twice more with members of the PepsiCo Innovation

team, first on May 10, 2018, and again on January 24, 2019. Declaration of Jarrett McGovern, ¶¶ 4-8. PepsiCo team members sampled Rise Brewing's drinks, and at the January 24, 2019 meeting, PepsiCo specifically requested that Rise Brewing provide samples of its canned drinks. *Id.*

After multiple meetings with the PepsiCo Innovation team, PepsiCo upped the stakes, and asked Rise Brewing to host "PepsiCo's President and C-Suite group." *Id.*, ¶ 9. Mr. McGovern hosted, and the recap was that Rise Brewing was "one of the highlights of the day!" *Id.,* ¶¶ 9-11. Mr. McGovern was later introduced to Wing-Yan Choi, VP of Mergers and Acquisitions at PepsiCo, who confirmed that Rise Brewing was on PepsiCo's radar. *Id.,* ¶¶ 12-13. However, rather than acquire Rise Brewing or recognize its rights in its RISE Marks, PepsiCo chose to take the valuable RISE Mark and launch its own competitive morning caffeine drink under the same, infringing brand.

PepsiCo's actions were not coincidental. According to media reports, as PepsiCo was meeting with Rise Brewing, PepsiCo's consumer insights division was identifying six occasions on which consumers use PepsiCo products, noting the "biggest untapped moment for energy drinks [being] the 'get started' coffee hour, during which time PepsiCo claims millennials and Gen Zers have increasingly been reaching for a sweet energy drink instead of a bitter cup of coffee." *See* Welch Dec., Ex. C. In January 2021 PepsiCo announced its own drink to fill that gap—"Mtn Dew Rise," or simply "Rise." PepsiCo positioned Rise for the morning caffeinated beverage drinker. Fabiola Torres, PepsiCo's chief marketing officer and senior VP for its energy category said, "we're excited to introduce the new Mtn Dew Rise Energy for those ***looking for a morning boost*** with enhanced mental clarity and immune support that helps you conquer the morning. . . ." *Id.*, Ex. D.

In January 2021, upon learning of PepsiCo's intended launch of a competing RISE-branded product, Rise Brewing's counsel wrote to PepsiCo regarding the inevitable consumer confusion due

5

to PepsiCo's intended launch, given the similarity of the parties' drinks and target markets. *See*, Gyesky Dec., ¶¶ 32-35. PepsiCo refused to change course, instead flooding the market with advertisements and hiring megastar LeBron James as the Mtn Dew RISE spokesperson.

Unfortunately, PepsiCo is no stranger to copying its competitors' intellectual property, and in taking Rise Brewing's mark for its own, it is following its all too familiar playbook.  An account of PepsiCo's unfair competition can be found at paragraphs 22 through 26 of the Complaint, which includes two recent temporary restraining orders ("TRO"s) barring PepsiCo's trademark infringement of its competitor's drink packaging. *Laboratorios Pisa S.A. de C.V. v. PepsiCo, Inc.,* No. 7:21-cv-00062, 2021 U.S. Dist. LEXIS 36960, at *23 (S.D. Tex. Feb. 27, 2021).

### C. The Parties' Competing RISE-Branded Products and Highly Similar Marketing Strategies

The drinks do not just have similar names, their packaging is similar as well:

 

As shown, Rise Brewing's RISE Mark appears prominently in all-capital lettering on the top portion of its can. Similarly, the Mtn Dew RISE mark appears prominently in the top portion of the can, with only the RISE Portion of the logo in all-capital lettering. In both cases, the remainder of the mark ("Nitro Brewing Co." for RISE, and "Mtn Dew" for Defendant) is in a much smaller font. The focus of both marks—RISE—is identical, whether perceived visually or aurally.

The products are in direct competition as morning energy drinks, sold literally side-by-side (photo below, p. 8). The parties' similar advertising strategies also demonstrates the drinks'

similarity. For example, Rise Brewing advertises its RISE drinks as providing an added energy boost for the morning. *See* Gyesky Dec., ¶ 20. Mtn Dew RISE is promoted as helping consumers "conquer the morning" and it's first 60-second ad was entitled "The Morning Makes You." *See* Welch Dec. Exs. D, E. The parties' social media posts reinforce that their respective RISE drinks are morning beverages, with both parties tweeting about their drinks as a way to start the day. *See id.*, ¶¶ 7-10. Both drinks also target the health and wellness community. Rise Brewing advertises its drink as organic and lower sugar, calories, and additives. *See* Gyesky Dec, ¶ 21. PepsiCo has taken the exact same approach for Mtn Dew RISE. PepsiCo's CMO and SVP of Energy promoted the formula for Mtn Dew RISE as "something better for the body without sacrificing flavor." *See* Welch Dec., Ex. C. PepsiCo's promotions specifically compare Mtn Dew RISE to coffee, also highlighting its juice content, 0g added sugar, and immune support. *Id.*, ¶¶ 10-12.

To further attract wellness-minded consumers, both companies promote their drinks in connection with individual outdoor activities like surfing, snowboarding, and climbing. Rise Brewing has partnered with the USA Surf Team, USA Climbing Team, and US Ski & Snowboard Team. Gyesky Dec. ¶ 21. Rise Brewing's social media posts frequently place its products in these athletic environments. Welch Dec., ¶ 8. PepsiCo has similarly partnered with snowboarders and surfers as brand ambassadors for Mtn Dew RISE. Social media posts highlight PepsiCo's RISE products in these athletic environments. *Id.*, ¶ 9.

### D.  Actual Confusion Has Already Occurred

Unsurprisingly, as soon as PepsiCo launched its own RISE-branded drink, consumer confusion began. In addition to the numerous questions Rise Brewing has fielded about an association between its products and PepsiCo's, PepsiCo's products have been found stocked on grocery store shelf space designated for Rise Brewing's products, as shown below:

7



See Declaration of Corey Guidi, ¶ 5. Among other instance of confusion, Rise Brewing has also been approached by a customer about a promotional event, only to find out later that the event was intended for Mtn Dew RISE. Declaration of Rachel Ratliff, ¶¶ 6-9.

### E.      PepsiCo's Infringement Is Causing Irreparable Harm to Rise Brewing.

Rise Brewing continues to suffer irreparable harm from PepsiCo's actions. PepsiCo's size, strength, and formidable marketing and distribution networks are working full force in support of its new drink, and to the destruction of Rise Brewing's reputation and goodwill. Without immediate relief, PepsiCo will not only overwhelm the market with its RISE drinks, destroying the goodwill Rise Brewing has built as well as Rise Brewing's fledgling presence as a national brand, but also destroy Rise Brewing's ability to raise capital from outside investors, which is critical for Rise Brewing ████████████████████████████ As discussed below, the irreparable harm to Rise Brewing is presumed as a matter of law, and confirmed by these facts.

### III.    ANALYSIS AND ARGUMENT

### A.      A Preliminary Injunction is Available and Warranted

To obtain a PI, a plaintiff must show: (1) a reasonable likelihood of success on the merits; and (2) that it will suffer irreparable harm if a preliminary injunction is denied and that it has no adequate remedy at law. *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). If the plaintiff makes this requisite showing, the court then considers: (1) the irreparable harm the defendant will suffer if preliminary relief is granted balanced against the irreparable harm

the plaintiff will suffer if relief is denied; and (2) the public interest in granting or denying the motion. *Id.* Rise Brewing's entitlement to a PI could not be clearer.

### 1.   Rise Brewing Is Reasonably Likely to Succeed on the Merits

A reasonable likelihood of success on the merits means "some likelihood" or a "better than negligible" chance. *Ty, Inc.*, 237 F.3d at 897 (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)). Rise Brewing has a far better than negligible chance of success at showing that: (1) it has protectable trademarks; and (2) there is a likelihood of confusion as to the origin, affiliation, connection, or association between it and PepsiCo.

### i.   The RISE Marks Are Protectable Trademarks

Rise Brewing's RISE Marks are protectable, both as registered marks and/or under the common law, by virtue of Rise Brewing's continuous and extensive use of those marks in commerce in connection with its goods and services, all of which predates PepsiCo's first use of its infringing mark. Rise Brewing's registrations for the federally registered RISE Marks are valid, subsisting, and constitute *prima facie* evidence of Rise Brewing's exclusive right to use those RISE Marks for the goods specified in the registrations, and thus satisfy this requirement. 15 U.S.C. § 1115; *see also Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) (relying on a federal trademark registration to satisfy the protectability element of the PI analysis).

Rise Brewing also owns common law rights in its RISE Marks, including the mark RISE™ used on its own as a standalone term. Gyesky Dec. at ¶¶ 4-19. Rise Brewing has made extensive use of these marks in commerce in connection with the advertising, sale, and promotion of its canned drinks, and through this use has a protectable interest. *Foremost Farms USA v. Diamond V Mills, Inc.*, No. 16-cv-551, 2017 U.S. Dist. LEXIS 59154, at *7 (W.D. Wis. Apr. 18, 2017). Rise Brewing has earned millions from the sales of its drinks under both its registered and common law RISE Marks, and has spent 17.5 million dollars promoting them. Gyesky Dec., ¶¶ 4-19.

### ii. *Consumer Confusion is Likely*

Reverse confusion was recognized in trademark infringement by the Seventh Circuit in *Sands Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947 (7th Cir. 1992). In *Sands*, the Seventh Circuit held that "protect[ing] an owner's interest in its trademark . . . [is] as important in a case of reverse confusion as in typical [forward] trademark infringement." *Id.* at 958 (quoting *Banff, Ltd. v. Federated Dep't Stores, Inc*., 841 F.2d 486, 490 (2d Cir. 1988)). PepsiCo should be familiar with *Sands* and reverse confusion.  In that case, the defendant was Quaker Oats, then the owner of the GATORADE® mark, now one of PepsiCo's billion dollar brands. As here, Quaker Oats was aware of the infringed marks prior to infringement. *See id.* at 950. Like PepsiCo, Quaker Oats could saturate the market, such that plaintiff "loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.* at 957. And just as PepsiCo did here, adding a famous house mark did not save the infringer; to the contrary, it was "precisely the strong association between [the famous house mark] and "Thirst Aid" created by Quaker's ads that is likely to create confusion . . . . [T]he linking of the plaintiffs' mark with the defendant's brand name is an aggravation, not a justification." *Id.* at 960.

Courts in the Seventh Circuit consider seven factors when analyzing the likelihood of confusion (including reverse confusion), each of which favors Rise Brewing in this case: (1) the marks are identical; (2) the drinks are highly similar; (3) the drinks compete directly; (4) the degree of purchasing care by consumers is low; (5) the relevant strength of the marks favors Rise Brewing; (6) there is actual confusion; and (7) PepsiCo was aware of, but ignored Rise Brewing's rights, the relevant intent consideration in cases of reverse confusion. *See Ty, Inc.,* 237 F.3d at 897.

**Factor 1: The marks are confusingly similar in appearance and suggestion.** The RISE marks are identical. As presented on the can, the term RISE is printed in all-capital letters, with the other terms "Brewing Co." and "Mtn Dew . . . Energy" printed in much smaller lettering. The

identical term RISE is clearly the "the salient portion of the mark, [and] it may be given greater weight than the surrounding elements." *Ty, Inc.,* 237 F.3d at 898 (quoting *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983)).

The addition of MTN DEW above the term RISE does not cure the likelihood of confusion. *Ty, Inc.,* 237 F.3d at 898 (holding that marks were similar despite the use of other marks on defendant's products). In fact, PepsiCo's use of its MTN DEW mark ***aggravates*** consumer confusion, as it trains consumers to associate RISE with MTN DEW instead of Rise Brewing. *Sands*, 978 F.2d at 960; *see also TV Land, L.P. v. Viacom Int'l*, 908 F. Supp. 543, 551 (N.D. Ill. 1995) (granting a PI barring the use of TVLand, despite defendant's intent to use the mark "Nick at Night" in conjunction, as the use of the house mark was an aggravation of the likelihood of confusion in reverse confusion); *Fabick, Inc. v. FABCO Equip., Inc.*, 296 F. Supp. 3d 1022, 1047 (W.D. Wis. 2017) (denying cross motions for summary judgement and holding that the distinguishing power of a famous mark "remains a question for the jury, especially in light of plaintiff's primarily pursuing a reverse confusion claim").

PepsiCo's sporadic use of "Energy" fails to create a non-confusing consumer impression. The term "Energy" appears only in small, vertical lettering on the can, and it is not consistently used in promotions. The drink's official Instagram and Twitter accounts are @moutaindewrise, and its hashtag is #MTNDEWRISE. The media has taken note, referring to the product as simply "RISE." *See* Welch Dec., Ex. C. PepsiCo's advertisements further focus on the identical mark RISE, with Mr. James telling customers, as he takes a sip, "I chose to RISE." *See id.*, ¶ 12.

Rise Brewing owns common law rights in the RISE mark alone, and the additional terms included in certain of Rise Brewing's RISE Marks do not reduce the similarity to PepsiCo's infringing RISE mark. Moreover, on the can, the terms "Brewing Co." or "Nitro Brewing Co."

(which are disclaimed in their respective trademark registrations[1]) are much smaller than the RISE portion printed above it. RISE is the common, distinguishing element of Rise Brewing's other marks, RISE NITRO, RISE & GRIND, RISE MAKES YOU SHINE, and RISE-N-SHINE BLEND. All of the RISE Marks include the distinctive term RISE, as do all of the drinks in PepsiCo's new line of infringing products.  The parties' competing marks are thus highly similar.

**Factor 2: the parties' products are similar.** Rise Brewing and PepsiCo's products are similar, almost identical, and this factor heavily favors Rise Brewing. Both are single-serving canned caffeine drinks for the morning caffeine drinker. When evaluating product similarity, the question is if the buying public would reasonably think that the senior and junior products come from, are affiliated with, connected to, or sponsored by the same source. *Ty*, 237 F.3d at 899-900 (two "small stuffed objects that are soft, pellet-filled, eight to nine inch plush toys made from velboa-type fabric" were similar); *Top Tobacco v. Fantasia Distrib.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) (hookah and flavored tobacco was "similar enough [to other tobacco products] to raise the possibility or relief"). Clearly, the answer here is yes. It is of no moment that Plaintiff's drinks are coffee (or tea) based, while PepsiCo's are (currently) fruit-flavored, especially in light of PepsiCo's choice to position its drink as a morning coffee replacement. *Supra*, pp. 5-6. PepsiCo cannot credibly market its drink as a coffee replacement while simultaneously claiming that no consumer would find its drinks similar to coffee. This factor heavily favors Rise Brewing.

**Factor 3: the products are provided in a similar area and manner.** "In evaluating this factor, courts consider [three factors]," all of which favor Rise Brewing. *Personeta, Inc. v. Persona Software, Inc.,* 418 F. Supp. 2d 1013, 1017 (N.D. Ill. 2005) (citing *Ty*, 237 F.3d at 900). The first factor is "the relative geographical distribution areas." *Id*. Here, both parties' drinks have identical

---

[1] Via disclaimer, registrant "does not claim the exclusive right to use a specified element or elements of the mark in a trademark . . . registration." Trademark Manual of Examining Procedure § 1231 (Oct. 2018).

national distribution. *See* Gyesky Dec. ¶ 23. Factor two is "whether there exists evidence of direct competition between the products." *Personeta*, 418 F. Supp. 2d at 1017. The parties' drinks literally sit next to each other on store shelves. *Supra*, p. 8. Both parties promote their products' caffeine content in comparison to cups of coffee, and they both target the morning caffeinated beverage drinker, with a focus on wellness and activity. The third factor is "whether the product is sold through the same marketing channels." *Personeta*, 418 F. Supp. 2d at 1017. The products at issue are distributed to the exact same grocers and retailers. *See Top Tobacco*, 101 F. Supp. 3d at 791 (products sold in a similar area and manner when "both parties' goods would be sold in the same types of stores and even the same sections of stores"). This factor also favors Rise Brewing.

**Factor 4: the degree of consumer care is low.** Both drinks are widely available and sold individually at the low prices of two to three dollars, indicating a low degree of purchasing care, which favors Rise Brewing. *See Cae, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001); *see also Entm't One UK Ltd. v. 2012shiliang*, 384 F. Supp. 3d 941, 951 (N.D. Ill. 2019) (low degree of purchasing care for widely available products sold for five to eight dollars). The degree of purchasing care exercised specifically by drink purchasers is low, favoring a likelihood of confusion. *See, e.g., James Burrough, Ltd. v. Lesher*, 309 F. Supp. 1154, 1159 (S.D. Ind. 1969) ("persons patronizing defendants' restaurant or buying plaintiffs' [gin] are not of a type noted for the high degree of care that would be necessary to prevent confusion"); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014) ("consumers exercise a low degree of care and sophistication when selecting inexpensive, single-serve beverages"); *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1360 (E.D. Cal. 2019) (purchasers of energy drinks sold for a few dollars likely exercised a low degree of care); *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1076-77 (E.D. Cal. 2009) (protein drinks' cost of $3-$5 favored likelihood of

confusion); *Starbucks Corp. v. Lundberg*, No. 02-948-HA, 2005 U.S. Dist. LEXIS 32660 at *32-33 (D. Or. Nov. 29, 2005) ("consumers exercise a low degree of care when purchasing such coffee beverages"); *Squirt Co. v. Seven-Up Co.*, No. 78-375C (A), 1979 U.S. Dist. LEXIS 9986, at *56 (E.D. Mo. Sep. 6, 1979) (low degree of care in purchasing soft drinks), *aff'd in part*, *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980). This factor favors Rise Brewing.

**Factor 5: the relevant strength of marks favors Rise Brewing.** When considering reverse confusion, the relevant analysis is the strength of the ***junior*** user's mark, and its ability to overwhelm the senior user. *TV Land, L.P.*, 908 F. Supp. at 553; *see also Sands*, 978 F.2d at 959 (discussing the importance of considering the strength of the GATORADE mark); *Fabick, Inc. v*, 296 F. Supp. 3d at 1052 (noting that "the jury will need to consider the relative strength of the [defendant's] mark vis-à-vis the smaller presence of [plaintiff's] mark."). "To evaluate a mark's strength, courts should look at the economic and marketing strength of the mark in question." *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2008). The commercial strength of PepsiCo and its marks is undoubtedly strong: Mountain Dew is one of the top five selling sodas in the United States, and the expenditures PepsiCo makes to promote its marks is overwhelming. It is precisely that strength that increases the likelihood that PepsiCo will quickly dominate the market, destroying Plaintiff's brand and causing consumers to erroneously believe that Plaintiff's senior products are associated with Defendant. *See Sands*, 978 F.2d at 959-60.

Should this Court consider the strength of the RISE Marks, that "'is of little importance where the conflicting mark is identical and the goods are closely related.'" *Sands*, 978 F.2d at 959 (quoting 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:24, at 505-6 (1991)). As the marks at issue here are identical, the strength of Rise Brewing's marks is of little weight, and besides, in "reverse confusion case[s]" it "makes more sense to consider the strength of the

14

mark in terms of its association with the junior user's goods."[2]  *Sands*, 978 F.2d at 959

**Factor 6: there is extensive actual confusion.** The existence of "[a]ctual confusion is one of the most significant factors for determining the likelihood of confusion, and 'understandably so: what better evidence that confusion is likely than proof that it actually has occurred?'" *Black & Decker Corp. v. Positec USA Inc.*, No. 11-cv-5426, 2015 U.S. Dist. LEXIS 42968, at *99 (N.D. Ill. Mar. 31, 2015) (quoting *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 883 (N.D. Ill. 1999)). Although a "plaintiff need not show actual confusion in order to establish *likelihood* of confusion," *Sands*, 978 F.2d at 960 (emphasis in original), such evidence is entitled to "substantial weight." *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1172 (7th Cir. 1986) (internal quotes and cites omitted). In the few months that PepsiCo's drink has been sold, Rise Brewing has been made aware of multiple instances of actual confusion.

On March 8, 2021, Rise Brewing employee Rachel Ratliff was contacted by an employee of Mariano's, a Midwestern grocery store. He told her that Rise Brewing's RISE drinks had been selected for a display at the front of the store. After spreading the good news, Ms. Ratliff was told that the promotion was actually for Mtn Dew RISE. The product had been listed as "Rise Energy," and the Mariano's employee had been confused. *See* Ratliff Dec., ¶¶ 3-9.

On March 25, 2021, Rise Brewing employee Corey Guidi went to a Walmart in California to refresh RISE drink stock. The RISE drink area was already full—of Defendant's Mtn Dew RISE. PepsiCo's stocker had, through confusion or malice, placed Defendant's drinks on Rise Brewing's

---

[2] Should this Court consider the strength of Rise Brewing's RISE Marks, they are a strong identifier of source by virtue of Rise Brewing's nationwide distribution, extensive sales, and marketing and promotion. *See supra*, pp. 4-5, 9; *see also KJ Korea, Inc. v. Health Korea, Inc*., 66 F. Supp. 3d 1005, 1016 (N.D. Ill. 2014) (allegations of "promotion and sale of associated goods and services nationwide" indicated that plaintiff's marks, including unregistered common law marks, were strong). Rise Brewing has policed its rights in the RISE Marks, filing extensions of time to oppose and oppositions to applications on the federal register, and sending cease and desist letters to infringers. *See* Gyesky Dec., ¶¶ 25-35.

portion of the shelf. *See* Guidi Dec., ¶¶ 3-7.

On April 30, 2021, an industry contact emailed a Rise employee a photo of a bottle of Mtn Dew RISE and a display, saying "[t]his is super confusing. I see coffee on here and Rise. Is this new?" *See* Declaration of Melissa Kalimov. And on May 20, 2021, a Rise Brewing employee visited a Publix in Florida, and noticed low inventory of RISE drinks. When she asked the manager to check for more, his response was "Mountain Dew Rise?" The Rise Brewing employee had to correct him that she meant Plaintiff's RISE drinks. *See* Declaration of Nia Kaye.

These are just instances of actual confusion of which Rise Brewing is aware. Given that extensive actual confusion has already occurred, this factor heavily favors Rise Brewing.

**Factor 7: PepsiCo had bad faith intent.** PepsiCo has a history of looking to its competitors for innovative products and marks to copy, as detailed in the complaint at paragraphs 22 through 26. Here, PepsiCo did not have to look far, having monitored Rise Brewing for years. PepsiCo Innovation Team members and executives met with Rise Brewing no fewer than five times from 2017 to 2019. *Supra*, pp. 4-5. PepsiCo learned Rise Brewing's story, its products, its focus on health, and the occasions that consumers reached for Rise Brewing's drink. During these meetings, members of the PepsiCo team even made explicit remarks on the RISE name, stating that it was a great name and a great story. *See* McGovern Dec., ¶ 10. But rather than partner with Rise Brewing or simply chose a non-infringing mark for its competing product, PepsiCo copied the RISE Mark, launching the infringing RISE drink despite repeated warnings. *Supra*, p. 5.

In a reverse confusion case, bad faith intent is typically irrelevant, as the defendant is not attempting to palm off its products as those of the senior user. *See SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 602 (7th Cir. 2019). The "focus instead [is] on whether the more well-known junior user ignored the senior user's rights." *Imperial Toy Corp. v. Ty, Inc.*, No. 97 C 8895, 1998 U.S.

16

Dist. LEXIS 14418, at *17 (N.D. Ill. Sep. 8, 1998) (as "Ty, Inc. was aware that Imperial used [plaintiff's mark]… at least five months before Ty, Inc. introduced its own Beanie Baby [under the same mark] into the market," this factor favored plaintiff). Here, PepsiCo was aware of Rise Brewing, its business model, marks, products, and customers, and was on notice of the risk of infringement prior to launch. *See* Gyesky Dec., ¶¶ 32-35. This factor favors Rise Brewing.

*     *     *

All of the likelihood of confusion factors favor Rise Brewing. Rise Brewing has unquestionably shown far more than the required reasonable likelihood of success on the merits.

### F.     Rise Brewing Is Irreparably Harmed and Has No Adequate Remedy at Law

The Trademark Modernization Act of 2020 (the "TMA") codifies a rebuttable presumption of irreparable harm upon showing a likelihood of success on the merits. 15 U.S.C. § 1116(a); *see ReBath LLC v. Foothills Serv. Sols. Co.*, 2021 U.S. Dist. LEXIS 108229 at *33, n. 10 (D. Ariz. June 9, 2021) (granting a TRO as "the loss of control and potential loss of customer goodwill are . . . sufficient to establish irreparable harm, especially in light of the presumption created by the TMA"); *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 2021 U.S. Dist. LEXIS 24650, at *27 (D. Or. Feb. 9, 2021) (same); *Kohler Co. v. Whistling Oak Apts. LLC,* 2021 U.S. Dist. LEXIS 111642, at *22 (E.D. Wis. June 14, 2021) (denying a PI, but noting that "[b]ecause [plaintiff] has demonstrated a greater than negligible chance of prevailing on the merits, it is entitled to a presumption of irreparable harm"). Rise Brewing will likely succeed on the merits, and is entitled to this presumption. Even before the TMA became law, courts in this District found "irreparable harm in trademark cases stem[ming] from an understanding that . . . plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Deckers Outdoor Corp. v. DOES 1-100*, No. 12 C 10006, 2013 U.S. Dist. LEXIS 6404, at *12-13 (N.D. Ill. Jan. 16, 2013) (quoting *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 U.S. Dist. LEXIS 21298 (N.D. Ill. Mar. 3, 2011)).

Without preliminary injunctive relief, Rise Brewing will suffer a loss for which there is no remedy at law: loss of its corporate identity and existence as a company. PepsiCo's sheer strength is such that Rise Brewing's fledgling market share and brand presence could be entirely destroyed. As courts routinely recognize, legal disputes can place the very existence of nascent companies in the balance. *See Dig. Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-RAJ, 2018 U.S. Dist. LEXIS 11707, at *5 (W.D. Wash. Jan. 24, 2018) (granting a TRO on contract claims as plaintiff is "a small software engineering startup" and defendant "has the potential to push [plaintiff] out of the market"); *3BA Int'l LLC v. Lubahn*, No. C10-829RAJ, 2010 U.S. Dist. LEXIS 60079, at *11 (W.D. Wash. May 20, 2010) (granting a TRO and noting that "a fledgling business enterprise [like plaintiff's] is unlikely to withstand a wholesale assault"); *Alacritech, Inc. v. Microsoft Corp.*, No. C 04-03284 JSW, 2005 U.S. Dist. LEXIS 51698, at *18 (N.D. Cal. Apr. 12, 2005) (granting a PI in a patent case as plaintiff "is a small start-up company which will not be able to withstand the infringing competition from larger and better known hardware vendors"). Rise Brewing may not survive PepsiCo's infringement for the duration of litigation without preliminary relief.

As an expanding startup, Rise Brewing is constantly seeking investment, ████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ This loss of investment is an irreparable harm. *N. Am. Soccer League v. Nat'l Football League*, 465 F. Supp. 665, 672 (S.D.N.Y. 1979) (granting a PI in an antitrust case, finding irreparable harm due to "chilling effect . . . upon potential new investors" as plaintiff was a "relative newcomer"); *NAC Found., LLC v. Jodoin*, 2:16-cv-01039, 2016 U.S. Dist. LEXIS 91551, at *4 (D. Nev. July 14, 2016) (granting a PI for breach of a non-disclosure agreement and finding irreparable harm in "the

18

loss of investors at a 'critical threshold . . . in development and financing'").

Without swift intervention, Rise Brewing will lose the goodwill it has worked so hard to build. It will lose market share, pushed out by a larger competitor. As a startup, it will lose critical funding ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ No monetary relief could remedy this harm, and a delay of years (or even months) to try this case would irreparably injure Rise Brewing.

### G.     The Balance of Equities Favors Injunctive Relief

Courts in the Seventh Circuit consider the balance of harms of a preliminary injunction using a sliding scale approach, under which a stronger demonstration of a likelihood of success, reduces the need for a strong showing that the balance of harms is in plaintiff's favor. *Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 790-91 (N.D. Ill. 2010).

Rise Brewing has shown a strong likelihood of success, and the balance of harms tips in its favor. The potential harm to PepsiCo is insignificant. A preliminary injunction takes nothing that PepsiCo had the right to possess, as it only prohibits it from infringing the RISE Marks. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (quoting *Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977)), *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991). If compliance is burdensome, that burden was wrought by PepsiCo's choice to launch in the face of explicit warnings. *See Ty*, 237 F.3d at 903 (when assessing harm to the infringer, "the court excludes the burden it voluntarily assumed by proceeding in the face of known risk"); *Laboratorios Pisa*, 2021 U.S. Dist. LEXIS 36960 at *19 (balance of hardships favored a TRO as "PepsiCo knew of [p]laintiffs' prior rights. . . and accepted the risk that their product could be found infringing, and enjoined").

It is no defense that PepsiCo has already launched. "One entering a field already occupied by another has a duty to select a trademark that will avoid confusion.'" *Ty*, 237 F.3d at 903 (quoting *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979)). PepsiCo's haste to launch, when it was fully aware of Rise Brewing and the RISE Mark, should not be converted into a defense. While PepsiCo owns hundreds of brands, Rise Brewing's sole brand is RISE. Losing control of the RISE Mark is essentially a business-ending proposition. *See Lakedreams*, 932 F.2d at 1109 (balance of the harms favored an injunction where defendant made numerous, non-infringing products). The balance of the harms thus favors granting injunctive relief.

### H.   Injunctive Relief is in the Public Interest

An injunction is in the public interest as "enforcement of the trademark laws prevents consumer confusion*." Eli Lilly & Co. v. N. Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000). "[A] sound public policy requires that trademarks should receive nationally the greatest protection they can be given." *Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985).

### I.   Injunction Bond

The amount of bond is in the discretion of the Court. *See Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (affirming the grant of a preliminary injunction without any bond). A strong likelihood of success can weigh heavily in favor of waiving a bond requirement. *Id.; see, e.g., Huntington Learning Ctrs., Inc. v. BMW Educ.*, LLC, No. 10-C-79, 2010 U.S. Dist. LEXIS 24769, at *4, n. 2 (E.D. Wis. Mar. 15, 2010) (collecting cases, and requiring no bond for PI where there was a strong likelihood of success on the merits). Because of the strong and unequivocal nature of Rise Brewing's evidence of infringement and the minimal harm to PepsiCo from stopping the sale of a single product under an infringing mark, the Court should waive any bond requirement.

### IV.   CONCLUSION

For the reasons set forth above, Rise asks this Court to grant its Motion.

Dated:  June 29, 2021

Respectfully Submitted,


  */s/Jason Rosenberg*

Jason Rosenberg (Bar No. 6275801)
Jason.Rosenberg@alston.com
Holly Hawkins Saporito (PHV To Be Filed)
Holly.Saporito@alston.com
Emily Welch (PHV To Be Filed)
Emily.Welch@alston.com

ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
Tel. (404) 881-7000
Fax. (404) 881-7777

Paul Tanck (PHV To Be Filed)
Paul.Tanck@alston.com
ALSTON & BIRD LLP
90 Park Ave
New York, NY 10016
Tel. (212) 210-9400
Fax. (212) 210-9444

A. Colin Wexler
Colin.Wexler@goldbergkohn.com
Robert Leighton
Robert.Leighton@goldbergkohn.com
GOLDBERG KOHN, LTD.
55 E. Monroe St.
Suite 3300
Chicago, IL  60603
Tel. (312) 201-4000


*Attorneys for Plaintiff, RiseandShine*
*Corporation d/b/a Rise Brewing*

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, certify that on June 29, 2021, I caused a copy of the foregoing document to be electronically filed using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

*/s/Jason Rosenberg*