**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RISEANDSHINE CORPORATION d/b/a RISE BREWING<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>PEPSICO, INC.<br><br>　　　　　　　Defendant. | CASE NO.: 1:21-cv-06324-LGS<br><br>Honorable Lorna Schofield<br><br>JURY TRIAL DEMANDED |

**DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

Defendant PEPSICO, INC. ("PepsiCo") files this Answer to the First Amended Complaint ("Complaint") filed by RISEANDSHINE CORPORATION d/b/a RISE BREWING ("RBC" or "Plaintiff"). To the extent not specifically admitted, PepsiCo denies each and every allegation in the Complaint. PepsiCo incorporates headings used by Plaintiff in the Complaint for convenience and ease of reference only, and denies any allegations, assertions or inference associated with same. PepsiCo responds to Plaintiff's specific allegations as follows:

1.　　　　PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 1 of the Complaint.

2.　　　　PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 2 of the Complaint.

3.　　　　Denied.

4.      PepsiCo admits only that emails produced by RBC suggest that certain of its employees may have met with certain employees of RBC, and PepsiCo denies the remaining allegations in paragraph 4 of the Complaint.

5.      PepsiCo admits only that it has not partnered with RBC, and PepsiCo denies the remaining allegations in paragraph 5 of the Complaint.

6.      PepsiCo admits that on January 11, 2021, outside counsel for RBC contacted PepsiCo demanding that it not use the mark MTN DEW RISE ENERGY and that PepsiCo would not agree to RBC's demands.  PepsiCo otherwise denies the allegations in paragraph 6 of the Complaint.

7.      PepsiCo denies that it has engaged in any wrongful conduct, unlawful actions, or any infringement, much less willful and reckless infringement.  PepsiCo denies that any of its actions will destroy RBC's brand or consumer goodwill.  PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 7 of the Complaint.

8.      PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 8 of the Complaint.

9.      PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 9 of the Complaint.

10.      PepsiCo denies the truth of RBC's description of available products in the market and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 10 of the Complaint.

11.      PepsiCo admits that plastic widgets storing nitrogen have long been used in canned drinks in the beverage industry to create a creamy head on certain beverages, similar to one that

would come from a tap, and that when a can with a widget is opened, the pressure inside the widget causes the nitrogen inside to release into the beverage and create a burst of nitrogen bubbles that rise to the top of the beverage.  PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 11 of the Complaint.

12.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 of the Complaint.

13.     PepsiCo denies that there was a "marketplace void" and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 13 of the Complaint.

14.     PepsiCo denies that RBC's canned drinks are regularly sold next to or in the same shelf sections as shelf-stable canned energy drinks and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 14 of the Complaint.

15.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 15 of the Complaint.

16.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 of the Complaint.

17.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 17 of the Complaint.

18.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18 of the Complaint.

19.     PepsiCo admits only that PepsiCo offers its MTN DEW RISE ENERGY beverages, which are marketed for morning consumption.   PepsiCo denies the remaining allegations in paragraph 19 of the Complaint.

20.     Denied.

21.     PepsiCo admits only that emails produced by RBC in this case suggest that in August 2017, Thomas Gros of PepsiCo, who appears to have been a friend or acquaintance of an RBC employee, made plans to meet with certain employees of RBC in September 2017, and stated that Helen Chen and Jillian DeFilippo also planned to attend.   Because none of these employees currently work at PepsiCo, PepsiCo cannot confirm or deny that the meeting occurred or any specific statements made, if it did, but denies that PepsiCo as a company ever intended to partner with RBC to sell or distribute RBC drinks.   Because RBC does not provide the names of any employees whom it claims attended the alleged meetings in May 2018 or January 2019, PepsiCo cannot confirm or deny whether those meetings occurred or whether anyone from PepsiCo sampled any products there.   PepsiCo denies the remaining allegations in paragraph 21 of the Complaint.

22.     PepsiCo incorporates its responses to paragraph 21 of the Complaint, admits that Wing-Yan Choi is a VP of Mergers and Acquisitions at PepsiCo who spoke with Jarrett McGovern at a large event sponsored by VMG Partners, a private equity group, in August 2019 and who was already aware of RBC before that meeting.   PepsiCo denies the remaining allegations in paragraph 22 of the Complaint.

23.     With the qualification that PepsiCo has 23 brands that generate more than $1 billion each in *estimated* annual *retail* sales, admitted.

24.     PepsiCo admits that in 2001, PepsiCo, Inc. acquired The Quaker Oats Company, which included, among its product lines, Stokely-Van Camp's GATORADE beverages, and that the acquisition was permitted by the Federal Trade Commission.   PepsiCo further admits that paragraph 24 of the Complaint sets forth portions of a statement released by then commissioners Sheila F. Anthony and Mozelle W. Thompson in 2001 about the "soft drink industry" but denies that paragraph 24 accurately sets forth the quoted sentences.   PepsiCo otherwise denies the allegations in paragraph 24 of the Complaint.

25.     Denied.

26.     Denied.

27.     PepsiCo admits that PepsiCo, Inc. was a party to the lawsuit *Energy Brands, Inc. d/b/a Glaceau v. PepsiCo, Inc. and South Beach Beverage Co., Inc.* No. 06-cv-2662 (S.D.N.Y. April 5, 2006) and that the matter was closed within a month of filing.   PepsiCo denies the remaining allegations in paragraph 27 of the Complaint.

28.     PepsiCo admits that in April of 2011, the district court ordered a preliminary injunction in *Polar Corp. v. PepsiCo, Inc. and Concentrate Mf'g Co. of Ireland*, 789 F. Supp. 2d 219 (D. Mass. 2011) and that the matter was resolved shortly thereafter.   PepsiCo denies the remaining allegations in paragraph 28 of the Complaint.

29.     PepsiCo admits that PepsiCo, Inc. was a party to the lawsuit *The Coca-Cola Co. v. PepsiCo, Inc.*, No. 4:10-cv-04184 (S.D. Tex.), filed in October 2010, denies that paragraph 29 accurately sets forth the allegations therein, and admits that the matter was amicably resolved in May 2011.  PepsiCo denies the remaining allegations in paragraph 29 of the Complaint.

30.     PepsiCo admits that PepsiCo, Inc. was a party to the lawsuit *Laboratorios Pisa S.A. de C.V. v. PepsiCo, Inc.*, No. 7:21-cv-00062 (S.D. Tex.), that temporary restraining orders were

issued (one of which was reversed by an appellate court), and that the matter was amicably resolved in March 2021. PepsiCo denies the remaining allegations in paragraph 30 of the Complaint.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     PepsiCo admits only that the Second Circuit recognizes reverse confusion as an actionable form of trademark infringement and denies the remaining allegations in paragraph 35 of the Complaint.

36.     Denied.

37.     Denied.

38.     PepsiCo admits that the *Sands* opinion quoted from the *Banff* case set forth in paragraph 38 of the Complaint but otherwise denies the allegations in paragraph 38 of the Complaint.

39.     PepsiCo admits only that PepsiCo offers its MTN DEW RISE ENERGY beverages, which are marketed for morning consumption, and that Fast Company published an online article on March 17, 2021, describing a Framework of Energy Management developed by PepsiCo's consumer insights division identifying six occasions when the body needs energy, and that the quoted language appears in the article, though not attributed to PepsiCo. PepsiCo denies the remaining allegations in paragraph 39 of the Complaint.

40.     PepsiCo admits only that in 1994, it formed a joint venture with Starbucks, named the North American Coffee Partnership, to develop, market, distribute, and sell ready-to-drink

coffees and that its partnership with Starbucks for the marketing, sale, and distribution by PepsiCo of, among other things, Starbucks ready-to-drink coffee beverages continues to this day.  PepsiCo otherwise denies the allegations in paragraph 40 of the Complaint.

41.    Denied.

42.    PepsiCo admits only that counsel to RBC contacted PepsiCo in January 2021. PepsiCo otherwise denies the allegations in paragraph 42 of the Complaint.

43.    Denied.

44.    PepsiCo admits that RBC waited until after the March 2021 launch of MTN DEW RISE ENERGY to respond to PepsiCo's letter sent in January 2021 and that PepsiCo explained to RBC reasons there was no likelihood of confusion between MTN DEW RISE ENERGY beverages and RBC's canned coffee drinks and otherwise denies the allegations in paragraph 44 of the Complaint.

45.    Denied.

46.    PepsiCo admits that it has devoted meaningful resources to the independent conception, development and release of MTN DEW RISE ENERGY products and that LeBron James is a spokesperson for MTN DEW RISE ENERGY products.  PepsiCo otherwise denies the allegations in paragraph 46 of the Complaint.

47.    PepsiCo admits that it has entered into business relationships with professional surfers Sage Erickson, Jack Robinson, and athlete, fitness instructor, and model Julie "Jaws" Nelson and has utilized promotional photographs of these individuals.  PepsiCo denies the remaining allegations in paragraph 47 of the Complaint.

48.    Denied.

49.     PepsiCo admits only that Plaintiff purports to assert the Causes of Action set forth in its Complaint.  PepsiCo otherwise denies the allegations in paragraph 49 of the Complaint.

50.     PepsiCo admits the first sentence in paragraph 50 of the Complaint.  PepsiCo denies that RBC consistently uses the marks listed below to sell and promote its canned coffee products and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 50 of the Complaint.

51.     Admitted.

52.     Admitted.

53.     PepsiCo does not dispute subject matter jurisdiction in this case pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

54.     Admitted.

55.     PepsiCo admits that it has continuous and systematic contacts with the State of New York but denies that paragraph 55 of the Complaint accurately states the applicable law on personal jurisdiction.

56.     PepsiCo denies that it has committed any tortious acts or sold any infringing products.  PepsiCo does not dispute the Court's exercise of personal jurisdiction over PepsiCo but denies that paragraph 56 of the Complaint accurately sets forth the law on personal jurisdiction.

57.     Admitted.

58.     With the qualification that PepsiCo does not comprehend the meaning of "has its conducts," the allegations in paragraph 58 of the Complaint are otherwise admitted.

59.     PepsiCo admits only that RBC is identified in the United States Patent and Trademark Office online records as the named registrant of the United States trademark registrations identified in paragraph 59 of the Complaint, and that copies of registration certificates

and status pages from the USPTO website were filed with the Complaint on July 26, 2021. PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 59 of the Complaint.

60.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 60 of the Complaint.

61.     PepsiCo denies that it offers any infringing products and that RBC has continuously used its asserted marks, and otherwise is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 61 of the Complaint.

62.      PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 62 of the Complaint.

63.     PepsiCo admits only that RBC has disclaimed certain portions of its purported marks in alleged federal trademark registrations.   PepsiCo otherwise denies the remaining allegations in paragraph 63 of the Complaint.

64.     PepsiCo admits that the original MOUNTAIN DEW beverage is a citrus-flavored caffeinated soft drink, sold by PepsiCo or its predecessors in interest, and that MOUNTAIN DEW is among the top five selling soft drinks in the United States.  PepsiCo denies the remaining allegations in paragraph 64 of the Complaint.

65.     PepsiCo admits only that it publicly announced its MTN DEW RISE ENERGY product in 2021 and that MTN DEW RISE ENERGY is a shelf-stable, caffeinated beverage marketed for morning consumption intended to be sold alongside other energy drinks.  PepsiCo denies the remaining allegations in paragraph 65 of the Complaint.

66.     PepsiCo admits that it engaged in promotional efforts for its MTN DEW RISE ENERGY product, including advertising featuring LeBron James and creating a website at

www.mountaindewrise.com and Instagram account at @mountaindewrise.  PepsiCo denies the remaining allegations in paragraph 66 of the Complaint, including any implication of "market saturation."

67.     PepsiCo admits that it engaged in correspondence with RBC and that in one of those letters, PepsiCo explained that in light of RBC's statements to the USPTO about "multiple Rise-formulated coffee marks owned by different registrants peacefully coexisting without confusion," RBC's position to PepsiCo that it could not use the more distinctive and more easily distinguishable mark MTN DEW RISE ENERGY was "not only inconsistent with [RBC's] prior stated position, but also grossly overreaching."  PepsiCo denies the remaining allegations in paragraph 67 of the Complaint.

68.     PepsiCo denies that its beverage is called "Mtn Dew RISE" and denies that its long-planned launch of MTN DEW RISE ENERGY in March 2021 constituted "plowing forward" past any valid objections of RBC, and otherwise admits the allegations in paragraph 68 of the Complaint.

69.     Denied.

70.     Denied.

71.     PepsiCo admits that the can for its MTN DEW RISE ENERGY product includes the information "CAFFEINE EQUAL TO APPROXIMATELY 2 CUPS OF COFFEE."  PepsiCo denies the remaining allegations in paragraph 71 of the Complaint, including that there is any likelihood of confusion between its mark and RBC's purported marks or that a reference to "coffee" in any way invokes RBC or its purported marks.

72.     PepsiCo admits only that the term RISE appears in distinctively stylized, capital letters on MTN DEW RISE ENERGY products.  PepsiCo denies the remaining allegations in paragraph 72 of the Complaint.

73.     Denied.

74.     PepsiCo admits that its MTN DEW RISE ENERGY products are available at Walmart, Kroger, and other major grocery retailers, as well as convenience stores and gas stations. PepsiCo denies that retailers sell MTN DEW RISE ENERGY in the same section or displays as RBC's canned caffeinated drinks or that such drinks directly compete with MTN DEW RISE ENERGY.  PepsiCo otherwise is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 74 of the Complaint.

75.     Denied.

76.     Denied.

77.     PepsiCo admits only that its MTN DEW RISE ENERGY product utilizes athletes and other active individuals in its promotional efforts, in light of the energy they require, as has been the case for decades in connection with MOUNTAIN DEW branded products.  PepsiCo denies the remaining allegations in paragraph 77 of the Complaint, including any implication that RBC has exclusive rights to utilize athletes in promotional materials.

78.     PepsiCo admits that its MTN DEW RISE ENERGY product has received favorable press coverage, and that on March 17, 2021, Fast Company published an online article (i) with the headline as quoted in paragraph 78 of the Complaint and (ii) that reported that PepsiCo's consumer insights division developed a Framework of Energy Management and (iii) that stated, "The biggest untapped moment for energy drinks is the 'get started' coffee hour, during which time PepsiCo claims millennials and Gen Zers have increasingly been reaching for a sweet energy drink instead

of a bitter cup of coffee."   PepsiCo denies the remaining allegations in paragraph 78 of the Complaint.

79.     PepsiCo admits that on March 17, 2021, CNBC published an online article stating that PepsiCo's new line of energy drinks called MTN DEW RISE ENERGY is "meant to appeal to energy-drink fans and draw in new consumers who usually stick to coffee or juice."   PepsiCo denies the remaining allegations in paragraph 79 of the Complaint.

80.     PepsiCo admits that promotional materials for its MTN DEW RISE ENERGY product include the language "CAFFEINE EQUAL TO APPROXIMATELY TWO CUPS OF COFFEE."   PepsiCo denies the remaining allegations in paragraph 80 of the Complaint.

81.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 81 of the Complaint at the Northern California Walmart location and denies the remaining allegations in paragraph 81 of the Complaint.

82.     Denied.

83.     PepsiCo is unaware of any instances of actual confusion and denies that an inquiry from a supplier constitutes actual confusion.   PepsiCo admits that RBC has submitted information to the Court about this "rounder," but denies that the contact was based on the physical MTN DEW RISE ENERGY drink or mark.   PepsiCo otherwise is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 83 of the Complaint.

84.     PepsiCo is unaware of any instances of actual confusion and denies that an inquiry about a commercial constitutes actual confusion, particularly if the alleged customer expressly identified the source of the commercial as PepsiCo or MTN DEW.   PepsiCo otherwise is without

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations in paragraph 84 of the Complaint.

85.     Denied.

86.     Denied.

**COUNT I**
**Trademark Infringement – Reverse and Forward Confusion**
**(15 U.S.C. § 1114)**

87.     PepsiCo hereby restates and re-alleges its responses set forth in the preceding

paragraphs and incorporates them by reference as if fully set forth herein.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

## COUNT II
### Federal Unfair Competition/False Designation of Origin -
### Reverse and Forward Confusion
### (15 U.S.C. § 1125(a))

100.    PepsiCo hereby restates and re-alleges its responses set forth in the preceding paragraphs and incorporates them by reference as if fully set forth herein.

101.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 101 of the Complaint.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

## COUNT III
### Unfair Competition Under New York Common Law

111.    PepsiCo hereby restates and re-alleges its responses set forth in the preceding paragraphs and incorporates them by reference as if fully set forth herein.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

## COUNT IV
**New York Common Law Trademark Infringement**

118.    PepsiCo hereby restates and re-alleges its responses set forth in the preceding paragraphs and incorporates them by reference as if fully set forth herein.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

## COUNT V
**Unjust Enrichment Under New York Common Law**

125.    PepsiCo hereby restates and re-alleges its responses set forth in the preceding paragraphs and incorporates them by reference as if fully set forth herein.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

## RESPONSE TO DEMAND FOR RELIEF

PepsiCo denies that Plaintiff is entitled to any relief requested in the Complaint, or to any relief in any form whatsoever from PepsiCo, including from any of Defendant's parents, subsidiaries, franchisees, licensees or affiliates.

## GENERAL DENIAL

PepsiCo further denies each and every allegation in the Complaint to which it has not specifically responded.  Plaintiff's request for relief should be denied in its entirety and the Complaint dismissed with prejudice, and Plaintiff take nothing.  Defendant reserves the right to amend its Answer as additional information becomes available.

## DEFENSES AND AFFIRMATIVE DEFENSES

Pursuant to Federal Rules of Civil Procedure 8(b) and (c), PepsiCo asserts the following separate and distinct defenses and affirmative defenses to the Complaint.  By setting forth these defenses, PepsiCo does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Nothing herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to Plaintiff's allegations.  PepsiCo has not knowingly and intentionally waived any applicable defenses, and hereby reserves all rights to assert and rely upon other defenses and affirmative defenses that become available as discovery proceeds.

### FIRST DEFENSE
### (Acquiescence and Estoppel)

134.    Plaintiff's purported claims, and each of them, are barred in whole or in part by the doctrine of acquiescence, estoppel, or another equitable doctrine.

135.    Plaintiff's alleged marks in the Complaint are composite marks, each incorporating different stylized designs, particular fonts, colors, and literal portions including RISE NITRO

BREWING CO., RISE BREWING CO., RISE & GRIND and variants, and are entitled to a very narrow scope of protection.

136.    On information and belief, besides Plaintiff, there are numerous businesses, organizations and other entities identified by or using the name or mark RISE and variants in connection with coffee, beverages, and other goods and services such that Plaintiff does not and cannot own exclusive rights to use and bar third parties from using the term RISE as a mark or as part of an otherwise different mark, particularly if such use is combined with additional matter or used in connection with different goods as is the case here with respect to MTN DEW RISE ENERGY drinks.

137.    On information and belief, notwithstanding its alleged efforts to police its mark, Plaintiff has consented or failed to object to third party uses and registrations of marks incorporating the term RISE on or in connection with coffee, beverages, and related goods and services.

138.    Plaintiff's alleged use or registration of its claimed marks asserted in the Complaint do not confer upon Plaintiff priority and/or it has not established such broad trademark rights over all trademark uses of "RISE" or other distinct composites incorporating the term, such as MTN DEW RISE ENERGY, to bar such use, even in the beverage space.  Given the limited breadth of protection over its alleged marks, which must be considered in their entireties, Plaintiff admittedly lacks the exclusive rights necessary to bar PepsiCo's use of its distinct mark MTN DEW RISE ENERGY and variants for energy drinks.

139.    Specifically, Plaintiff admitted in prosecuting its own application to register RISE COFFEE CO., which was the subject of U.S. Application Serial No. 86719376, that there are

numerous third party uses of RISE and that the term RISE is weak and of little source-identifying significance.  Specifically, Plaintiff stated:

> [T]hese third-party registrations serve as compelling evidence that the shared term "Rise" is extremely weak and diluted, such that it **creates little source identifying significance** that could contribute to any likelihood of confusion apart from the cited mark as a whole. . . . Accordingly, the cited "Rise" registrations should be given a narrow scope of protection, in light of their coexistence, barring registration of only virtually identical marks. (emphasis added).

140.    Upon adopting and using its asserted marks, Plaintiff was and is aware and directly acknowledges that the term "RISE" is and was diluted and weak, and accepts that any rights it might secure are exceedingly narrow such that others may use the term concurrently with it.

141.    Plaintiff has not alleged any significant change in the marketplace such that it should be afforded the ability to now improperly expand its purported trademarks over the use of an already diluted term by another party into a different beverage category, energy drinks, nor has any such change in the marketplace occurred.  Plaintiff has acquiesced to the use and registration of marks incorporating "RISE" and the dilution of its alleged marks by and through consent or its failure to act against third parties using and registering such marks prior to and concurrently with Plaintiff, including but not limited to the following:

- RISE AND SHINE, U.S. Reg. No. 1932515, registration for "breakfast entrees consisting primarily of biscuits with chicken, beefsteak, sausage, bacon, eggs, ham, cheese, cinnamon and coffee" by Hardee's Restaurants LLC;
- CARAMEL HIGH RISE, U.S. Reg. No. 2702490, registration for "Coffee-Based Beverage" by Arabica Funding, Inc.;
- DAILY RISE EXPRESSO, U.S. Reg. No. 3189744, registration for "beverages, namely coffee, espresso, and coffee-based beverages" by Daily Rise Expresso;
- RISE UP, U.S. Reg. No. 3552154, registration for "coffee" by Rise Up Coffee, LLC;
- DELTA RISE and DELTA Q RISE SYSTEM, U.S. Reg. Nos. 6242162 and 5958225, respectively, registrations for "coffee" and a wide variety of coffee-related beverages by NOVADELTA - COMÉRCIO E INDÚSTRIA DE CAFÉS, LDA;
- GG RISE, U.S. Reg. No. 4966110, registration for "coffee; coffee pods" by Design Manufacture Distribution, LLC;

- RISE UP COFFEE ROASTERS, U.S. Reg. No. 4789722, registration for "Coffee; Ground coffee beans; Roasted coffee beans" by Rise Up Coffee, LLC;
- RISE + ROAM, U.S. Reg. No. 6049181, registration for "coffee" and a variety of other products by Rise and Roam LLC;
- SKYRISE, U.S. Serial No. 88695073, an allowed application for "coffee; tea" by Optima Goods Limited;
- GUNRISE, U.S. Serial No. 90018241, an allowed application for "coffee" by Black Rifle Coffee Company LLC.

142.   Notwithstanding numerous pertinent third-party uses and registrations of marks including the term RISE, Plaintiff declared under penalty of perjury that:  "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

143.   In making such a statement, either Plaintiff knew or should have known that it was false, given the other prior "RISE" marks on the register for coffee, or it believed that its mark was distinguishable from such third party uses and registrations, based on mere slight differences between the marks and the goods, in either case, demonstrating that Plaintiff knowingly lacks the rights necessary to bring the instant litigation against PepsiCo for a different mark used in connection with different goods.

144.   PepsiCo has invested significant capital, time and resources in developing, marketing and selling beverages under and in connection with its mark MTN DEW and MTN DEW RISE ENERGY.  Since at least March 15, 2021, PepsiCo has marketed and sold numerous products in connection with the mark without any known instances of actual confusion.

145.   On information and belief, Plaintiff knew of Defendant's plans to use and use of the mark MTN DEW RISE ENERGY since at least as early as January 11, 2021, prior to when

PepsiCo publicly and prominently launched MTN DEW RISE ENERGY drinks nationwide with a press release on March 17, 2021, with shipments occurring before this date.

146.    Although at least as early as January 2021, Plaintiff knew of PepsiCo's plans to use the mark MTN DEW RISE ENERGY as part of a nationwide product launch for energy drinks and was aware of the packaging trade dress, Plaintiff took no action against PepsiCo to stop the launch.

147.    To its detriment, PepsiCo reasonably relied upon Plaintiff's delay, laches, acquiescence, waiver and inaction as to PepsiCo and numerous other third party uses and registration of RISE in connection with coffee, energy drinks, beverages, related goods and services, and other goods/services, when Plaintiff had an opportunity to take action for a significant period of time, but chose not to.  Such inaction by Plaintiff and reliance caused prejudice to PepsiCo.

148.    Should Plaintiff's claims be sustained in the face of its admissions, acquiescence and inaction, PepsiCo will suffer significant damage and loss because it will be denied the benefits associated with and the goodwill developed through the use of its MTN DEW brand and the mark MTN DEW RISE ENERGY in which it has invested significant time, effort and resources creating, developing and bringing to market.

149.    By its admissions, acquiescence and inaction as to third party uses and registration of marks employing the term "RISE," as well as PepsiCo's own use of MTN DEW RISE ENERGY, Plaintiff is estopped from now claiming injury resulting from PepsiCo's use of the MTN DEW RISE ENERGY mark which is significantly different from Plaintiff's purported marks which identify different goods.  Therefore, Plaintiff should be estopped from asserting the claims

in the Complaint on the bases of acquiescence, inaction, equitable estoppel, or on other equitable grounds.

150.    Plaintiff's prior admissions, acquiescence to third-party use and registration, and failure to take prompt action bars Plaintiff's recovery.

## SECOND DEFENSE
### (Non-Infringement)

151.    PepsiCo has not infringed any applicable trademarks purportedly owned by Plaintiff, if any, or engaged in any acts of unfair competition under federal, state or common law.

152.    Plaintiff is well aware that the word RISE is commonly applied for, registered and/or used by third parties in connection with coffee and beverage products, as well as other goods/services, having affirmatively argued that its purported mark is able to coexist with other prior registrations and uses reflected on the trademark register and in the marketplace based on differences between the marks and/or the goods.

153.    Accordingly, Plaintiff's alleged marks are weak and diluted, and accordingly entitled to only a narrow scope of protection, if any.

154.    Consumers are capable of and have become accustomed to distinguishing between and among marks containing the word RISE, mitigating or eliminating any likelihood of confusion between any such marks.

155.    Plaintiff lacks exclusive rights sufficient to bar PepsiCo from adopting, using and/or registering its unique and distinct mark.

## THIRD DEFENSE
### (No Damage)

156.    Without admitting that the Complaint states a claim, there has been no damage in any amount, manner, or at all by reason of any act alleged against PepsiCo in the Complaint, and the relief prayed for in the Complaint cannot be granted.

157.    Plaintiff's Complaint fails to state claims, allegations, or conduct sufficient to entitle Plaintiff to an award of costs, attorneys' fees, enhanced or treble damages, punitive damages, or interest on any damages.

## FOURTH DEFENSE
### (No Injunctive Relief)

158.    Plaintiff's Complaint fails to state claims, allegations, or conduct sufficient to entitle Plaintiff to any form of injunctive relief requested.   Without limiting the foregoing, Plaintiff's claims for injunctive relief are insufficient, lacking, and/or barred because Plaintiff cannot show that it has or will suffer any harm, let alone irreparable harm, arising from PepsiCo's actions.

## FIFTH DEFENSE
### (PepsiCo's Good Faith)

159.    Any conduct engaged in by PepsiCo was done in good faith, and not willfully or recklessly with an intent to trade upon any purported trademark rights of Plaintiff's if any. Plaintiff's Complaint fails to state claims, allegations, or conduct sufficient to entitle Plaintiff to a finding that PepsiCo's conduct was willful, or that this is an exceptional case, or that any of PepsiCo's conduct constitutes willful and deliberate infringement which in any way should be deterred in the future.

## SXITH DEFENSE
### (Unclean Hands, Trademark Misuse)

160.    Plaintiff's causes of action are barred by reason of unclean hands, including but not limited to reasons of abuse of legal process, trademark misuse, and inequitable conduct that seeks to curtail PepsiCo's lawful conduct, including its right to lawfully market and sell its products in the marketplace.

**SEVENTH DEFENSE**
**(No Proximate Injury)**

161.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered injury proximately caused by any conduct of PepsiCo and/or has not suffered, and will not suffer, injury of the type that the relevant statutes or common law were designed to prevent.

**EIGHTH DEFENSE**
**(Speculative and Uncertain Damages)**

162.    Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages, if any, are too speculative and uncertain.

**NINTH DEFENSE**
**(Abandonment)**

163.    According to RBC's CEO, in January 2019, RBC stopped using its RISE BREWING CO. mark on its canned products and instead starting using RISE NITRO BREWING CO. on its canned products, and continued to do so for years, on both its cans and promotional materials.  RBC's switch to new packaging in 2019 and subsequent years of marketing and sales without the RISE BREWING CO. mark show that RBC stopped using the RISE BREWING CO. mark with no intent at the time to resume use.

**RESERVATION OF ADDITIONAL DEFENSES & CLAIMS**

164.    With RBC having filed its lawsuit under two months ago and no discovery taken place to date, PepsiCo is currently without sufficient knowledge or information upon which to form a belief as to whether additional affirmative defenses or counterclaims are available. However, PepsiCo reserves the right to amend this Answer to assert any other affirmative defenses or counterclaims based on legal theories that may become apparent through discovery, further legal analysis, investigation of Plaintiff's positions, claims and allegations, or information learned or obtained in the course of this action.

## REQUEST FOR RELIEF

165.    PepsiCo requests that the Court enter such orders as are necessary to enter judgment in favor of PepsiCo against Plaintiff on all claims and causes of action asserted by Plaintiff and that Plaintiff take nothing of and from PepsiCo by this suit, and that the Court award PepsiCo all costs, legal fees and other expenses incurred in this proceeding, together with such other and further favorable relief to which it may be entitled.

Dated:  August 9, 2021                    Respectfully submitted,

                                          BAKER BOTTS L.L.P.

                                          */s/ Timothy S. Durst*
                                          Timothy S. Durst (*admitted pro hac vice*)
                                          Paul J. Reilly
                                          Susan Cannon Kennedy (*admitted pro hac vice*)
                                          2001 Ross Avenue, Suite 900
                                          Dallas, Texas 75201-2980
                                          Telephone:  +1.214.953.6500
                                          Facsimile:  +1.214.953.6503
                                          tim.durst@bakerbotts.com
                                          paul.reilly@bakerbotts.com
                                          susan.kennedy@bakerbotts.com

                                          **ATTORNEYS FOR DEFENDANT
                                          PEPSICO, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel, certify that on August 9, 2021, I caused a copy of the foregoing document to be electronically filed using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

*/s/ Timothy S. Durst*
Timothy S. Durst
