**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RISEANDSHINE CORPORATION d/b/a
RISE BREWING

        Plaintiff,

              v.

PEPSICO, INC.

        Defendant.

Case No.    1:21-cv-06324 (LGS)

**DECLARATION OF MELISSA PITTAOULIS**

I, Melissa Pittaoulis, declare and state as follows:

**I.**                **Introduction and Qualifications**

1.      My name is Melissa Pittaoulis, and I have been retained as an expert witness on behalf of PepsiCo, Inc. ("PepsiCo") in the above-captioned matter. I am the same Melissa Pittaoulis who submitted the Expert Report of Melissa Pittaoulis, Ph.D. on August 9, 2021 referenced in this Declaration. I live and work in Philadelphia, Pennsylvania, am over the age of twenty-one, have never been convicted of a crime, and am competent to make this Declaration. This Declaration is based on my personal knowledge.  In connection with this declaration, I have relied on my personal experience, my review of documents and information, and if called as a witness I could and would testify competently thereto.

2.      I am an Associate Director at NERA Economic Consulting ("NERA") where I am a member of the Survey and Sampling and Intellectual Property practices. NERA was founded in 1961 and provides economic, financial, and statistical research and analysis. Over more than 18 years, I have designed research studies, written questionnaires, supervised data collection, and

1

analyzed data. I have designed and conducted numerous surveys measuring likelihood of confusion, secondary meaning, genericness, and fame in connection with numerous trademark and trade dress infringement matters. As part of my statistical sampling work, I select samples and calculate sample estimates and confidence intervals.

3.      I am a member of the American Association of Public Opinion Research and the International Trademark Association. I have presented at conferences including the American Sociological Association Annual Meeting, the American Association of Public Opinion Research Annual Meeting, Centerforce IP Strategy Summit Series, the Berkeley-Stanford Advanced Patent Law Institute, and the Fordham IP Conference. I have also co-authored an article on the use of control groups in Lanham Act surveys, which was published in *The Trademark Reporter*, the law journal of the International Trademark Association.  I earned a Ph.D. in Sociology from Temple University. My courses in graduate school focused on quantitative analysis. Among the courses I completed are Research Design, Survey Research, Statistical Sampling, Social Statistics, Multivariate Statistics, and Hierarchical Linear Modeling. I have also taken professional development "Short Courses" offered by the University of Maryland's Joint Program in Survey Methodology. While I was a graduate student, I served as a teaching assistant in a graduate-level multivariate statistics class and as an instructor for undergraduate courses on statistics at Temple University.

4.      I have served as an expert witness in connection with a range of disputes, including trademark infringement, false advertising and other matters, in a wide variety of industries including: beverage products, automobiles, beauty products, clothing apparel, consumer packaged goods, computers, durable goods, electronics, financial products, mobile phones, personal care products, pharmaceuticals, and snack foods. My experience includes both deposition and

courtroom testimony about survey research. I have been called upon by PepsiCo to investigate the likelihood of forward consumer confusion in this case.

### II.        Assignment

5.        Baker Botts L.L.P., counsel for PepsiCo, requested that I conduct a survey to evaluate the likelihood of consumer confusion arising from the use of the mark MTN DEW RISE ENERGY on current packaging for an energy drink. As such, I designed and conducted a consumer survey to measure the extent, if any, to which there is forward confusion between Plaintiff Riseandshine Corporation d/b/a Rise Brewing's ("Plaintiff" or "Rise Brewing") RISE BREWING CO. coffee drinks and PepsiCo's MTN DEW RISE ENERGY drinks among purchasers and potential purchasers of energy drinks across the United States. True and correct copies of my August 2021 report containing my analysis and conclusions (Exhibit A), the list of documents I reviewed and relied upon (Exhibit A-1),  the survey questionnaire itself (Exhibit A-2), and my curriculum vita (Exhibit A-3) are attached hereto and incorporated herein as **<u>Exhibits A – A-3</u>**.[1]

### III.        Summary of Survey Methodology

6.        Between April 27 and May 11, 2021, I conducted an online survey of 401 consumers who are current or prospective energy drink purchasers. Questions measuring likelihood of confusion are based on the *Eveready* format, which is a standard format for measuring, if any, the likelihood of confusion. The *Eveready* format is widely accepted for evaluating such confusion by federal courts.

---

[1] Due to the size of Exhibit A-4 (data file containing the verbatim answers to the survey questionnaire), Exhibit A-5 (screenshots of the survey as it appeared to respondents), Exhibit A-6 (list of verbatim answers), and Exhibit A-7 (supplemental tables showing the age and gender of the sample respondents, the percentages of respondents who purchased energy drinks in past three months and next three months, and a sample disposition table showing how many respondents started the survey but did not qualify or complete it) to my report, , I have omitted them from this Declaration. However, Exhibits A-4 through A-7 were included with my complete report that was provided to PepsiCo's counsel to serve on Rise Brewing and submit to the Court, as necessary or required. .

7.      Forward confusion occurs when current or prospective purchasers mistakenly believe that the junior trademark user's goods or services are from the same source as or are connected with the senior trademark user's goods or services.

8.      In a "forward" confusion study, the proper universe is potential consumers of the junior user's goods or services, which in this case would be consumers of energy drinks. As such, to qualify for the study, respondents had to be adults 18 years of age and older, who have purchased an energy drink in the past three (3) months and/or expect to do so in the next three (3) months. Most respondents (94.1% of the Test Group, 95.0% of the Control Group) purchased an energy drink in the past three (3) months and said they expect to purchase an energy drink in the next three (3) months.

9.      As noted, the survey had a test group and a control group of respondents. Test group respondents were exposed to images of three different (3) cans of MTN DEW RISE ENERGY drink, and then asked questions about who they think makes or puts out the product; what other products or brands, if any, are made by the company that puts out the product; and whether they think the company that puts out the product is affiliated with any other company or brand. Control group respondents were exposed to the same cans in which wherever the term "MTN DEW RISE ENERGY" appeared, it was digitally replaced with the term "MTN DEW WAKE ENERGY."  I selected "Wake" as the control name because it is also a four-letter word with a morning connotation. The control group respondents were then asked the same questions as the test group respondents. The purpose of the control is to measure levels of "confusion" that are attributable to factors other than the trademark at issue. These factors could include pre-existing impressions, guessing, question wording, and elements of the product packaging other than the trademark at issue. A control stimulus is similar to a placebo in a clinical drug trial as it does not include the

4

"active ingredient" being tested. By subtracting the control group results from the test group results, I isolated the level of confusion that is due to the inclusion of the word "Rise" in the MTN DEW RISE ENERGY mark.

10.     One (1) Test Group respondent and no Control Group respondents reported that they believed Plaintiff was either the source or maker of MTN DEW RISE ENERGY drinks or otherwise associated with them, while two (2) Test Group respondents and no Control Group respondents reported that "Rise" is the maker of MTN DEW RISE ENERGY drink and that the maker of MTN DEW RISE ENERGY also makes coffee products. Combined, the survey found three (3) Test Group respondents (1.5%) who referenced Rise Brewing after observing the MTN DEW RISE ENERGY drinks stimuli. Given that the Control Group yielded 0 percent, the overall net level of confusion is 1.5% (1.5% – 0% = 1.5%)

11.     There were six (6) other respondents who mentioned "Rise" or "Rise company" as the company they thought made MTN DEW RISE ENERGY drinks.  However, later in the survey, they indicated that they (1) did not think Rise made any other products or brands and did not think Rise had an association, connection, or affiliation with any other company or (2) thought Rise made other products, but indicated these products were wine or water rather than coffee. These respondents therefore were not referencing "Rise Brewing Company" when they mentioned "Rise", and were instead repeating a word that appeared on the product packaging, namely, "Rise". Even if I were to include those six (6) other respondents, the level of confusion would only be at most 4.5%, which still does not represent an appreciable number of relevant consumers being confused, and thus demonstrates the absence of confusion.

12.     My survey further demonstrates that the vast majority of respondents identified the products shown as Mountain Dew and/or PepsiCo products. For example, 70.8 percent of the Test

Group and 75.9 percent of the Control Group said either Mountain Dew and/or Pepsi is the maker of the product shown

     **IV.**        **Summary of Conclusions Drawn from the Survey**

     13.     Overall, this research, which reflects the relevant marketplace of current and prospective energy drink consumers across the United States, finds very few respondents—only 1.5%—believed that the PepsiCo MTN DEW RISE ENERGY drinks come from Rise Brewing, or are in any way associated with Rise Brewing.  Moreover, this research also indicates that the majority of consumers correctly associate PepsiCo's MTN DEW RISE ENERGY drinks with PepsiCo and/or the makers of MTN DEW.

     14.     The results of this study are consistent with a finding that there is no likelihood of forward confusion (whether reporting 1.5% or 4.5%) between RISE BREWING CO. coffee drink products and MTN DEW RISE ENERGY drinks offered by PepsiCo.

     15.     I have reviewed and know the contents of my August 2021 report, and it is true and accurate to the best of my own knowledge and I am able to testify as to its contents.

     16.     Pursuant to 28 U.S.C. § 1746, I, Melissa Pittaoulis, further declare under penalty of perjury that the foregoing is true and correct.

     Executed in __Philadelphia_____, _PA_____ on this __9th__ day of August, 2021.


                               _Melissa Pittaoulis____
                               Melissa Pittaoulis