# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Dale M. Cendali
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States
+1 212 446 4800
www.kirkland.com

Facsimile:
+1 212 446 4900

Dear Judge Schofield,

PepsiCo respectfully submits this letter on its intended summary judgment motion seeking dismissal of each of Plaintiff RiseandShine Corp.'s ("RBC") claims.[1]

This case is ripe for summary judgment because the Second Circuit already resolved the central and dispositive issues in PepsiCo's favor. *See RiseandShine v. PepsiCo*, 41 F.4th 112 (2d Cir. 2022); Dkt. 336-1 (CA2 Op.). As to **strength**, the panel held that due to the "close associations between the word 'Rise' and coffee," RBC's marks are inherently weak and, as a result, RBC cannot claim the "exclusive right to prevent others from using" the word "rise." CA2 Op. 15. As to **similarity** of the marks, the panel held the "overall appearances" of the products are "very dissimilar" and would not "suggest to a consumer that they come from the same source." *Id.* at 21-23. Critically, the panel saw no need to discuss the **remaining *Polaroid* factors** to find that RBC failed to establish confusion. Rather, the panel held that only a "convincing combination" of other factors that "militates strongly" in RBC's favor could overcome the deficiencies in its case—and, based on the extensive record,[2] found "[n]o such circumstances exist here." *Id.*

These holdings are fatal to RBC's case. Months of fact and expert discovery have only weakened RBC's claims and strengthened the Second Circuit's logic. Because there is no genuine dispute of fact regarding whether confusion is likely, summary judgment is warranted.

## I.   Summary Judgment Is Warranted

Courts routinely grant summary judgment to defendants in trademark infringement cases.[3] To prevail, PepsiCo need not prove that each *Polaroid* factor tips in its favor.[4] Nor need PepsiCo prove the absence of any "[t]riable factual issues."[5] Rather, PepsiCo need only show that, given the balance of the factors, there is no genuine dispute as to whether confusion is likely. *Id.*

***First,*** the **similarity** factor alone "will warrant summary judgment for an infringement defendant if the court is satisfied that the marks are so dissimilar that no question of fact is presented." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000). Here, the Second Circuit held that "the overall appearances of the cans are very dissimilar" and that "without more striking visual similarities, the shared use of [the] ordinary word ['rise'] … is not enough to render the two products 'confusingly similar.'" CA2 Op. 22-23.[6] The facts supporting that holding—*i.e.*

---

[1] PepsiCo also intends to bring *Daubert* challenges, but understands this letter to be limited to dispositive motions.

[2] As RBC stressed in its appellate briefing, the record included "fourteen factual declarations (including three expert witness declarations)," "live testimony from eight witnesses," and hundreds of exhibits. CA2 Dkt. 146 at 3.

[3] *See, e.g., Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 400 (2d Cir. 2021); *Saxon Glass Techs., Inc. v. Apple Inc.*, 824 F. App'x 75, 80 (2d Cir. 2020); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 125 (2d Cir. 2001); *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 584 (2d Cir. 1991).

[4] *Savin Corp. v. Savin Group*, 391 F.3d 439, 462 (2d Cir. 2004) (affirming summary judgment even though "one of the *Polaroid* factors…weigh[s] in Plaintiff's favor"); *Medici Classics Prods. LLC v. Medici Group LLC*, 683 F. Supp. 2d 304, 314 (S.D.N.Y. 2010) (granting summary judgment even though "competitive proximity…favor[s] plaintiff").

[5] *Advance Magazine Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 113 (S.D.N.Y. 2008) ("Triable factual issues relating to any individual [*Polaroid*] factor … do not preclude a finding that summary judgment is appropriate.").

[6] If this case goes to trial, the jury instructions must reflect these holdings. *Patsy's Italian Rests., Inc. v. Banas*, No. 06 Civ. 05857, Dkt. 202 at 25 (E.D.N.Y. Apr. 10, 2008) (instructing jury to find for party on a *Polaroid* factor).

the appearance of the products at issue—are materially unchanged[7] and not in dispute. Because "the marks are so dissimilar that no question of fact is presented," summary judgment is "warrant[ed]" for this reason alone. *Nabisco*, 220 F.3d at 46; *see also Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166-67 (2d Cir. 2004) (Sotomayor, J.) ("similarity-of-marks factor may alone be dispositive" and obviate consideration of other *Polaroid* factors).

**Second,** as to **strength**, the Second Circuit held that RBC's marks are inherently weak due to the "strong logical associations between 'Rise' and coffee." CA2 Op. 13. Critically, the panel held that trademark law "does not favor giving one marketer an exclusive right to prevent others from using such valuable marketing terms," and that RBC's marks must therefore "command[] a narrow scope of protection." *Id.* at 15. Because that conclusion was fully informed and because no amount of discovery could change it, this Court can and should adopt it as binding.[8]

Moreover, despite evidence that RBC had spent "$17.5 million" to publicize its marks and achieved various accolades, awards, and partnerships, *id.* at 20; *see also* CA2 Dkt. 146 at 7-9, the panel held that RBC "has not shown that its [] mark has achieved sufficient acquired strength to counterbalance the inherent weakness of its mark." CA2 Op. 20. Discovery only bolstered that conclusion: PepsiCo's survey shows that < 1% of consumers associated the word "rise" with RBC.[9] RBC does not proffer *any* surveys or new material evidence on the strength of its marks.

The "crowded field" of marks that "use 'Rise' in the same way as [RBC] does" further "underlines the weakness of [RBC's] mark." CA2 Op. 16-17. As the Second Circuit noted, RBC admitted that the field was crowded in its USPTO filings, representing that "use of the word 'Rise' … is quite common" in the beverages space and that multiple "rise"-formative marks can "peacefully coexist[] without confusion." Dkt. 108-6 at 4; CA2 Op. 18 & n.2. In its statements to this Court, RBC minimized the import of these admissions by noting that they were "made in 2015 in connection with a now-abandoned trademark application." *See, e.g.,* Dkt. 112 at 4. But what RBC did not disclose to this Court at the preliminary injunction stage is that ████████████

████████████████████████████████████

RISE0028823 at 2-4. As the Second Circuit said, "[i]f there was room for Plaintiff's use of 'Rise' in the already crowded coffee field, there would also be room for Defendant's, especially on a product that is distinct from coffee." CA2 Op. 18. Had RBC been forthright with this Court about these prior representations, the injunction may not have issued in the first place.

---

[7] Roughly nine months after filing suit, RBC launched a larger (10 oz.) can it argues more resembles PepsiCo's Mtn Dew Rise Energy. But that can is materially identical to RBC's 7 oz. can and, in any case, a plaintiff cannot "alter its mark to more closely mimic the [defendant]'s mark and then claim injury from the increased likelihood of confusion." *J.T. Colby & Co., Inc. v. Apple Inc.*, 2013 WL 1903883, at *21 n.30 (S.D.N.Y. May 8, 2013) (Cote, J.).

[8] *Naser Jewelers, Inc. v. City of Concord, N.H.*, 538 F.3d 17, 19-20 (1st Cir. 2008) ("prior decision [on] a preliminary injunction" binding as "[t]he record did not significantly change on summary judgment, except perhaps to make [defendant]'s case stronger"); *Nokia Corp. v. InterDigital*, 2009 WL 585848, at *1-2 (S.D.N.Y. Mar. 5, 2009) (as "Second Circuit 'ha[d] all evidence necessary to finally decide the issue,'" its "unequivocal[]" holding is "binding"); *see also Meacham v. Knolls Atomic Power Labs.*, 358 F. App'x 233, 235 (2d Cir. 2009) (court bound by both "specific dictates" of appellate ruling "as well as the broader spirit of the mandate"); Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 4478.5 n.6 (appellate court's legal holdings on review of preliminary injunction are binding).

[9] Notably, the same survey expert found that less than 1% of energy drink consumers associate the word "rise" with PepsiCo, which further establishes that consumers do not understand the word "rise" as an indicator of source.

2

***Third,*** as to **actual confusion**, the Second Circuit notably found unavailing all of RBC's anecdotal evidence, *see* CA2 Dkt. 146 at 43-48, holding instead that "[t]o the extent that [PepsiCo]'s use of its marks caused any likelihood of confusion, this was because [RBC] chose a weak mark in a crowded field." CA2 Op. 23. Aside from two anecdotes regarding alleged conversations with a gas station clerk and an employee's mother-in-law, RBC has failed to proffer any anecdotes of actual confusion beyond those already considered by the Second Circuit. RBC cannot establish confusion by pointing to the same anecdotes that the panel considered and dismissed. In any case, each of RBC's anecdotes are irrelevant as they relate only to inquiries, observations, or "confusion" by unnamed persons unconnected to a purchase decision—and, even if credited, are *de minimis* and insufficient as a matter of law to establish actual confusion.[10]

Discovery has only confirmed the absence of actual confusion. Even though PepsiCo repeatedly pointed out RBC's failure to proffer survey evidence, Dkt. 103 at 16, RBC has ***still*** failed to submit even a single consumer survey in support of its claim. That failure is "evidence that actual confusion cannot be shown." *Reply All Corp.*, 843 F. App'x at 397 (affirming summary judgment for defendant). At no point has RBC even attempted to explain its failure to submit any quantitative study of confusion (despite its retention of two survey experts who merely criticized PepsiCo's surveys). PepsiCo, on the other hand, proffers at least six separate surveys conducted by six experts—testing both forward and reverse confusion, at different points in time, using various aided and unaided methodologies, *see* Dkt. 305 at 2—each of which shows the absence of confusion despite the fact that the products were on the market concurrently for over eight months.

***Finally,*** as to the **remaining *Polaroid* factors**, the Second Circuit held that, given the weakness of RBC's marks, RBC cannot prevail without a "convincing combination of other *Polaroid* factors [that] militates strongly in favor of likelihood of confusion"—and that RBC failed to make that showing. CA2 Op. 21. Nothing revealed in discovery changes that conclusion. As to proximity, the panel recognized that PepsiCo's energy drink is "a product ***distinct from coffee***," *id.* at 18, and, in any case, RBC cannot survive summary judgment by manufacturing factual disputes regarding distribution and merchandising. *Playtex*, 390 F.3d at 162 (summary judgment despite proximity). Similarly, as to intent, the panel already disregarded RBC's argument that PepsiCo employees were aware of RBC's mark, no doubt because it is irrelevant as this factor requires evidence that PepsiCo chose its name "with the intention of capitalizing on [RBC]'s reputation and goodwill." *Lang*, 949 F.2d at 583-84. There is no evidence that PepsiCo did so, much less evidence that "militates strongly in favor of likelihood of confusion." CA2 Op. 21.[11]

## II.    PepsiCo Is Entitled to Partial Summary Judgment on RBC's Remedies Claims

While the Court need not reach the issue of remedies, PepsiCo is also entitled to summary judgment on RBC's overreaching damages claims. Specifically, **(a)** RBC cannot disgorge the profits associated with the sales of Starbucks Nitro Cold Brew products because those products have no relationship to the alleged infringement, Dkt. 241; **(b)** RBC cannot disgorge Mtn Dew Rise Energy profits because, *inter alia*, there are none to disgorge; **(c)** RBC's lost value/lost cost savings theory is unsupported, contradicted by RBC's documents, and lacks causation; and **(d)** RBC's prospective corrective advertising damages are legally unsupported and speculative.

---

[10] *See* July 22, 2022 Tr. at 17:9-19 *in Rhode-NYC, LLC v. Rhodedeodato Corp. et al.*, No. 22 Civ. 05185 (Dkt. 63) (Schofield, J.) (anecdotes "problematic" as they "do not reflect confusion about [] source" and are "simply inquiries or observations"); *Lang*, 949 F.2d at 582 (dismissing evidence of "four hundred [misdirected] phone calls" as "fail[ing] to demonstrate a genuine issue as to … actual confusion" and affirming summary judgment).

[11] Because RBC cannot show likely confusion, its other claims also fail. *See, e.g., Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 424 (S.D.N.Y. 2012); *Int'l Leisure Prods., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018).

Sincerely,

Dale M. Cendali