# ALSTON & BIRD

**Paul Tanck**　　　　　　　　　　　Direct Dial: : 212-210-9438　　　　　　　　　　　Email: **paul.tanck@alston.com**

August 30, 2022

The Honorable Lorna Schofield

Re:　*RiseandShine Corp. d/b/a Rise Brewing v. PepsiCo, Inc.,* 1:21-cv-06324-LGS:
　　　Rise Brewing's Response to Pepsi's Letter Request (Dkt. 340). **REDACTED VERSION**

Dear Judge Schofield:

　　　This Court previously found that Pepsi's trademark infringement was "not even a close question." Dkt. 199, 2/22/22 Hr. Tr., 21:5-11. Despite the Second Circuit's order, fact discovery has only strengthened this Court's findings, revealing substantial new evidence supporting a likelihood of confusion, and bringing into sharper focus Pepsi's willful misconduct.

　　　Pepsi's senior executives testified at the PI hearing: "Q: Did you know about Rise Brewing Co. or its products when coming up with the name Mtn Dew RISE Energy? A: **Absolutely Not**." Dkt. 160, PI Hr. Tr. at 121:1-13. "Q: Did anyone at PepsiCo ever raise to you the issue … about Rise Brewing Company? A: **I never heard of…Rise Brewing**." *Id.* at 105:1-4. Pepsi doubled down on these falsehoods before the Second Circuit, stating unequivocally that "**[n]o one … that developed the Mtn Dew Rise [] name was aware of [Rise Brewing] or its coffee products when creating that product name.**" Pepsi Appellate Br. Dkt. 108 at 19. Fact discovery revealed the exact opposite: Pepsi intentionally copied Rise Brewing's marks to capitalize on Rise Brewing's success in the morning beverage market to benefit both Mtn Dew RISE and STARBUCKS NITRO, which Pepsi co-owns. Remarkably, [REDACTED]

　　　These misrepresentations demonstrate the impropriety of summary judgment, as issues of bad faith and credibility are the province of the fact finder. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984) ("[t]he district court should resist drawing fact inferences in summary judgment situations, particularly where . . . intent is at issue.").

　　　Pepsi misled the Second Circuit by falsely portraying itself as an innocent adopter. Pepsi now asks this Court to ignore these prior misrepresentations and grant it summary judgment. But this Court has already explained that Rise Brewing may renew its injunction motion on a fuller and different record. Dkt. 199 at 21:11-16 ("I believe my prior decision was correct, and I believe is was not even a close question. But if for some reason the Court of Appeals thinks differently . . . plaintiff could certainly come back, renew their injunction motion on a fuller and different record, and that in my view, would be an appropriate time to hear this."). As the Second Circuit has admonished, "[d]isputes between parties as to trademark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment." *Marcus Breier Sons, Inc. v. Marvlo Fabrics, Inc.*, 173 F.2d 29, 29 (2d Cir. 1949). Further, Pepsi's letter completely ignores Supreme

Court precedent that an appellate court's decision on a PI is not binding on the merits phase of this litigation. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); *see also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). As discovery has revealed substantial new evidence, a full development of the facts at trial will be particularly important to a proper resolution of this case.[1]

In addition to the falsified record and evidence of bad faith, new evidence has emerged as to the other Polaroid factors as well. On the issue of strength of mark, nearly every PepsiCo industry expert and lay witness, each with decades of beverage experience, was unable to provide ***even a single example of another beverage*** using the term "RISE" other than Rise Brewing. This new and powerful testimony completely undermines Pepsi's "crowded field" theory. For example:

- **Ryan Collis, VP Coffee.** Q: As you sit here today, can you name any product whatsoever that uses the term "Rise" in the name, other than [plaintiff and defendant]? A. *No as I sit here today, no, not off the top of my hea*d. Depo. Tr. 139:12-17.

- **Matthieu Aquino, VP Design**. Q. [W]ere you personally aware of any other morning drinks that used the term "RISE" in their name? A. *No*. Q. Were you aware of any coffee drinks that used the word "RISE" in their name? A. *No*. Depo. Tr. 63:18-25.

- **Rebecca Messina, Pepsi "beverage industry" expert**. Q… [A]re you aware prior to your work on this case any beverage products named Rise that were on the market? A. . . . . . *Sitting here today, I cannot recall one prior to this case that comes to mind*. Depo. Tr. 18:24-19:10.

On the issue of actual confusion, amongst the ***seven*** actual confusion surveys Pepsi commissioned, not one replicated market conditions and were all criticized by expert testimony for being run too early or long after Mtn Dew RISE had been off store shelves. Pepsi's army of hired guns cannot dispute the real, credible, and material actual confusion that has taken place, including new examples of retailer and customer confusion that surfaced in discovery. And, on the issue of proximity of the products, documents produced by Pepsi revealed the close proximity and competitive nature of the products. One Pepsi slide deck states that ████████████████████████████████████████████████████████████████████████████████████████████████████████

The Second Circuit never stated that Rise Brewing was entitled to no trademark protection and the law clearly provides that even weak marks are entitled to receive protection against infringement by similar goods that are similarly marketed. *See* McCarthy on Trademarks § (5th ed.) ("A mark which is relatively weak in the overall market … can nonetheless be strong enough to make confusion likely when a junior user uses a similar mark in the same general line of business."). Ultimately, the Second Circuit disagreed with this Court on two Polaroid factors: (1) strength of mark, and, in light of its finding that Rise Brewing's mark was weak, (2) similarity of

---

[1] Rise Brewing also has additional claims for unfair competition and unjust enrichment under New York law that were not before the Second Circuit and which turn on Pepsi's bad faith, not on the strength of the marks. *Leon Finker, Inc. v. Schlussel*, 469 F. Supp. 674, 680 (S.D.N.Y.) ("unfair use by a party of a mark, even though found descriptive and not subject to trademark protection, could, in certain circumstances, be enjoined, and damages awarded" and "New York courts have deemed the conduct to be unfair despite the fact that the plaintiff's mark has not acquired a secondary meaning"), *aff'd*, 614 F.2d 1288 (2d Cir. 1979).

mark.[2] However, these conclusions were based on the inaccurate preliminary allegations by Pepsi that the market is crowded with "rise" products. While Pepsi has offered evidence of registrations and internet searches that contain "rise", it presented no evidence that any uses in the beverage space were actually recognized by customers.[3] *Sunenblick v. Harrell,* 895 F. Supp. 616, 627 (S.D.N.Y. 1995) ("third-party trademarks [are] significant not by virtue of their mere existence but upon proof of their usage and customer awareness of such marks") (quoting *Scarves by Vera, Inc. v. Todo Impts., Ltd*., 544 F.2d 1167, 1173 (2d Cir. 1976)); *Lexington Mgm't Corp. v. Lexington Cap. Partners*, 10 F.Supp.2d 271, 281–82 (S.D.N.Y. 1998) (The mere existence of a third-party mark through registrations or the internet "is not evidence of what happens in the marketplace," requiring evidence that the third-party use was "well promoted" and that "customers are familiar with their use."). Pepsi's failure of proof regarding customer awareness combined with Pepsi's admissions that the beverage market is devoid of products *using* the term "rise" presents just one of the many genuine issues of material fact that precludes summary judgment.[4]

\* \* \*

The Court's prior decision was correct, and it was not even a close question. The description of marks as "weak" or "strong" should not obfuscate the basic issue, that **actual confusion between Mtn Dew RISE and Rise Brewing has occurred** and will continue to occur as these are similar goods that are similarly marketed. Moreover, Pepsi's actions were done willfully and in bad faith and have caused substantial harm to Rise Brewing. Summary judgment would be entirely inappropriate in this matter, given the abundant disputes of genuine issues of material fact and conflicting evidence which must all be resolved in Rise Brewing's favor as the non-moving party.  A jury is required to hear the evidence of confusion, bad faith, unfair competition, and harm caused by Pepsi and ultimately resolve these highly fact-intensive inquiries.

---

[2] The Second Circuit disagreed with this Court's assessment of similarity, focusing instead on its own visual comparison of can size and color. The preliminary record, however, did not include Rise Brewing's larger cans and new colors associated with new flavors, which were part of a pre-planned rollout into Rise Brewing's natural zone of expansion that predated Mtn Dew RISE. Furthermore, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This comports with this Court's reaction to the striking similarity of the products: "I must say, looking at the product side by side, I was struck by the similarity…, and I look forward to hearing from Pepsi …. **I know that it says that the creative team was not involved with the team that had been talking about possible combination with the plaintiff** here, **but there does seem to be, for whatever reason, a striking similarity**. Dkt. 125, 9/9/21 PI Hr. Tr. at 8:17-9:1.

[3] Pepsi's letter improperly cites to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It was not focused on the extent of use of "rise" in retail channels for ready to drink beverages that would be relevant to Rise Brewing and Mtn Dew RISE.

[4] The Second Circuit also noted that weakness of a mark may actually *support* a claim of reverse confusion. *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, \*18 (2d Cir. 2022); *see also First Natl Bank of Omaha, Inc. v. MasterCard Int'l, Inc*., 2004 WL 1575396, \*12 (S.D.N.Y. July 15, 2004) (a "plaintiff with a mark that is commercially weak . . . is more likely to succeed in establishing reverse confusion, particularly against a defendant with a far stronger mark.").

                                            Respectfully Submitted,

                                            <u>/s/ *Paul Tanck*</u>
                                            Paul Tanck
                                            *Counsel for Plaintiff RiseandShine*
                                            *Corporation d/b/a Rise Brewing*

cc:      All counsel of record (by ECF)