# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

| | | |
|---|---|---|
| Lauren J. Schweitzer<br>To Call Writer Directly:<br>+1 213 680 8252<br>lauren.schweitzer@kirkland.com | 555 South Flower Street<br>Los Angeles, CA 90071<br>United States<br>+1 213 680 8400<br>www.kirkland.com | Facsimile:<br>+1 213 680 8500 |

November 4, 2022

**VIA CM/ECF**

    Re: *RiseandShine Corp. v. PepsiCo, Inc.*, 1:21-cv-6324 (LGS)

Dear Judge Schofield:

  Pursuant to Section I.G. of the Court's Individual Practices in Civil Cases ("Individual Rules") and this Court's October 24, 2022 Order (Dkt. 371), Defendant PepsiCo, Inc. ("PepsiCo") respectfully submits this letter motion to file under seal Defendant's Motion for Summary Judgment ("MSJ Brief") as well as Exhibits 1, 2-4, 7-10, 12-15, 17, 22-23, 25-31, 33-34, 36, 40-41, 43-65, 74-75; the Declaration of Monica Smith ("Smith Declaration"); the Declaration of Diana Torres ("Torres Declaration"); and PepsiCo's Rule 56.1 Statement of Undisputed Facts In Support of Its Motion for Summary Judgment ("Rule 56.1 Statement").

  The redacted information in the MSJ Brief, the Smith Declaration, the Torres Declaration, and the Rule 56.1 Statement describe and cite to documents that a producing party has designated with one of the confidentiality designations under the Protective Order, and the exhibits were designated with one of the confidentiality designations under the Protective Order.

  **Legal Standard:** While federal courts recognize a general common law right of public access to court records and proceedings, the right of access is not absolute and courts have discretion to deny such public access where appropriate. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978)). "To determine whether documents should be placed under seal, a court must balance the public's interest in access to judicial documents against the privacy interests of those resisting disclosure." *In re Utica Mut. Ins. Co. v. INA Reinsurance Co.*, 468 F. App'x 37, 39 (2d Cir. 2012) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)).

  Court documents may be sealed to avert "[p]otential damage from the release of sensitive business information" and protect from the disclosure of information that may harm a business's ability to compete in the future. *Bergen Brunswig Corp. v. Ivax Corp.*, No. 97 Civ. 2003, 1998 WL 113976, at *3 (S.D.N.Y. Mar. 12, 1998) (collecting cases); *Standard v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming district court's sealing on grounds that the party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access").

  **Sealing Justification – PepsiCo Information (MSJ Brief, Smith Declaration, Rule 56.1 Statement, Exs. 1, 2-4, 7, 14, 17, 23, 29-31, 33-34, 36):** PepsiCo's MSJ Brief, Smith Declaration, Torres Declaration, and Exhibits 1, 2-4, 7, 14, 17, 23, 29-31, 33-34, 36 disclose sensitive business information, as detailed below, including internal non-public design and branding development and internal strategy, all created within the past two to three years. Disclosure would allow competitors access to PepsiCo's internal design ideas, branding ideas, confidential research, and

**KIRKLAND & ELLIS LLP**

November 4, 2022
Page 2

internal strategies, which may harm PepsiCo's ability to compete in the future.  Courts recognize that these types of materials are appropriately maintained under seal.  *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (granting motion to seal information related to testing, qualitative market research, and research and development for new products); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (noting that "material concerning the defendants' marketing strategies [and] product development" were "highly proprietary" and could "remain under seal").  In addition, the materials sought to be sealed disclose  information about the financial performance of PepsiCo's Mtn Dew Rise Energy product.  This information is properly sealed because it is highly sensitive information which risks causing PepsiCo harm if made known to PepsiCo's competitors.  PepsiCo does not publicly report information of this type and ordinarily keeps it confidential given its competitive sensitivity.  *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing information relating to financial performance to be filed under seal).  Specifically:

1. Exs. 2, 3, 4, 7, and 14 are excerpts of deposition testimony containing highly sensitive strategy, branding, and financial performance data related to PepsiCo's MTN DEW RISE ENERGY Product, information relating to highly sensitive market research, or information relating to confidential internal design and development work.

2. Exhibits 1, 23, 30, and 33 are documents containing highly sensitive financial sales data related to the financial performance of PepsiCo's MTN DEW RISE ENERGY Product.

3. Exhibit 17 is an excerpt from the expert report of Edward J. Fox containing information from an internal PepsiCo marketing presentation reflecting highly sensitive market research, financial performance data, and revenue targets for PepsiCo's MTN DEW RISE ENERGY product.

4. Exhibit 29 is an excerpt from an internal PepsiCo marketing document reflecting confidential launch strategies and market research for PepsiCo's MTN DEW ENERGY product.

5. Exhibit 31 is an excerpt from an internal PepsiCo marketing document reflecting confidential internal design work, confidential potential name ideas that have not been publicly used, and confidential marketing research related to PepsiCo's strategic internal development of the energy drink that eventually became MTN DEW RISE ENERGY.

6. Exhibit 34 is an internal PepsiCo document reflecting PepsiCo's confidential market research strategies and the agenda for an internal PepsiCo marketing meeting.

7. Exhibit 36 is a report containing non-public subscription third-party sales data of third-party beverage brands, generated by PepsiCo.

8. Torres Declaration is a declaration containing information from the deposition and expert report of RBC's expert witness Brett L. Reed RBC marked as ATTORNEYS' EYES

ONLY (which designation PepsiCo contests), and information from PepsiCo's confidential financial data and strategy.

**RBC Information (MSJ Brief, Smith Decl., Rule 56.1 Statement, Exhibits 8-10, 12-13, 15, 17, 22, 27-28, 40-41, 43-65, 75):** Exhibit 43 is a document that was designated as CONFIDENTIAL by RBC's counsel; Exhibits 40-41 and 44-65, 75 are documents or excerpts of documents that were designated as OUTSIDE ATTORNEYS' EYES ONLY by RBC's counsel; and Exhibits 27 and 28 are excerpts of RBC documents produced by an investor of RBC and designated by the investor's counsel as ATTORNEYS' EYES ONLY. Ex. 22 is an excerpt of an expert report served by RBC that its counsel designated as OUTSIDE ATTORNEYS' EYES ONLY. Exs. 8, 9, 10, 12, 13 are excerpts of deposition testimony that RBC's counsel has designated as CONFIDENTIAL or higher under the protective order. And Exs. 15 and 17 are excerpts of expert reports that discuss information that RBC's counsel has designated as CONFIDENTIAL or higher under the protective order.[1] In accordance with Section I.D.3 of the Court's Individual Rules, RBC bears the burden of persuasion on the necessity of sealing these exhibits and discussions of information in these exhibits in PepsiCo's Memorandum, Rule 56.1 Statement, and Smith Declaration; RBC must file a letter within two business days of this motion explaining why the information should be filed under seal.

This burden of persuasion for sealing, especially as to the limited excerpts discussed in PepsiCo's filings, will be difficult for RBC to carry. RBC has already chosen to make public statements about many of the issues reflected in these documents, addressed in PepsiCo's filings.

- **Fundraising history:** RBC deliberately and publicly put at issue the history of its fundraising efforts. RBC's CEO publicly testified, "I've never had issues raising capital," specifically referencing his "six capital raises to date," and disclosed that RBC had raised $28 million in total. 10/8/21 Hearing Tr. 32:11, 53:13-17. RBC elicited similar testimony from the investor it called to testify, who publicly stated that RBC "has had no trouble ever raising capital. They were doing it like clockwork pretty much every year." 10/8/21 Hearing Tr. 62:3-6. Yet RBC has now designated as OUTSIDE ATTORNEYS' EYES ONLY the bulk, if not all, of the underlying documents and testimony on this subject.
- **June 2021 fundraising:** RBC's CEO publicly testified that RBC raised $5 million in June 2021 through a SAFE note, which he claimed was an "emergency note" from RBC's "largest existing investor because we were running out of capital as we were unable to fund this round." 10/8/21 Hearing Tr. at 53:13-54:5. Yet RBC has refused to de-designate Mr. Gyesky's communication to investors about this funding (Ex. 53) or other statements reflecting this funding (Ex. 54 at RISE0022604).
- **Investor rationale and interest in trademarks:** RBC deliberately and publicly put at issue the reason for investors' decisions to invest or not, telling the Court publicly that "everybody is pausing and waiting to see what is going to happen with

---

[1] As discussed above, Exhibit 17 also reflects commercially sensitive information of PepsiCo.

- the name" and claiming that "nobody wants to invest money in a company when there is an infringer like Pepsi." 9/9/21 Hearing Tr. 11:4-8. RBC's CEO publicly testified that due to the launch of MDRE, RBC's investments have "dried up" and that investors have told him "they don't believe they can invest in our brand because we've lost control of it." 10/8/21 Hearing Tr. 30:25-31:8. Yet RBC refused to de-designate statements in investor documents (Ex. 27 at ESV-0000195 and Ex. 61 at RISE0028012) that reflect RBC's communications pertinent to that issue. RBC has also refused to de-designate a statement by another company about its own trademark, in a letter to RBC that the company itself did not label as confidential (Ex. 60), and statements in RBC's response to that third party pertinent to RBC's positions in this case on issues such as mark strength (Ex. 65).
- **RBC's financial condition:** RBC deliberately and publicly put its financial condition at issue. RBC's CEO publicly testified in October that RBC had about $1.5 million in the bank, which was about "30 days' worth of runway," and that "if we don't bring in outside capital, our business will fail." 10/8/21 Hearing Tr. 31:12-25. Yet RBC refused to de-designate statements bearing on these issues in Gyesky's communications to investors (Exs. 55, 57, and 75).
- **The cause of RBC's financial condition:** RBC's lawyer told the Court at the September hearing, in explaining his client's motivations to sue, "We are not in this to make a cash grab. We are not in this to be punitive to Pepsi. We are in this because our life – my client's life is at stake." 10/8/21 Hearing Tr. at 15:5-7. RBC elicited public testimony from an investor that MDRE was "truly an existential threat to the business." 10/8/21 Hearing Tr. 58:6-9. RBC's attorney closed his argument at the evidentiary hearing by claiming that the sale of MDRE "is destroying Rise's company," *id.* at 169:10-14, and told the Second Circuit that "a stay of the injunction could end Rise as a company," 11-20-21 Br. (App. Dk. 38) at 5. Yet RBC has refused to de-designate information about its financial performance before the launch of MDRE.
- **Sales history:** In an effort to tie its purported financial struggles to the launch of Mtn Dew Rise Energy, RBC's CEO testified to the Court, "[w]e've gone from a small restaurant in Brooklyn to across the country and sold in Walmart and 20,000 other stores in a very short period of time." 10/8/21 Hearing Tr. 32:1-7. Yet RBC has refused to de-designate even a statement that simply reflects the timing of RBC's early sales activity (Ex. 28 at ESV-0000838).
- **Meetings with PepsiCo:** RBC made "meetings" with PepsiCo front-and-center of its public filings, discussing these allegations starting on the first page of both its preliminary injunction motion (Dkt. 82) and its live pleading (Dkt. 80). Yet it has refused to de-designate statements in an internal text message about RBC's goals for such a meeting (Ex. 62).

**Third-party information (Exs. 25, 26, 74, Smith Declaration):** Exhibits 25, 26, and 74 are excerpts of documents produced by third parties (RYZE and DAILY RISE) and designated as OUTSIDE ATTORNEYS' EYES ONLY by their respective counsel. Accordingly, PepsiCo has filed these documents under seal and redacted the discussions of the information about these

**KIRKLAND & ELLIS LLP**

November 4, 2022
Page 5

exhibits from Ms. Smith's declaration.  These third-party documents reflect internal financial data, including confidential expenses, of the type that courts typically seal upon request due to the sensitivity of the internal financial information.  *See, e.g., Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing information relating to financial performance to be filed under seal).

     A list of counsel who should be granted access to the sealed material is listed in Appendix 1. PepsiCo has served the letter on Plaintiff's counsel via ECF contemporaneously with this filing.

                                            Sincerely

                                            *s/ Lauren J. Schweitzer*

                                            Lauren J. Schweitzer

KIRKLAND & ELLIS LLP

November 4, 2022
Page 6

## Appendix 1: List of Parties and Counsel

All counsel of record may have access to the filings:

**Counsel for Plaintiff RiseandShine Corporation, *doing business as* Rise Brewing**

> Jason Demian Rosenberg
> Christopher Louis McArdle
> Emily Chambers Welch
> Holly Hawkins Saporito
> Neal Joseph McLaughlin
> Paul J. Tanck
> Shaleen Patel

**Counsel for Defendant PepsiCo, Inc.**

> Dale Margaret Cendali
> Allison W. Buchner
> Diana Torres
> Lauren Schweitzer
> Luke Budiardjo
> Maria Monica Beltran
> Monica H. Smith
> Paul J. Reilly
> Saghar Esfandiarifard
> Susan Cannon Kennedy