IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RISEANDSHINE CORPORATION d/b/a RISE BREWING<br><br>                         Plaintiff,<br><br>         vs.<br><br>PEPSICO, INC.<br><br>                         Defendant. | CASE NO.: 1:21-cv-06324-LGS<br><br>Honorable Lorna Schofield<br><br>JURY TRIAL DEMANDED<br><br>**PUBLIC VERSION** |

**PLAINTIFF RISEANDSHINE CORPORATION d/b/a RISE BREWING'S OPPOSITION
TO DEFENDANT PEPSICO, INC.'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................................. 2

III.   LEGAL STANDARD .......................................................................................... 4

IV.    ARGUMENT ........................................................................................................ 6

    A.  Rise Will Succeed on Its Claims at Trial ........................................................ 6

        1.   The Strength Factor Mandates a Trial ................................................ 6

        2.   The Similarity Factor Mandates a Trial .......................................... 11

        3.   Actual Confusion Evidence Mandates a Trial ................................. 12

        4.   The Proximity of the Products Mandates a Trial ............................. 14

        5.   Bridging the Gap and Product Disparity Mandate a Trial ............... 15

        6.   Consumer Sophistication Mandates a Trial ..................................... 16

        7.   Pepsi's Intent Mandates a Trial ....................................................... 16

    B.  Rise Seeks Appropriate Remedies to Address Pepsi's Misconduct ............... 18

        1.   Rise's Claim for Disgorgement of MTN DEW RISE Profits is Valid ..................... 18

        2.   Rise's Claim for Corrective Advertisement is Appropriate ............. 20

        3.   Rise's Actual Damages are Recoverable .......................................... 21

        4.   Rise's Claim for Disgorgement from STARBUCKS NITRO is Valid ..................... 23

V.     CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000) .........................................................................................10

*Allen v. Coughlin*,
    64 F.3d 77 (2d Cir. 1995) ................................................................................................5

*Am. Airlines, Inc. v. Delta Air Lines, Inc.*,
    4:19-cv-1053-O, 2021 WL 3629735 (W.D. Tex. May 18, 2021) ..................................21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................18, 22, 23

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*,
    42 F. Supp. 3d 540 (S.D.N.Y. 2014) ............................................................................19

*Can't Live Without It, LLC v. ETS Express, Inc.*,
    287 F. Supp. 3d 400 (S.D.N.Y. 2018) ..........................................................................17

*Car-Freshner Corp. v. Am. Covers, LLC*,
    980 F.3d 314 (2d Cir. 2020) ............................................................................................9

*Chanel, Inc. v. WGACA, LLC*,
    No. 18-cv-253-LLS, 2022 WL 902931 (S.D.N.Y. Mar. 28, 2022) ...............................20

*Coach, Inc. v. Horizon Trading USA Inc.*,
    908 F. Supp. 2d 426 (S.D.N.Y. 2012) ..........................................................................25

*Conn. Cmty. Bank, N.A. v. Bank of Greenwich*,
    No. 3:06-cv-1293 (VLB), 2008 WL 398849 (D. Conn. Feb. 11, 2008) ........................14

*Consumers Union of U.S., Inc. v. New Regina Corp.*,
    664 F. Supp. 753 (S.D.N.Y. 1987) .................................................................................5

*Dad's Root Beer Co. v. Doc's Beverages, Inc.*,
    94 F. Supp. 121 (S.D.N.Y. 1950), *aff'd*, 193 F.2d 77 (2d Cir. 1951) ..........................25

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) ............................................................................................5

*Dillon v. Morano*,
    497 F.3d 247 (2d Cir. 2007) ..........................................................................................17

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
    442 F.3d 812 (3d Cir. 2006) ............................................................................................5

*DPWN Holdings Inc. v. United Air Lines, Inc.*,
  No. 11-cv-0564 (BMC) (PK), 2019 WL 1515231 (E.D.N.Y. Feb. 20, 2019) ........................20

*Engine Capital Mgmt. v. Engine No. 1 GP, LLC*,
  No. 21-cv-149, 2021 WL 1372658 (S.D.N.Y. Apr. 12, 2021) .................................14

*Estee Lauder Inc. v. Gap, Inc.*,
  108 F.3d 1503 (2d Cir. 1997).................................................................7

*Experience Hendrix, L.L.C. v. Pitsicalis*,
  No. 17-cv-1927-PAE-GWG, 2020 WL 3564485 (S.D.N.Y. July 1, 2020) ...........................20

*First Nat'l Bank of Omaha, Inc. v. MasterCard Int'l, Inc.*,
  Nos. 03 Civ. 707, 02 Civ. 3691, 2004 WL 1575396 (S.D.N.Y. July 15, 2004) .....................10

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004)...............................................................5

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
  826 F.3d 27 (2d Cir. 2016)..................................................................14

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998).................................................................18

*Irish Lesbian & Gay Org. v. Giuliani*,
  143 F.3d 638 (2d Cir. 1998)................................................................5

*J.T. Colby & Co. v. Apple Inc.*,
  No. 11 Civ. 4060, 2013 WL 1903883 (S.D.N.Y. May 8, 2013)................................12

*Lexington Mgmt. Corp. v. Lexington Capital Partners*,
  10 F. Supp. 2d 271 (S.D.N.Y. 1998)......................................................7, 9

*Litton Sys., Inc. v. Sundstrand Corp.*,
  750 F.2d 952 (Fed. Cir. 1984)..............................................................5

*M. Fabrikant & Sons v. Fabrikant Fine Diamonds*,
  17 F. Supp. 2d 249 (S.D.N.Y. 1998).......................................................13

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
  818 F.2d 254 (2d Cir. 1987)...............................................................11

*Morningside Grp., Ltd. v. Morningside Capital Grp., L.L.C.*,
  182 F.3d 133 (2d Cir. 1999)...............................................................13

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010)................................................................6

*New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*,
    312 F. Supp. 2d 195 (D. Conn. 2004) ..................................................................20

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*,
    269 F.3d 114 (2d Cir. 2001) ...............................................................................14

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
    590 F. Supp. 2d 500 (S.D.N.Y. 2008) ..................................................................10

*Olsen v. Stark Homes, Inc.*,
    759 F.3d 140 (2d Cir. 2014) ...............................................................................17

*Patsy'sBrand, Inc. v. I.O.B. Realty, Inc.*,
    317 F.3d 209 (2d Cir. 2003) ...............................................................................16

*PBM Prods., Inc. v. Mead Johnson & Co.*,
    174 F. Supp. 2d 417 (E.D. Va. 2001), *aff'd*, 639 F.3d 111 (4th Cir. 2011) ...........................21

*PODS Enters., LLC v. U-Haul Int'l, Inc.*,
    126 F. Supp. 3d 1263 (M.D. Fla. 2015) ................................................................21

*Reply All Corp. v. Gimlet Media, LLC*,
    843 F. App'x 392 (2d Cir. 2021) .........................................................................13

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
    No. 13-cv-3669 (DLC), 2015 WL 3916271 (S.D.N.Y. June 25, 2015) .................................19

*River Light V, L.P. v. Olem Shoe Corp.*,
    No. 20-cv-7088-LGS, 2022 WL 4484575 (S.D.N.Y. Sept. 27, 2022) ...........................12, 18

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    979 F. Supp. 2d 264 (D. Conn. 2013) ..................................................................24

*Romag Fasteners v. Fossil, Inc.*,
    No. 3:10-cv-1827-JBA, 2021 WL 1700695 (D. Conn. Apr. 29, 2021) ...................18, 24, 25

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (1992) ........................................................................................10

*Scarves by Vera, Inc. v. Todo Imps., Ltd.*,
    544 F.2d 1167 (2d Cir. 1976) ...............................................................................7

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
    No. 19-cv-1262-LGS, 2022 WL 4095911 (S.D.N.Y. Sept. 7, 2022) .....................5, 9, 11, 15

*Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*,
    No. 17-CV-5845-VSB, 2019 WL 464583 (S.D.N.Y. Feb. 6, 2019) ...................................25

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005)................................................................................15

*Strange Music, Inc. v. Strange Music, Inc.*,
    326 F. Supp. 2d 481 (S.D.N.Y. 2004)...................................................................10

*Stuart v. Collins*,
    489 F. Supp. 827 (S.D.N.Y. 1980) (Leval, J.) ......................................................24

*Sunenblick v. Harrell*,
    895 F. Supp. 616 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996) ................10

*THOIP v. Walt Disney Co.*,
    788 F. Supp. 2d 168 (S.D.N.Y. 2011).................................................................10

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020)...............................................................................9, 16

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)..............................................................................................5

*Virgin Enters. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)...........................................................................13, 15

*W. Publ'g Co. v. Rose Art Indus., Inc.*,
    910 F.2d 57 (2d Cir. 1990).....................................................................................7

## RULES

F.R.E. 802 ...............................................................................................................8

F.R.E. 901 ...............................................................................................................8

Fed. R. Civ. P. 56(c)(3).........................................................................................7, 8

Fed. R. Civ. P. 56.1..................................................................................................1

## STATUTES

15 U.S.C. § 1117(a) ...............................................................................................24

15 U.S.C. §1065......................................................................................................2

## OTHER AUTHORITIES

3 MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 23:10 (4th ed. 2012)............10

18 WRIGHT & MILLER, FEDERAL PRACTICE PROCEDURE § 4478.5 (1981) ....................5

## I.    INTRODUCTION

This case is about Pepsi's willful infringement of Plaintiff's RISE Marks. Pepsi, a much larger junior user, copied Plaintiff's RISE Marks onto its competing Mtn Dew Rise cans. Pepsi used its superior resources to saturate the market, placing infringing MTN DEW RISE on the same store shelves with Plaintiff's cans of RISE. The two morning caffeine drinks sat side by side, with "RISE" in all caps on each, causing actual confusion. Discovery revealed that Pepsi's actions were far more calculated than what this Court and the Second Circuit were told during the P.I. phase. Discovery further revealed additional evidence on the other *Polaroid* factors—strength, similarity, product proximity, bridging the gap, and actual confusion—making summary judgment inappropriate.

Pepsi's actions were neither innocent nor accidental. Prior to launching Mtn Dew Rise, Pepsi met with Plaintiff to explore a partnership. SAF[1] ¶¶ 30, 35, 38-40. Pepsi executives



Ignoring Rise's pre-launch letter, (Dkt. 30 ¶ 32), Pepsi chose willful infringement. Pepsi's conduct is the epitome of infringement and unfair competition and unjustly enriched Pepsi. Dkt. 80, Counts I–V.

As consumer confusion mounted, Rise investors began to balk. Gyesky Dec. ¶ 9; Dkt. 160,

---

[1] Citations to "SAF" refer to Rise's Rule 56.1 Statement of Additional Material Facts. Citations to "Welch Ex." refer to exhibits to the Welch declaration. Citations to Gyesky Dec. and Tanev Dec. refer to the declaration of Alex Tanev and the Dec.1, 2022 Declaration of Grant Gyesky.

57:22–60:11 (investor "would absolutely consider future investment in the company" but for the "existential threat" of MTN DEW RISE). Pepsi's actions put Rise on the brink of collapse, within days of running out of money. Dkt. 30 ¶ 38. Its growth trajectory and operational opportunities have been severely damaged. Gyesky Dec. ¶¶ 13–16. And as detailed herein, summary judgment must be denied as the evidence strongly favors Rise's claims and genuine issues of material fact abound.

## II.   FACTUAL BACKGROUND

In 2015, Rise began selling canned products using its RISE Marks. In 2016, it launched canned nitro-brewed coffee, and by March 2021, Rise was selling multiple varieties of canned caffeinated beverages. Dkt. 382-43, 382-38; Gyesky Dec. ¶ 5. While Rise was building its business and RISE Marks, it consistently referred to itself and its products using the single-word RISE Mark. SAF ¶ 9, Welch Ex. 4 at RISE0014738 (using RISE Mark in a presentation to Kroger); ██████████ ████████████████████████████████████████████████████████████████████ Dkt. 30, ¶¶ 14–18 (the standalone RISE Mark on Rise's kegs and website). Even Pepsi—prior to launching MTN DEW RISE—████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ SAF ¶¶ 10, 31-34, 37. Rise holds federal registrations for RISE-formative marks. Dkt. 80-1; SAF ¶¶ 1-8. One registration, No. 5,168,377 for the word mark RISE BREWING CO. was declared incontestable under § 15 of the Trademark Act, 15 U.S.C. §1065 on September 21, 2022. Welch Ex. 6; SAF ¶ 2.

Elsewhere, Pepsi was building its own morning canned caffeinated beverage. ████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████



Upon learning that Pepsi was considering launching a canned caffeinated "RISE" beverage, Plaintiff demanded that Pepsi avoid infringing the RISE Marks. SAF ¶ 44; Dkt. 30 ¶ 32. After Pepsi nevertheless launched its infringing product in March 2021 (SAF ¶ 45), Rise sent Pepsi additional letters (Dkt. 30, ¶¶ 34–35) and filed this lawsuit. Meanwhile, actual confusion was mounting:

- On March 3, 2021, a Rise employee encountered managers at a Midwest grocery store who were confused due to a request for a RISE promotional display. SAF ¶ 46; Dkt. 34 ¶¶ 7–9.

- On March 9, 2021, Rise co-founder Jarrett McGovern got a text message from a friend who incorrectly thought Rise had partnered with Pepsi. SAF ¶ 47; Welch Ex. 10 at RISE0028069.

- On March 18, 2021, Rise received a comment from a customer ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SAF ¶ 48; Welch Ex. 11 at RISE0028066.

- On March 25, 2021, a Rise employee encountered mis-stocked MTN DEW RISE product in the area designated for Rise's beverages. SAF ¶ 49; Dkt. 28 ¶¶ 5–6.

- On April 6, 2021, an industry contact emailed Rise's CEO asking if Rise and Pepsi had "formed a partnership" to launch MTN DEW RISE. SAF ¶ 50; Welch Ex. 12 at RISE0028084.

- On April 16, 2021, an industry contact emailed a Rise employee asking "[i]s this your product" and attaching a photo of Pepsi's product. SAF ¶ 51; Welch Ex. 13 at RISE0028048-049.

- On April 30, 2021, an industry contact emailed a Rise employee that a MTN DEW RISE display was "super confusing. I see coffee on here and Rise. Is this new?" SAF ¶ 52; Dkt. 31-1.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- Around May 19, 2021, a Rise investor received a text about Pepsi and Rise affiliation due to the "lebron commercial for a rise energy drink." SAF ¶ 54; Welch Ex. 15, RISE0028061–62.

3

- On May 20, 2021, a retail employee was confused by a Rise employee's reference to "RISE" (Dkt. 32 ¶ 3) despite the fact that the Rise employee usually used the standalone mark RISE and wears branded Rise shirts when visiting stores. *Id.*, SAF ¶ 55; Welch Ex. 16, Kaye Tr. 89:3–18.

- On August 11, 2021, a Rise contractor relayed that "[t]here is definitely confusion when [he] mention[s] 'RISE'" during business pitches. SAF ¶ 56; Welch Ex. 17, at RISE0020885-886.

- On August 23, 2021, Alex Tanev saw an online ad for MTN DEW RISE and assumed there was an association between Rise and Pepsi. SAF ¶ 57; Tanev Dec., ¶¶ 3–4; Welch Ex. 18.

- In August of 2021, Sarah Pelfrey, who was associated with an event Rise wished to sponsor, was confused by the two products. SAF ¶ 58; Dkt. 113 ¶¶ 5–6.

- In August of 2021, a Cincinnati Kroger employee told a Rise employee that he wrongly thought MTN DEW RISE and Rise's products were connected. SAF ¶ 59; Dkt. 113 ¶¶ 7–9.

- Another Kroger Store manager told a Rise employee that he incorrectly thought that the two products were owned by the same company, resulting in loss of promotional display opportunities for Rise. SAF ¶ 60; Dkt. 113 ¶¶ 10–11.

- A customer accidentally purchased Pepsi's product when intending to purchase Rise's. SAF ¶ 62; Welch Ex. 19, Gyesky Tr. at 284:5–21.

- Another potential customer saw Rise's CEO Grant Gyesky wearing a RISE branded hat, said that he "loved the product" but then pointed to a cooler of Pepsi's product, further stating that the situation was "confusing." SAF ¶ 63; Welch Ex. 19, Gyesky Tr. at 283:9–23.

- A grocery manager mistakenly ordered MTN DEW RISE when a Rise employee asked him to place an order for "Rise," resulting in empty shelf space. SAF ¶ 61; Dkt. 160, 78:3-79:24.

- A Rise employee experienced consumer confusion at product tastings at such a rate that it was the "norm… not the exception." SAF ¶ 64; Dkt. 160, 85:12–15.

As Pepsi's multi-million-dollar infringement campaign wreaked havoc on Rise's business, creating what one investor called an "existential threat," Rise's investors fled. SAF ¶¶ 71-77; Dkt. 160, 57:22–60:11. With investor capital sidelined due to Pepsi, Rise lost opportunities, including ██████████████████████████████████████████ ██████—the combination of which shattered Rise's growth trajectory. Gyesky Dec. ¶¶ 13–16.

## III.   LEGAL STANDARD

A court "may grant summary judgment only when 'no reasonable trier of fact could find in

favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995). In resolving

Pepsi's motion, this Court must "construe the facts in the light most favorable to the non-moving

party" and "resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney*

*v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). "[T]he resolution of factual disputes must

be left to the jury," as must "the weighing of their relative importance." *Solid 21, Inc. v. Richemont*

*N. Am., Inc.*, No. 19-cv-1262-LGS, 2022 WL 4095911, at *8 (S.D.N.Y. Sept. 7, 2022).

The Second Circuit's opinion on the P.I. does not bind this Court on the merits. *Glaxo Grp.*

*Ltd. v. Apotex, Inc*., 376 F.3d 1339, 1346 (Fed. Cir. 2004) ("An appellate court's [P.I.] opinion has

no conclusive bearing at the trial on the merits") (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390,

395 (1981) ("findings of fact and conclusions of law" [by the "District Court and the Court of

Appeals" at the P.I. phase] were "not binding at a trial on the merits.")). "Rulings—predictions—

as to the likely outcome on the merits made for preliminary injunction purposes do not ordinarily

establish the law of the case, whether the ruling is made by a trial court or by an appellate court."

18 WRIGHT & MILLER, FEDERAL PRACTICE PROCEDURE § 4478.5 (1981); *see also Consumers Union*

*of U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 760 (S.D.N.Y. 1987) (collecting cases and

declining to apply law of the case to the merits of a copyright defense in light of a Second Circuit

decision vacating an injunction considering the same); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442

F.3d 812, 820 (3d Cir. 2006) ("The District Court's earlier grant of a [P.I.], and this Court's

affirmance . . . is irrelevant to our review of the grant of summary judgment."); *see also Litton Sys.,*

*Inc. v. Sundstrand Corp.*, 750 F.2d 952, 956 (Fed. Cir. 1984) ("The district court's denial of the

injunction and this court's affirmance of that denial… should not, of course, prejudice, presage, or

influence the outcome of the trial."); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d

Cir. 1998) ("Findings of fact and conclusions of law made by a court granting a [P.I.] are not

binding,' and 'do not preclude reexamination of the merits at… trial'"). This is true in part because unlike at summary judgment, findings of fact for a P.I. can be premised inadmissible evidence. *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

Here, discovery has revealed new material facts buttressing the strength of Rise's RISE Marks, as well as the other *Polaroid* factors—similarity, product proximity, bridging the gap, actual confusion, and Pepsi's bad faith—none of which were before the Second Circuit. Further, these new material facts make the Second Circuit's balancing of the *Polaroid* factors inapplicable to how a jury could balance those factors. New evidence also shows that Pepsi's testimony at the P.I. hearing that "[n]o one . . . that developed the MTN DEW RISE ENERGY name was aware of [Rise]…"—which Pepsi leveraged in the appeal to paint itself as an innocent adopter (*see* Welch Ex. 66, CA2 Dkt 108 at 19)—was unequivocally false. *See* Dkt 181; SAF ¶¶ 30-45.

## IV.   ARGUMENT

### A.   Rise Will Succeed on Its Claims at Trial

At the P.I. phase, this Court held that Rise established a "clear or substantial likelihood of success on the merits." Dkt. 149, p. 8, n.3. Discovery only strengthened Rise's claims, and despite the Second Circuit opinion, the truth remains: Rise will prove at trial that Pepsi willfully infringed Rise's RISE Marks by launching a competing product, placing that product in the same stores, advertising it using the same strategies, and targeting the same consumers, as Rise.

#### 1.   The Strength Factor Mandates a Trial

##### i.   The P.I. Record Relied on Inadmissible Evidence Which Is Belied by the Admissible Evidence on Third Party Use.

An analysis of the admissible evidentiary record shows genuine issues of material fact on the strength of Rise's RISE Marks. The Second Circuit's finding that the RISE Marks were inherently weak relied, in large part, on alleged "extensive" evidence of "over 100 uses of the

term." CA2 Opp. at 17. However, that evidence was hearsay: screenshots and applications presented via attorney declaration. *Id.*, citing Dkt. 108-5. While it was proper for this Court, and the Second Circuit, to consider hearsay evidence at the P.I. phase, Pepsi cannot rely on this evidence at summary judgment. *See* Fed. R. Civ. P. 56(c)(3) (a party may object if "the material cited . . . cannot be presented in a form that would be admissible"). Further, the mere existence of third party marks "is not evidence of what happens in the marketplace," which "depends wholly upon their usage" and requires evidence that "customers are familiar with their use." *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 281-82 (S.D.N.Y. 1998) (citing *Scarves by Vera, Inc. v. Todo Imps., Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976)).[2]

Pepsi now attempts to show "extensive" third party use by citing to inadmissible hearsay regarding five entities that allegedly sold products under rise-formative names. Dkt. 379, p. 14 (citing Dkt. 382). Specifically, Pepsi relies on the following additional "evidence":

- Unverified financial documents allegedly from a chicken biscuits restaurant, formerly named Rise Biscuits Donuts. Dkt. 382, ¶ 22[3] (citing Exs. 66–73 (Dkts. 382-67–382-72));

- Unverified printouts from a data aggregator allegedly showing sales of "Rise Up Coffee" by an unknown source, and trademark registration certificates owned by Rise Up Coffee, LLC. Dkt. 382, ¶¶ 22 (citing Ex. 36 (Dkt. 382-35) and Dkt. 108-1 at 7);

- An unverified summary of alleged information about Daily Rise Expresso, a small coffeeshop company with locations in Utah. Dkt. 382 ¶ 22 (citing Exh. 25 (Dkt. 382-24);

- Unverified printouts from a data aggregator allegedly showing sales of "Arizona Sun Rise Hard Seltzer" by an unknown source. Dkt. 382 ¶ 22 (citing Exh. 36 (Dkt. 382-35); and

- An unverified financial document allegedly from Ryze, LLC, that purports to show the

---

[2] PepsiCo attempts to downplay these cases by citing *Estee Lauder Inc. v. Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997) and *W. Publ'g Co. v. Rose Art Indus., Inc.*, 910 F.2d 57 (2d Cir. 1990), but both are distinguishable. *Estee Lauder* simply noted that there were registrations or applications at the time that the plaintiff filed its intent-to-use application, 108 F.3d at 1511, and *Western Publishing* was an appeal of a P.I. ruling in which hearsay evidence is accepted. 910 F.2d at 61.

[3] Rise objects to the lengthy declarations of Ms. Torres and Ms. Smith as including both attorney argument and narrative summaries which are uncited in Pepsi's brief and 56.1 statement; both are clear efforts to circumvent this Court's page limits. *E.g.*, Dkts. 382 ¶¶ 18, 28-29; 383 ¶¶ 4, 7-9, 11.

company's income statement from January 2021 on. Dkt. 382 ¶ 22, Exh. 74 (Dkt. 382-73). None of this hearsay "evidence" is admissible, and Pepsi has failed to properly authenticate any of it. *See* Fed. R. Civ. P. 56(c)(3); F.R.E. 901, F.R.E. 802. Even if accepted, these few documents are a far cry from demonstrating "extensive" third-party use.

Admissible evidence reveals that, rather than a crowded field, the market is devoid of other uses of the term "RISE." When discussing Plaintiff, ███████████████████ ███████ *E.g.*, SAF ¶ 10, Welch Ex. 2, Welch Ex. 1 at PEPSICO0011818, 820; Welch Ex. 3. And Pepsi's own witnesses and experts admitted they were not aware of *any* uses of "RISE" other than Plaintiff and Defendant prior to this case:

- **Ryan Collis, GM Pepsi-Starbucks NACP** Q: … can you name any product whatsoever that uses the term "Rise" in the name, other than [plaintiff and defendant]? A. *No as I sit here today, no*…. SAF ¶ 21; Welch Ex. 20, Collis Tr. 139:12–17, *see also* 139:18-140:1.

- **Matthieu Aquino, VP Global Beverages Design** Q. [W]ere you personally aware of any other morning drinks that used the term "RISE"… ? A. *No*. Q. Were you aware of any coffee drinks that used the word "RISE"…? A. *No*. Q… [W]ere you aware of any energy drinks that use the word "RISE"…? A. I would not know that. SAF ¶ 22; Welch Ex. 21, Aquino Tr. 63:18–64:5.

- **Wing-Yan Choi, VP Corporate M&A at Pepsi** Q… [W]e talked about earlier you didn't know any beverages that have the word "rise" in it; is that right? A. I don't – I don't recall right now. I don't know any as of right now. SAF ¶ 23; Welch Ex. 22, Choi Tr. 119:15-19.

- **Bryan Welsh, former GM Pepsi-Starbucks NACP** Q… Other than [Plaintiff] can you name any other product… that uses the name RISE…? A. I don't recall any brands in food or beverage that use the word "rise" in their name. SAF ¶ 24; Welch Ex. 23, Welsh Tr. 86:1-88:11.

- **Rebecca Messina, Pepsi's "industry" expert** Q… [A]re you aware prior to your work on this case of any beverage products named Rise… on the market? A. . . . . . *I cannot recall one prior to this case that comes to mind*. SAF ¶ 25; Welch Ex. 24, Messina Tr. 18:24–19:10.

- **Thomas Britven, Pepsi's damages expert** Q. Have you ever seen any beverage product on the shelf in any store that has the word "Rise" in the name? A. *I don't know*. SAF ¶ 26; Welch Ex. 25, Britven Tr. 17:10–13.

- **Matthew Ezell, a Pepsi Surveyor** Q… Other than [Rise and Pepsi] are you… aware of any other drinks … with a name that includes … "Rise"? A. I don't believe I'm personally aware of other drinks that include the word "Rise".... SAF ¶ 27; Welch Ex. 26, Ezell Tr. 11:20–12:3.

- **Edward Fox, Pepsi experts** Q. [Y]ou've never see a [RTD] coffee...other than [Plaintiff] that uses ... "Rise," have you? A. [] no, I haven't. SAF ¶ 28; Welch Ex. 27, Fox Tr. 131:13–18.

- **Wendy Wood, a Pepsi Surveyor** Q. Sitting here today, can you think of any other product in the ready-to-drink coffee or energy drink space that incorporates the word "rise"? A. I do not know of any personally, no, at this point. SAF ¶ 29; Welch Ex. 28, Wood Tr. 134:1–6.

(all emphasis added). As discussed above, the lead designer of MTN DEW RISE, with decades of experience in reviewing and designing in the beverage space, ███████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ The significance of this recognition cannot be overstated—████████████████████████████████—not with any of the other unknowns Pepsi raises. The association of █████████████ by a Pepsi employee with decades of experience in the consumer packaged goods industry reflects the substantial secondary meaning and strength arising from Rise's near decade-long use and efforts to police its brand (Dkt. 30, ¶¶ 3-13, 25-35), significant advertising expense (*id.*, ¶ 19; SAF ¶¶ 12-15), sales success (Dkt. 30, ¶13), media coverage and awards (Dkt. 30, ¶ 22; SAF ¶¶ 16-20), and Pepsi's attempts to plagiarize. *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020) (reversing in part summary judgment in favor of defendants).

There is significant evidence in the record, including evidence never considered by the Second Circuit, for a reasonable jury to find that the RISE Marks have acquired distinctiveness and secondary meaning in the marketplace and that the strength of the RISE Marks favors Plaintiff. Pepsi's arguments to the contrary go to the weight of Rise's evidence and "simply confirms a triable issue of fact concerning the strength of [Rise's] marks." *Solid 21*, 2022 WL 4095911, at *5 (citing *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020) ("[T]he intangible and ephemeral nature of secondary meaning renders it difficult to resolve merely on the affidavits in a summary judgment motion.") (internal quotations omitted).

9

ii.   The Second Circuit's Opinion Left Unresolved Critical Factual
      Issues Regarding Rise's Reverse Confusion Claim

Even if a jury were to find that Rise's RISE Marks are weak, the Second Circuit nevertheless made clear that "*where, as here, the junior user is a much larger company, consumers might believe that the senior user's success in promoting its brand had led the larger junior user to acquire the senior*." Opp. at 20 (emphasis added). This is the **exact** theory of Rise's reverse confusion claim (Dkt. 80 at ¶¶ 31–38; 87–99), and is supported by ample case law. *E.g.*, *First Nat'l Bank of Omaha, Inc. v. MasterCard Int'l, Inc*., Nos. 03 Civ. 707, 02 Civ. 3691, 2004 WL 1575396, at *12 (S.D.N.Y. July 15, 2004) (a "plaintiff with a mark that is commercially weak . . . is more likely to…establish[] reverse confusion . . . against a defendant with a far stronger mark."); *O'Keefe v. Ogilvy & Mather Worldwide, Inc*., 590 F. Supp. 2d 500, 521 (S.D.N.Y. 2008) ("In the reverse confusion context, . . . the 'commercial weakness' of [plaintiff's] mark supports, rather than undermines, his claim."); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 488 (S.D.N.Y. 2004) ("the doctrine of reverse confusion properly should focus, not on the senior user's mark, but that of the intervening junior user."); *THOIP v. Walt Disney Co.*, 788 F. Supp. 2d 168, 185 (S.D.N.Y. 2011) (looking to the comparative strength of the junior user's mark); *Sunenblick v. Harrell*, 895 F. Supp. 616, 628 (S.D.N.Y. 1995) (same), *aff'd*, 101 F.3d 684 (2d Cir. 1996); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (1992) (same), *sub. op. at* 44 F.3d 579 (7th Cir. 1995); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 231 (3d Cir. 2000) ("[I]n a reverse confusion claim, a plaintiff with a commercially weak mark is more likely to prevail…and this is particularly true when the plaintiff's weaker mark is pitted against a defendant with a far stronger mark."); 3 MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 23:10, at 23-37 (4th ed. 2012) ("[T]he relatively large advertising and promotion of the junior user . . . is the hallmark of a reverse confusion case.").

The Second Circuit's opinion left open this critical issue—whether consumers "might believe" MTN DEW RISE caused reverse confusion with Rise's RISE Marks—for trial. Opp. at 20. The resolution of factual issues regarding the strength of the parties' marks, and the import of those strengths to reverse confusion, must be left to the jury. *Solid 21*, 2022 WL 4095911, at *8.

### 2. The Similarity Factor Mandates a Trial

Pepsi's assertion that the Second Circuit "resolved" the similarity factor in Pepsi's favor "based on the same undisputed facts currently before the Court" (Dkt. 379 at 11) is simply false. The Second Circuit based its similarity opinion on the incorrect determination (*see supra*, § IV.A.1) that the RISE Marks were weak. Viewing similarity through this incorrect lens, the Second Circuit disagreed with this Court based on its own comparison of the parties' products' can sizes and colors. CA2 Opp. at 22-23. When the strength of the RISE Marks is assessed on the trial record, a jury could find the RISE Marks sufficiently strong that MTN DEW RISE—often presented either in print and verbally as RISE (SAF ¶¶ 65-68), or on a can with the identical, dominant RISE in all-caps, in large type, in a bright color on a light background, on the top third of the can—is similar to Rise's RISE Marks in both visual and verbal contexts. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) (stronger marks are afforded broader protection).

Moreover, discovery revealed that ███████████████████████████████████ ██████████████████████████████████████████████████████ showing the substantially similarity arising from use of the identical term. After drawing that connection, he ██████████████████████████████████████████████ copying the dominant RISE in all-capital letters horizontally across the top third of the can, in large type, in a bright color against a light background. *Supra*, § II. This comports with this Court's reaction to the striking similarity of the products: "I must say, looking at the product side by side, I was struck by the

similarity…, **I know that [Pepsi] says that the creative team was not involved with the team that had been talking about possible combination with the plaintiff here**, **but there does seem to be, for whatever reason, a striking similarity**. Dkt. 125, 9/9/21 P.I. Hr. Tr. at 8:17–9:1 (emphasis added). Discovery revealed further similarities between the parties' marks. Discovery confirmed that Rise consistently uses the standalone word mark RISE, and that the RISE Mark is used by others, ██████████████ to refer to Plaintiff. SAF ¶ 10, 30-34; Welch Ex. 1 at PEPSICO0011818, 820; Welch Ex. 2; Welch Ex. 3; Welch Ex. 4; Welch Ex. 5 at RISE0016013, 015; Dkt. 30 ¶¶ 14–18; Dkt. 32 ¶ 3. Further, Pepsi and others often used the marks MTN DEW RISE and RISE, which are more similar to Rise's RISE Marks. *E.g.*, SAF ¶¶ 65-68; Dkt. 35, ¶¶ 7, 9, 110 (Twitter and Instagram accounts @MountainDewRise); Dkt. 35-1, p. 47-56, ██████████ ████████████████████████████████████████████████████ ██████████████████ Finally, Rise—implementing a preexisting plan (Welch Ex. 33 at RISE0027355)—launched a taller 10 oz can (*id.*), nearly identical in height to the MTN DEW RISE can, and a cool blue can for its Oat Milk Vanilla.[4] Dkt. 382, ¶ 5. These genuine issues of material fact, taken in the light most favorable to Rise, make summary judgment inappropriate.

### 3.  Actual Confusion Evidence Mandates a Trial

During the limited window when both parties' products were on the market, there was an alarming amount of actual confusion. This alone cautions strongly against summary judgment. The evidence, when construed in Rise's favor, is "sufficient evidence to create a triable fact on the issue of actual confusion." *See River Light V, L.P. v. Olem Shoe Corp.*, No. 20-cv-7088-LGS, 2022

---

[4] Pepsi acknowledges these facts but argues that Rise "cannot 'alter its mark'" "'and then claim injury.'" Dkt. 379 at 12 n.12. Rise is not altering its mark; the Mark is being placed on larger cans. Welch Ex. 33 at RISE0027355. Further, Pepsi's cited case was not addressing natural expansion of a product, but a survey in which the expert did not "replicate market conditions." *J.T. Colby & Co. v. Apple Inc.*, No. 11 Civ. 4060, 2013 WL 1903883, at *21 (S.D.N.Y. May 8, 2013),.

WL 4484575, at *7 (S.D.N.Y. Sept. 27, 2022).[5]

This Court is familiar with the actual confusion evidence presented by Rise at the P.I. phase, evidence this Court described as "credible evidence of actual confusion" Dkt. 149, pp. 3, 5–6. These examples of incorrect product ordering, misguided product placement, and confusion by industry contacts and customers, are incidents which "could inflict commercial injury on [Rise] in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 397 (2d Cir. 2021). While this evidence alone is sufficient to establish actual confusion, discovery revealed more.

First, although Pepsi's witness Mr. Lyons testified at the hearing that none of his business contacts had reported any actual confusion, Pepsi ███████████████████████████████ ██████████████████████████████████████████████████ Similarly, Rise's own online portal received a comment from a customer asking ██████████████████████████████ █████████████████ Welch Ex. 11. "[E]vidence of actual confusion regarding affiliation or sponsorship," such as this, is "entirely relevant to the ultimate likelihood-of-confusion inquiry." *Morningside Grp., Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999). Pepsi attempts to cast these examples as "mere inquiry," but the fact finder could find that these communications were premised on the assumption that LeBron James's new ad or the new Pepsi product was associated with Rise. *E.g.*, *M. Fabrikant & Sons v. Fabrikant Fine Diamonds*, 17 F. Supp. 2d 249, 253 (S.D.N.Y. 1998) (a customer asking "is that your advertisement" evidenced actual confusion based on incorrect underlying assumption); *see also Virgin Enters. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) (questions on affiliation between two entities utilizing the same word

---

[5] Pepsi's arguments as to the sufficiency of the Rise's confusion evidence goes to the weight of the evidence and simply confirms a triable issue of fact regarding actual confusion.

mark evidence of actual confusion); *Conn. Cmty. Bank, N.A. v. Bank of Greenwich*, No. 3:06-cv-1293 (VLB), 2008 WL 398849, at *2 (D. Conn. Feb. 11, 2008) (alleged inquiry evidence based on a similar name evidence of actual confusion).

In the few short months that the drinks competed, Rise learned of at least 19+ separate instances of confusion. *See supra*, II.[6] This is not a case like *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 124 (2d Cir. 2001), where two instances were *de minimis*, or *Engine Capital Mgmt. v. Engine No. 1 GP, LLC,* No. 21-cv-149, 2021 WL 1372658, at *8-9 (S.D.N.Y. Apr. 12, 2021)), where four factual affidavits were insufficient to warrant a P.I. Further, Pepsi's survey evidence does not overcome these instances of actual confusion. None of Pepsi's surveys were conducted at the appropriate time, nor did they replicate actual market conditions, in which the products are available side by side. Welch Ex. 64, Kamins Rep., pp. ¶¶ 20-21, 24-29. The numerous instances of actual confusion in less than eight months, and Dr. Kamins' criticism of Pepsi's surveys, create issues of material fact precluding summary judgment in Pepsi's favor.

### 4.    The Proximity of the Products Mandates a Trial

"The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016). There is no dispute that the products were both distributed nationally and were both available online and in retailers. SAF ¶ 11. Rise identified numerous in-store displays where the competing products were just a few feet from each other. Welch Exs. 34-38; Dkt. 113 ¶ 9; Dkt. 28, ¶ 5. This case is like *Cadbury Beverages., Inc. v. Cott Corp.*, in which the Second Circuit found that competing soft drinks were proximate as "the cans and bottles of soft drinks are sold through the same channels of trade to the same class of customers

---

[6] The confusion at product tastings reported by Allison Schmidt is listed only once here, but represents numerous consumers.

. . . and then to the general public." 73 F.3d 474, 480 (2d Cir. 1996); *see also Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005) ("That Georgi vodka… is displayed on different shelves in the same store does not imply that the products are not in competition.").

Pepsi complains that its beverage is an energy drink, while Rise's is coffee or tea-based. Even assuming that those are sub-classes within the beverage category, both companies understood them as potential alternative choices for consumers. ████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████(Welch Ex. 40), and Pepsi believed that "83% of energy drink consumers are also coffee drinkers" Welch Ex. 23 at 72:3-20; Welch Exhibit 41, p. 2. Approximately ████████████████████████████ █████████████████████████████████████████████████████████████ ████████████ The products were also advertised similarly, with a focus on morning energy, achievement, and activity. Dkt. 35, ¶¶ 7-12. In view of the evidence of physical proximity, the competition, and the similar advertising, "[a] reasonable jury could find that the proximity of the products in the relevant market favors a finding of confusion." *Solid 21*, 2022 WL 4095911, at *6 (proximity factor did not favor summary judgment, despite a dispute regarding target customers).

### 5.    Bridging the Gap and Product Disparity Mandate a Trial

Although the proximity of the products makes "bridging the gap" marginally relevant, Rise presented evidence that it was ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████ Gyesky Dec. ¶ 6. If there is a gap, Rise was, and is, primed to bridge it. Any product disparities primarily goes to harm, rather than likelihood of confusion and does not favor summary judgment. *Virgin Enters.*, 335 F.3d at 151. Further, Pepsi, like Rise advertised its products with

better-for-you attributes like less sugar, real juice, and similarity to coffee. Dkts. 30, ¶ 21; 35, ¶¶ 7-11. A reasonable jury could find that, if relevant, the products were not of disparate quality.

### 6.    Consumer Sophistication Mandates a Trial

These products are low cost purchases made in the hustle of a grocery store retail setting. *E.g.*, Welch Ex. 35 (RISE products sold at $2.99 and MTN DEW RISE at two for $4); *See Patsy'sBrand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir. 2003) (consumer sophistication is generally low for cheaper products or products sold in the supermarket). A reasonable jury could find that the consumers of these drinks are unsophisticated based on the low price and purchasing setting alone. Rise has also presented evidence that the RISE shopper is a

████████████████████████████████████████████████████████████

██████████████████████    A reasonable jury could find that a value and promotions-oriented brand-switcher is less likely to be discerning in selecting a can off the shelf.

### 7.    Pepsi's Intent Mandates a Trial

Pepsi's conduct in this case raises a serious question of intent and credibility that is not appropriate for summary judgment. *Tiffany & Co.*, 971 F.3d at 88 ("[S]ubjective issues such as good faith are singularly inappropriate for determination on summary judgment"). At the P.I. hearing, Mr. Lyons and Jim Lee testified that they 'absolutely' did not know about Rise's products and had "never heard of [] Rise at that time…." Dkt. 160, 121:1-12; 105:1-14. That was false.

As  discussed  above,  when  ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████  SAF ¶ 10. In March 2018, ████████████████████████████████████████

████████████████████████████████████████████████████████████



Pepsi was aware of Rise and misrepresented that critical fact to this Court and the Second Circuit. Pepsi's witnesses' credibility is "squarely the province of the jury" and these questions constitute a triable issue of fact. *Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 419 (S.D.N.Y. 2018); *see also Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 155 (2d Cir. 2014) (vacating JMOL and remanding for trial as witness credibility is a question of fact for the jury): *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (vacating summary judgment due to genuine issues of material fact on defendant's credibility).

It is undisputed that Pepsi launched its beverage with full knowledge of Rise's RISE marks and Rise's concerns of infringement. Dkt. 30, ¶ 32. On those facts alone, a reasonable jury could find that Pepsi acted in bad faith. The additional evidence of ███████████████████ ████████████████████████████████████████████████████████████████

---

[7] While Rise was unaware of ████████████████████████████████████████ it was aware of Ms. Choi, and disclosed communications with her to Pepsi. Despite this guidance from Rise, Pepsi's witnesses falsely testified regarding █████████████████

███████████████████and Pepsi's misrepresentation of those facts before this Court, reaffirm that summary judgment in Pepsi's favor is improper.

### B.       Rise Seeks Appropriate Remedies to Address Pepsi's Misconduct

Pepsi's remedies argument asks the Court to ignore Rise's position on every disputed fact. But, as this Court is aware, in ruling on summary judgment, it must construe the facts in the light most favorable to the nonmoving party and resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *River Light*, 2022 WL 4484575, at *7. Rise disputes each and every one of Pepsi's critical assertions including: (i) whether MTN DEW RISE was profitable; (ii) whether Pepsi's trademark infringement was willful; (iii) whether Rise had the means to begin corrective advertising; (iv) whether corrective advertising is necessary; and (v) whether consumer confusion caused by Pepsi's conduct hamstrung Rise's capital raise and caused significant impacts and lost opportunities for its business. Pepsi's "undisputed" material facts are anything but, and the Court must deny summary judgment on the remedies issues for this reason alone.

### 1.       Rise's Claim for Disgorgement of MTN DEW RISE Profits is Valid

First, it is legally irrelevant whether Rise made a profit. Disgorgement is based on Pepsi's profits—not Rise's. The Second Circuit held that "an accounting for profits is available even if a plaintiff cannot show actual injury or consumer confusion, if the accounting is necessary to deter a willful infringer from doing so again.'" *Romag Fasteners v. Fossil, Inc.*, No. 3:10-cv-1827-JBA, 2021 WL 1700695, at *6 (D. Conn. Apr. 29, 2021) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998)). Second, whether Pepsi's sales of MTN DEW RISE were profitable is ***highly*** disputed—Rise's expert Brett Reed devoted the bulk of his Rebuttal Expert Report to this specific issue. Pepsi's only evidence that it █████████ ████████████████████████████ is the testimony of its own expert, Mr. Britven.

Pepsi ignores Mr. Reed's opinion that, ███████████████████████████████████

███████████████████████████████████████████████████████████████████ Welch

Ex. 47, p. 12, note 37; Welch Ex. 49, p. 41.

Pepsi bears the burden of proving its costs. *River Light V, L.P. v. Lin & J Int'l, Inc.*, No.

13-cv-3669 (DLC), 2015 WL 3916271, at *7 (S.D.N.Y. June 25, 2015) (declining to deduct costs

from disgorgement claim where the defendants "failed to carry their burden of establishing any

costs to be deducted from their gross sales."). Rise only bears the burden of proving Pepsi's

revenue attributable to MTN DEW RISE sales. *Id.* Pepsi and Rise's experts largely agree that Pepsi

made ██████████████████████████████████████████ SAF ¶ 70; Welch Ex.

49, p. 41. The parties' dispute instead centers around purely factual issues related to whether

certain costs are attributable to sales of MTN DEW RISE as opposed to other Pepsi products.[8] As

but one example, ████████████████████████████████████████████████████

███████████████  But Mr. Britven fails to show the required factual nexus between Pepsi's

alleged ████████████████ (Welch Ex. 49, p. 27) and MTN DEW RISE sales. *See, e.g.*

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 42 F. Supp. 3d 540, 544 (S.D.N.Y. 2014)

(defendant must "demonstrate a strong nexus" between the alleged cost and the infringing product

sales). Mr. Britven also fails to examine the source of his data. Welch Ex. 25, Britven Tr. 32:2-6;

35:21-36:3. Mr. Britven's ████████████████████████████████████████████

██████████████████████████ *Id.*, *see also id.*, 38:16-19; 39:14-40:23; 82:22-83:3.[9]

When Mr. Reed examined the data, he determined that the ████████████████████████

---

[8] Around November 8 after the P.I. ruling, Pepsi rebranded as Mtn Dew Energy. Dkt. 170, ¶ 1.
[9] Pepsi's litigation-created spreadsheet ████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████ [10] Welch Ex. 49, p. 41. But the Court need not resolve this battle of the experts on Pepsi's motion for summary judgment. *See DPWN Holdings Inc. v. United Air Lines, Inc.*, No. 11-cv-0564 (BMC) (PK), 2019 WL 1515231, at *7 (E.D.N.Y. Feb. 20, 2019) (dispute over costs is a battle of the experts issue).

Pepsi is also wrong on the import of its willfulness. First, there is substantial evidence of Pepsi's knowing and willful infringement (*supra*, § IV.A.7) which, at a minimum, shows disputed issues of material fact. Second, a "plaintiff asserting a Lanham Act claim and seeking a profit award does not need to prove that the defendant's violation was willful." *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-253-LLS, 2022 WL 902931, at *13 (S.D.N.Y. Mar. 28, 2022). Instead, courts weigh factors including the "defendant's mental state" and the "egregiousness" of its infringement—including the "degree of certainty that the defendant benefited from the unlawful conduct," the "availability and adequacy of other remedies," and the "role of a particular defendant in effectuating the infringement." *Id.*; *see also Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17-cv-1927-PAE-GWG, 2020 WL 3564485, at *6 (S.D.N.Y. July 1, 2020). Here, these materials facts are disputed, making summary judgment inappropriate. *See Chanel*, 2022 WL 902931, at *13; *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 232 (D. Conn. 2004) (denying summary judgment in view of factual questions about intent).

## 2.    Rise's Claim for Corrective Advertisement is Appropriate

Pepsi's corrective advertising argument also raises multiple, disputed questions of fact. First, it is absolutely disputed that Rise has (or had) money for the necessary corrective advertising campaign. Gyesky Dec. ¶¶ 26–27. Pepsi points to Rise's capital raise and marketing spend in 2021

---

[10] Because of his failures to investigate Pepsi's costs data, Mr. Britven significantly overstates those costs. For example, while Mr. Pepsi claims ███████████████████████

████████████████████████████ *See* Welch Ex. 49, p. 12, 21, 41.

and 2022 but admits that ████████████████ *Compare* Dkt. No. 379 at 20 *with id.* at 18.

Rise's CEO will testify ████████████████████████ to repair the harm Pepsi

caused. Gyesky Dec. ¶¶ 26–27. The Court should deny summary judgment based on this disputed

issue. *PBM Prods., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 422 (E.D. Va. 2001) (finding

a "genuine issue of material fact as to whether Plaintiff could afford its own contemporaneous

corrective advertising campaign."), *aff'd*, 639 F.3d 111 (4th Cir. 2011).[11] Second, Rise disputes

Pepsi's claim that there is "nothing . . . to correct." Dkt. No. 379 at 20. This is another fact question.

Rise marshalled extensive evidence of actual confusion. *Supra*, § II. Dr. Winer measured the harm

to Rise and the costs to repair that harm. *See* Welch Ex. 50, at pp. 50-51.[12] Pepsi "is free to attack

the credibility of this evidence at trial, but it is sufficient to support a finding that [Rise] suffered

harm." *Am. Airlines, Inc. v. Delta Air Lines, Inc.*, 4:19-cv-1053-O, 2021 WL 3629735, at *19

(W.D. Tex. May 18, 2021). The Court should deny summary judgment on this disputed issue. *Id.*

### 3.   Rise's Actual Damages are Recoverable

Pepsi's argument that Rise cannot recover for the damages to Rise's growing business

again boils down to a factual dispute. On summary judgment, this dispute must be resolved in

Rise's favor. First, Pepsi disputes the timing and necessity of ████████████████████

Dkt. No. 379 at 22–23. As explained by Mr. Gyesky, Pepsi's conduct spooked Rise's investors,

harming Rise Brewing. *See* SAF ¶¶ 71-77; Gyesky Dec. ¶¶ 8–10; Welch Ex. 47 p. 23-25.[13] Mr.

---

[11] In a footnote, Pepsi argues that Rise's corrective advertising damages are excessive. More recent decisions, however, have declined to impose rigid limits on corrective advertising. *See, e.g.*, *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1284 (M.D. Fla. 2015) (collecting cases).
[12] Dr. Kamins criticism of Mr. Ezell's survey is not inconsistent with Rise's corrective advertising theory. Rise's evidence supports that corrective advertising is necessary to correct the harm to Rise caused by ████████████████████ Welch Ex. 50, p. 50-51; SAF ¶ 69.
[13] While Pepsi takes issue with Rise's discovery responses, Rise's disclosed actual damages theory that ████████████████████████ The inability to raise necessary investment capital negatively impacted Rise's ability to operate, its growth and valuation [and] its ability to complete orders and operate." Welch Ex. 52, Rise Resp. to Rog. No. 25.

Gyesky and others will testify that Rise lost investments at a crucial time in its business, and without access to sufficient capital there was significant harm (*e.g.*, losing shelf space at major retailers) and lost opportunities (*e.g.*, ███████████████████████████████████████ Gyesky Dec. ¶¶ 13–16.

Pepsi also raises several documents it claims disprove Rise's business harm. But in each case, Pepsi reads far too much into the documents and simply ignores Rise's explanations.

- Pepsi points to Mr. Gyesky's June 2021 declaration stating that ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

- Pepsi argues that Rise only ████████████████████████████████████ ████████████████████████████████████ advisor before Pepsi's infringement began. Gyesky Dec. ¶¶ 8–10.  On every prior occasion, Rise had been able to raise the amount of capital alone. *Id.* The timing of its ████████████████ proves nothing.

- Pepsi argues that Rise needed ███████████████████████ was approximately Rise's spend to continue normal operations—not to bring its production to the U.S. Gyesky Dec. ¶ 27.

- Pepsi argues that other Rise documents show that the ██████████████████████ ████████████████████████ Gyesky meant only that Rise would be able to maintain its normal operations while it continued ████████████████ which it could use toward its strategic goals ██████████████ ████████████ Gyesky Dec. ¶ 11.

- Pepsi also misinterprets an August 2021 presentation from ██████████████ ██████████████████████████████████████████████ ████████████████████ Gyesky Dec. ¶ 12.

- Pepsi points to another Rise document to argue that by ████████████████████ ████████████████████████████████████████████████████████████████

Pepsi is free to cross-examine Rise's witnesses with its allegations, but, here, the Court must construe these disputed facts in the light most favorable to Rise. *Anderson*, 477 U.S. at 255.

Pepsi also disputes that Rise even had ████████████████████████████ ████████████████████████████████████████ (Dkt. 379, p. 21), and that Rise's inability

to raise capital was due to Pepsi's trademark infringement. But again, these are highly disputed facts. As Mr. Gyesky explains, had Rise received the  Gyesky Dec. ¶¶ 14–25. Mr. Gyesky explained that with the expected funding in Spring 2021, Rise would have taken advantage of its past planning for the reduction of the costs production and distribution. *Id.* This including ███████████████████████ Because of the funding delay, this cost savings opportunity vanished. *Id.* ███ —after the Court granted a PI against Pepsi—it was already too late for Rise to ████ ████████████ Gyesky Dec. ¶ 20. While Pepsi disagrees with Rise about these facts, the Court must construe them in Rise's favor.

As to causation, Rise's investor witnesses have already provided testimony about the impact on their willingness to continue investments in Rise due to Pepsi's infringement of Rise's trademarks. Dkt. 160, 57:22-60:11. Other investors were reluctant for the same reasons. SAF ¶¶ 71-77; Gyesky Dec. ¶ 9; Welch Ex. 19, Gyesky Tr. 296:4-297:2. This testimony directly contradicts Pepsi's argument that there was no evidence that MTN DEW RISE impacted investment in Rise. The Court should deny Pepsi's motion in view of these disputed facts.

### 4.    Rise's Claim for Disgorgement from Starbucks Nitro is Valid

Pepsi next argues that Rise's Lanham Act and unfair competition claims do not entitle it to disgorge any profit from Starbucks Nitro because it is a non-infringing product. Dkt. 379, p. 25. The cases Pepsi cites do not support that proposition, and the statute is not so limited. There is a direct causal nexus between the Starbucks Nitro profits and Pepsi's wrongful conduct, which

entitles Plaintiff to the Starbucks Nitro profits.

Section 1117(a) does not limit recovery to "*infringing* products." The statute, rather, states that plaintiff shall be entitled "to recover [] ***defendant's*** profits." 15 U.S.C. § 1117(a) (emphasis added). In a Lanham Act case, the Court may award profits completely separate from whether such profits may be attributable to the infringement. *Stuart v. Collins*, 489 F. Supp. 827, 831 (S.D.N.Y. 1980) (Leval, J.) (plaintiff "was entitled to receive all the profits earned by willful infringement, ***even though the profit was not attributable to the infringement***.") (emphasis added). When awarding profits under the deterrence rationale, "the Court is not bound by the rule that defendants' profits must be attributable to the plaintiff's mark, but is free to fashion the award based on what is necessary and appropriate to deter the infringer." *Romag Fasteners, Inc. v. Fossil, Inc.*, 979 F. Supp. 2d 264, 282-83 (D. Conn. 2013) (denying summary judgment to preclude profit disgorgement from products without plaintiff's mark).

As laid out in the Reed rebuttal report, the Starbucks Nitro profits to be disgorged have a direct causal nexus to Pepsi's wrongful conduct, and are available to be disgorged under Plaintiff's Lanham Act, unfair competition, and unjust enrichment claims. Welch Ex. 49, p. 53 ("If RISE was harmed impacting distribution . . . or RISE's expansion . . . was delayed and pushed out into the future, ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ This represents a reasonable measure of additional unjust enrichment for PepsiCo associated with ████████████████ sales due to the harm impacting RISE . . . ."). The burden of proving that these Starbucks Nitro profits are not attributable to Pepsi's wrongful conduct is firmly on defendant. *Romag,* 979 F. Supp. 2d at 284–85. Taking all reasonable inferences in Rise's favor, Pepsi cannot meet its burden of proving that no sales of its Starbucks

Nitro products benefited from Pepsi's wrongful conduct. *Id.* (resolving all reasonable inferences in plaintiff's favor and disregarding defendant's surveys even where plaintiff "advances no contrary survey"). Pepsi's infringing conduct was done knowingly and willfully, and an award of its profits from Starbucks Nitro is available under the Lanham Act and New York unfair competition law. *Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121, 122 (S.D.N.Y. 1950) ("one who has gained unlawfully, as the result of unfair competition, shall not retain his profits."), *aff'd*, 193 F.2d 77 (2d Cir. 1951).

### 5.   Rise's Claim for Unjust Enrichment is Valid

Rise's claim for unjust enrichment is valid and supported. "(1) [Pepsi] was enriched, (2) at [Rise's] expense, and (3) equity and good conscience militate against permitting [Pepsi] to retain what [Rise] is seeking to recover." *Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.,* No. 17-CV-5845-VSB, 2019 WL 464583, at *4 (S.D.N.Y. Feb. 6, 2019) (quoting *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012)). Pepsi's simultaneous sales of STARBUCKS NITRO and MTN DEW RISE accrued benefit to STARBUCKS NITRO from the harm to Rise. Pepsi and Rise had a sufficiently close relationship. Rise conferred benefits to Pepsi, supporting an N.Y. unjust enrichment claim. Pepsi had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and had meetings with Rise which Rise undertook in good faith. Gyesky Dec. ¶¶ 3–4. Pepsi used these meetings to unjustly enrich itself by misappropriating the RISE Marks. Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gyesky Dec. ¶ 4; Welch Ex. 45; SAF ¶¶ 36-37. It used its meetings with Rise—▮▮▮▮▮▮▮▮▮▮▮▮— to procure Rise's know-how on nitro. Gyesky Dec. ¶¶ 3-4. Pepsi used and benefitted from that know-how in the development of its own STARBUCKS NITRO products. Gyesky Dec. ¶ 4.

### V.   CONCLUSION

For the reasons set forth above, Rise asks that this Court deny Pepsi's Motion.

Dated:  December 1, 2022

Respectfully Submitted,


*/s/Paul Tanck*

Paul Tanck (Bar No. 4298840)
Paul.Tanck@alston.com
Neal J. McLaughlin (Bar No. 4732020)
Neal.mclaughlin@alston.com
Christopher L. McArdle (Bar. No. 4823654)
Chris.McArdle@alston.com
ALSTON & BIRD LLP
90 Park Ave
New York, NY 10016
Tel. (212) 210-9400
Fax. (212) 210-9444

Jason Rosenberg
Jason.Rosenberg@alston.com
Holly Hawkins Saporito
Holly.Saporito@alston.com
Emily Welch
Emily.Welch@alston.com
Shaleen Patel
Shaleen.Patel@alston.com
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
Tel. (404) 881-7000
Fax. (404) 881-7777


*Attorneys for Plaintiff, RiseandShine*
*Corporation d/b/a Rise Brewing*

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, certify that on December 1, 2022, I caused a copy of the foregoing document to be electronically filed using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

*/s/Paul Tanck*

Paul Tanck