**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RISEANDSHINE CORP. D/B/A RISE BREWING, | Case No. 1:21-cv-06324-LGS-SLC |
| Plaintiff, | Jury Trial Demanded |
| v. | **DEFENDANT PEPSICO, INC'S RESPONSE TO (1) NEW FACTS PRESENTED IN PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS, AND (2) PLAINTIFF'S RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS** |
| PEPSICO, INC. | |
| Defendant. | |

Pursuant to Local Rule 56.1(b), Defendant PepsiCo, Inc. ("PepsiCo") respectfully submits the following responses to Plaintiff RiseandShine Corp. d/b/a Rise Brewing's ("RBC") new facts presented in RBC's Response to PepsiCo's Rule 56.1 Statement of Undisputed Facts ("Rule 56.1 Response") (Dkt. 400), and responses to RBC's Rule 56.1 Statement of Additional Material Facts ("Rule 56.1 Statement of Additional Facts") (Dkt. 402).[1]

## INTRODUCTORY STATEMENT

RBC improperly submitted two separate documents—a response to PepsiCo's Rule 56.1 Statement plus a separate Rule 56.1 Statement reflecting RBC's own purported material facts. PepsiCo has combined these into one document for the Court's convenience.  In Section I below, PepsiCo responds to new and wholly non-responsive purported "facts" that RBC inserted in response to PepsiCo's undisputed facts, in an apparent attempt to create the illusion of disputed issues of fact where there are none.  Then, in Section II below, PepsiCo responds to each of RBC's new "material facts" included in RBC's Rule 56.1 statement of "additional" facts.

RBC's Rule 56.1 Response also includes improper evidentiary objections, which have no place in a Rule 56.1 response.  "[W]here unauthorized objections to the Rule 56.1 statement are inserted concerning, for example, issues of admissibility under the Federal Rules of Evidence, a lack of foundation, or argumentative nature of the words used in the Rule 56.1 statement, the Court is left without an answer to the question of truthfulness of the fact asserted as material—and ultimately what is disputed." *Emanuel v. Gap, Inc.*, No. 19-CV-03617, 2022 WL 3084317, at *4 (S.D.N.Y. Aug. 3, 2022).  Accordingly, courts within this District disregard "improper legal argument" in a party's Rule 56.1 response. *See Pearlstein v. BlackBerry Limited*, No. 13-CV-7060, 2022 WL 19792 (S.D.N.Y. Jan. 3, 2022).  And, "[t]o the extent that [a party objects to a fact

---

[1] "Smith Ex.," "Welch Ex.," and "LJS Ex.," refer to the exhibits attached to the declarations of Monica Smith (Dkt. 382), Emily Chambers Welch (Dkt. 404), and Lauren J. Schweitzer.

in a Rule 56.1 statement] only on the basis of evidentiary admissibility, **those statements should be deemed admitted**, because '[a]n objection to the admissibility of a document is not the equivalent of a contention that the documents contents are untrue.'" *Emanuel*, 2022 WL 3084317, at *5-6 (emphasis added) (quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008)).

To object to the admissibility of evidence at the summary judgment stage, the objecting party must show that the evidence "cannot be presented in [admissible] form" at trial. *Emanuel*, 2022 WL 3084317 (quoting Fed. R. Civ. P. 56(c)(2)); *see also GE Funding Capital Market Servs., Inc. v. Nebraska Inv. Finance Auth.*, 2017 WL 2880555, at *3 (S.D.N.Y. July 6, 2017) ("Hearsay evidence is admissible at the summary judgment stage if the contents would or could otherwise be admissible at trial.") (Schofield, J.).  RBC's authentication and hearsay arguments should be disregarded for this additional reason.

## I.    PEPSICO'S RESPONSES TO NEW FACTS IN RBC'S RULE 56.1 RESPONSE

### A.    Facts Relating To Similarity

1.    The packaging for MTN DEW RISE ENERGY ("MDRE"), which was sold in 16-ounce cans, is depicted below.  Dkt. 104 ¶¶ 7, 9.



**Rise[2] Response:**  Undisputed as to the depiction front of the cans.  Disputed as to the name of the product as MTN DEW RISE ENERGY ("MDRE").  PepsiCo consistently referred to the product as MTN DEW RISE or RISE, including using the account handle @MTNDEWRISE, hashtag #MTNDEWRISE, (*e.g.*, Dkt. 35, ¶¶ 7, 9-10; Welch Ex. 29, PEPSICO00008790) domain mountaindewrise.com (Dkt. 104, ¶ 4), calling the product ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Disputed to the extent that the images provided do not depict the back of the cans.

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed[3] as to RBC's new facts, except that PepsiCo disputes that it "consistently referred to the product as MTN DEW RISE or RISE," because the cited materials refer to the product as MTN DEW RISE ENERGY as well (e.g., Dkt. 35 ¶¶ 7, 9; Welch Ex. 29), and disputed that PepsiCo was developing any future advertising campaigns using "MTN DEW RISE" without also using "MTN DEW RISE ENERGY" (as in Welch Ex. 32, Dkt. 404-32).  In any event, RBC's new facts are immaterial to resolution of PepsiCo's motion.**

      2.    The packaging for the ready-to-drink products manufactured by RBC between March 2021 and December 2021, which were sold in 7-ounce cans, is depicted below.  Smith Ex. 44 at RISE0016382; Ex. 39 at RISE0001063.

---

[2] In RBC's Rule 56.1 Response and Rule 56.1 Statement of Additional Facts, RBC defined Plaintiff RiseandShine Corp. d/b/a Rise Brewing as "Rise"

[3] Where PepsiCo indicates that a fact set forth by RBC is "undisputed," it does so for purposes of summary judgment only, and without prejudice to its ability to dispute it in other contexts.  Similarly, where PepsiCo has noted that a fact is "immaterial," it is because the fact is immaterial to the resolution of PepsiCo's motion for summary judgment.



**Rise Response:** Disputed. Rise disputes this fact to the extent the products are alleged to have been manufactured by "RBC", a registered mark of the Royal Bank of Canada.[4] Rise does not dispute that this is a depiction of the front of cans of RISE ready-to-drink products, but disputes the implication that these are the sole ready-to-drink products sold by Rise, or that consumers were not exposed to Rise's other flavors, such as Blood Orange, Lemonade, and Classic Latte which remain listed on ecommerce websites and were still available to consumers in the first quarter of 2021. *E.g.*, Welch Exs. 53-54, (screenshots of RISE Blood Orange and RISE Lemonade from Walmart.com); Geysky [sic] Dec. ¶ 5. Those products can be seen in the image below.



Dkt. 149, p. 2.

<u>**PepsiCo Response**</u>**: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs. RBC's response does not provide evidence**

---

[4] In this dispute regarding ***trademarks***, Rise has repeatedly objected to PepsiCo's choice to refer to it as "RBC", the registered mark of a third party. While Rise is sympathetic to the need for shorthand, Plaintiff is not "RBC" and objects to any characterization of Plaintiff as "RBC."

that its Blood Orange, and Lemonade Flavors were manufactured by RBC between March 2021 and December 2021 or that any appreciable portion of consumers were aware of those short-lived flavors.  Regardless, undisputed that Blood Orange and Lemonade remain listed on Walmart.com but disputed that Classic Latte is because RBC provides no evidence of that.  Disputed that the Blood Orange and Lemonade flavors were available to consumers in the first quarter of 2021; the only cited evidence is Gyesky's declaration, which does not identify the SPINS data he is using or attest that it was produced.  Moreover, the data of which PepsiCo is aware in the discovery record shows that there were ███████████

███████████████████████████████████████████████████

████████ in that time.  LJS Ex. 90, RISE0004397.  PepsiCo disputes that consumers were generally exposed to and/or generally able to purchase RBC's Blood Orange and/or Lemonade flavors in the first quarter of 2021.  RBC's new asserted facts are, in any event, immaterial to resolution of PepsiCo's motion.

B.     **Facts Relating To Strength**

3.     The word "rise" can suggest waking up in the morning.  *See* "Rise," *Merriam-Webster Online Dictionary* ("to get up from sleep or one's bed").

**Rise Response:**  Disputed.  Rise disputes this fact as PepsiCo provides no citation to support its alleged suggestion.  Disputed as to the definition provided by Merriam-Webster Online Dictionary, as PepsiCo's excerpt is incomplete.  The full definition has 13 definitions for "rise" as a verb and 7 definitions for "rise" as a noun.  Welch Ex. 55.  The first verb definition is provided below.

1.a:  to assume an upright position from lying, kneeling, or sitting

1.b:  to get up from sleep or from one's bed

**PepsiCo Response**: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs, and are undisputed and immaterial.

4.       Part of the reason RBC chose to use the word "rise" as part of its trademark is that the word "rise" is "related to ... morning sunshine and the drink giving you energy too," Smith Ex. 38 at RISE0000668 (Gyesky Quote from *Greenwich Free Press*), and because the word "rise" "symbolizes the start of a new day and getting up and on the go," Smith Ex. 37 at RISE0000185 (McGovern quote from Brunswick School article); *see also* Smith Ex. 10 at 146:2-11; 147:5-11 (explaining that ████████████████████████████████████████ ██████████████████████████████████).

**Rise Response:**   Disputed.   Rise picked its corporate name RiseandShine Corporation and the mark RISE because "[i]t's an aspirational name.  It is something that brings the best out of people, brings the best out of us, which is what we were looking to do, and so it was an aspirational name that we thought made sense for our company."  Welch Ex. 19, Gyesky Tr. 47:7-21; *see also id.*, 49:17-21.  Further disputed to the extent PepsiCo's excerpt intentionally excludes relevant portions of quotes discussing the naming process.  The full quote from the Greenwich Free press article is:

> "It took months to come up with the name," he said, adding that people are used to opening a can of Guinness and waiting for the bubbles to settle.  They selected "RISE" in a nod to the bubbles.
> "It's related to the bubbles rising, but also morning sunshine and the drink giving you energy too," he said.  "We want to be a fuel for passion.  People rise to their best self."  Dkt. 382-37.

The full quote from the Brunswick School article is:

> "There is something energetic, natural, and organic about seeing the coffee poured into a glass and watching it rise into that creamy cascade at the top," McGovern said.  It also symbolizes the start of a new day and getting up and on the go."  Dkt. 382-36.

Rise objects to the relevance of the Brunswick School article quoted under F.R.E. 401, as the document at Dkt. 382-26 appears to be a draft, as can be seen from the inserts "Caption for McGovern goes here.  Caption goes here.  Caption goes here."

The full quote from the deposition of Mr. McGovern is:

> "Sure.  We wanted to name the product for something that really stood for the energy and the feeling that the product gave you, which was awesome energy in the morning to rise and shine, and then also to give you energy throughout the day to continue to rise and achieve as much as you could.  And you know, so it was a name that ended up being a perfect fit."  Dkt. 389-9, 146:2-11.

**PepsiCo Response**:  **RBC's new facts do not controvert PepsiCo's new facts as they are non-responsive non-sequiturs.  The evidence RBC cites does not actually show that RBC chose its name only because it is "aspirational."  Disputed for the same reason.  In addition, RBC's asserted new facts are immaterial because there is no dispute that the word "rise" is "related to . . . morning sunshine and the drink giving you energy too," as Gyesky is quoted as saying, and "symbolizes the start of a new day and getting up and on the go," as McGovern is quoted.**

5.       On June 29, 2021, RBC's CEO Grant Gyesky submitted a sworn declaration in support of RBC's motion for a preliminary injunction which stated:  "[s]ince 2015 [RBC] has spent approximately 17.5 million dollars promoting our coffee and tea-based caffeinated drinks."  Dkt. 29 ¶ 19.

**Rise Response:**  Disputed that Grant Gyesky is the CEO of RBC.  *See* note above.  Otherwise undisputed.

**PepsiCo Response**:  **There are no new facts asserted in RBC's response.**

6.       Documents produced by RBC during discovery show that between July 2021 and March 2022, RBC spent roughly ███████ on marketing when the following categories are included: ██████████████████████████████████████████████ ███████████████████████████ Smith Ex. 64 (Model Tab).

**Rise Response:**  Disputed.  Rise disputes this statement to the extent this implies that Rise spent ██████████ on promotion of its products.  During the July 2021 to March 2022 window Rise spent at least ████████████ marketing and promoting its products when the following relevant categories of expenses are included: ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Welch Ex. 56, p. 2-4.  Rise also spent █████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████ Welch Ex. 56, p. 1-2; Gyesky Dec. ¶ 5.

**PepsiCo Response:**  **The facts asserted in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts.**

       7.     RBC has not produced any surveys regarding the strength of its marks.  Smith ¶ 27.

**Rise Response:**  Disputed.  Rise produced two consumers surveys on its products, messaging and the RTD coffee market.  Welch Ex. 42, RISE0003277, 305-306; Welch Ex. 57.  Rise produced a survey of growth amongst competitors showing ████████████████████████

███████████████████████████ Rise also submitted rebuttal expert testimony regarding the surveys conducted by Pepsi's experts.  Welch Ex. 64, Kamins p. 1-4.

**PepsiCo Response:**  **The facts asserted in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  There is no citation to a survey**

regarding the strength of RBC's mark.  **Regardless, undisputed as to RBC's new facts, and immaterial.**

8.     RBC began using the word "rise" on its packaging in May 2015 or later.  Smith Ex. 45 at RISE0016644 ███████████████████████████████████████████

███████████████████; Smith Ex. 37 at RISE0000185 (RBC cold brew "first served at Colonie without a name—anonymously, if you will"); Dkt. 62-9 at 2 (PTO Records, RISE COFFEE CO.) (claiming first use 05/21/2015).

**Rise Response:**  Undisputed the Rise [sic] began use of the RISE Marks in May 2015.

**PepsiCo Response: There are no new facts asserted in RBC's response.**

9.     RBC did not ███████████████████████████████████████████

████████████████████████████████████████Dkt. 308 at 92:20-23.

**Rise Response:**  Disputed.  Rise objects to this statement as unsupported by citation as the cited testimony states that Rise did not "hire anyone to do a formal trademark search."   Jarrett McGovern, Rise co-founder ran searches for use of the same or similar name.  Welch Ex. 19, Gyesky Tr. at 89:1 – 92:15.

**PepsiCo Response: The facts asserted in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts, and immaterial.**

10.     By the time RBC began using the word "rise" on its packaging in May 2015, markholders had applied to register at least 18 different "rise"-formative trademarks with the PTO for use in connection with coffee or other beverages.  Dkt. 108-1 at 2, 4, 5, 7, 8, 13, 15 (examples of "rise"-formative TMs registered before May 2015); Dkt. 108-2 at 2, 4, 5, 6, 8, 13, 14, 15, 16 (same); Torres ¶¶ 20, 21 (TM Reg. No. 3974543, TM Reg. No. 4849689).

**Rise Response:** Disputed. Rise objects to the admissibility of the evidence put forth at Dkt. 108-1, Dkt. 108-2, and Torres ¶¶ 20, 21 as under F.R.E 401. Mere registration, or application, is irrelevant to establish use in commerce. *See Lexington Mgm't Corp. v. Lexington Cap. Partners*, 10 F.Supp.2d 27, 281-282 (S.D.N.Y. 1998) (citing *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) ("The significance of third-party trademarks depends wholly upon their usage."). Rise objects to the characterization of third-party entities as "markholders" as unsupported by citation to admissible evidence. Rise objects to the characterization of the registration at Dkt. 108-1 p. 4 as "for use in connection with coffee or other beverages" as the defined goods and services for that registration is "breakfast entrees consisting primarily of biscuits with chicken, beefsteak, sausage, bacon, eggs, ham, cheese, cinnamon and coffee." Dkt. 108-1, p.4. Rise objects to the characterization of the registration at Dkt. 108-2 p. 5 as "for use in connection with coffee or other beverages" as the defined goods and services for that registration is "drink mix, namely sugar free powders used in the preparation of soft drinks." Dkt. 108-2 p. 5. Rise objects to the characterization of the registration at Dkt. 108-2 p.13 as "for use in connection with coffee or other beverages" as the defined goods and services for that registration is "smoothies containing grains and oats." Rise objects to the relevance of the evidence put forth at Torres ¶ 20 as that registration was cancelled on January 12, 2018. Rise objects to the characterization of the evidence put forth at Torres ¶ 21 as relating to a "rise-formative" mark as that registration does not use the standalone term "rise."

**PepsiCo Response: There are no new facts asserted in RBC's response.**

11.     In addition to the foregoing, markholders who applied to register four other "rise"-formative marks for beverages after May 2015 swore under oath to the PTO in their trademark applications that they first used their "rise"-formative marks in commerce prior to May 2015. Dkt.

108-1 at 9, 12, 14 (examples of "rise"-formative TM registration claiming a "first use" date prior to May 2015); Dkt. 108-2 at 12 (same).

**Rise Response:** Disputed. Rise objects to the admissibility of the evidence put forth at Dkt. 1081, Dkt. 108-2, and Torres ¶¶ 20, 21 as under F.R.E 401. Mere registration, or application for registration, is irrelevant to establish use in commerce. *See Lexington Mgm't*, 10 F.Supp.2d at 281282 (citing *Scarves by Vera*, 544 F.2d at 1173). Rise objects to the characterization of third-party entities as "markholders" as unsupported by citation to admissible evidence. Rise objects to the discussion of the oaths of the applicants as unsupported by any citation to evidence.

**PepsiCo Response: There are no new facts asserted in RBC's response.**

12.     In addition to the foregoing, Rise Biscuits Donuts LLC had begun using a "rise"-formative mark in connection with restaurants that served to-go coffee at least as early as 2013. Smith Ex. 73 at RISEBISCUITS01569.

**Rise Response:** Disputed. Rise objects to the admissibility of the cited document under F.R.E. 901, 802, and 401. Pepsi has not and cannot authenticate the document at RISEBISCUITS01569, and has not established the admissibility of this document for the truth of the matter asserted under F.R.E. 802. As the underlying document is inadmissible, Pepsi's allegation is made without citation to supporting evidence, and Rise disputes it. Rise objects to the relevance of this document under F.R.E. 401, as it is being used to show alleged use of the term "rise" in 2013 in a single restaurant location in North Carolina, seven years before the products at issue competed in the marketplace, making it irrelevant. Rise objects to the allegation that the alleged restaurant discussed at RISEBISCUITS01569 "served to-go coffee" as unsupported by citation in the document. Further, Rise the company no longer operates under the name Rise Biscuits and Doughnuts. Gyesky Dec., ¶ 28.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed that Rise Franchising LLC, formerly known as Rise Biscuits Donuts LLC, no longer operates stores under the name Rise Biscuits and Donuts but instead operates stores under a different name that also starts with "Rise." (*see* https://risebiscuitschicken.com/), and immaterial.**

13.     RBC was aware that other companies had used "rise"-formative marks for beverages prior to RBC's use of "rise" on its packaging, and that its use of "rise" on its packaging might infringe those other companies' rights, but nonetheless continued to use the word "rise." Smith Ex. 27 at ESV-0000195 (RBC 2019 Investor Disclosure Schedule stating that ███

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ ); Smith Ex. 61 at RISE0028012 (RBC 2021 Investor Disclosure Schedule stating the ████████████████████████████

████████████████████████████████████████████ ); Smith Ex. 5 at 241:9-243:4; Smith Ex. 6 (Gaines-Ross Instagram post about RISE UP COFFEE); Smith Ex. 35 at PEPSICO0019747 (Google search results screenshot attached to RBC PTO filing showing "Rise Up Coffee" and "Daily Rise Coffee Store"); Smith Ex. 65 at RISE0028824-26 (███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ ).

**Rise Response:**  Disputed.  Rise admits that it was aware of third parties alleging trademark rights in various terms, including "Rise Up" and "Rise Kombucha" as of its 2019 disclosures to its investors.  Rise disputes that it was aware that its RISE Marks might infringe upon the rights of

any of the entities listed in those 2019 disclosures, as Rise's disclosures noted that such third

parties in fact ███████████████████████████████████████ Dkt. 382-26.  Rise admits

that it was aware of ██████████████████████████████████████████████████

████████████████████  Rise disputes that it was aware of the contents of Instagram account at

Smith Ex. 5 and Smith Ex. 6.  This account was controlled by multiple people, and that Mr. Gaines-

Ross denied awareness of the cited posts.  Welch Ex. 59, Gaines-Ross Tr., 241:15-19, 243:20-

244:1; 245:17-246:4.  Rise admits that it submitted the document produced at PEPSICO0019747

to the USPTO, but denies that it establishes that any third party had or has prior trademark rights.

Rise objects to the admissibility of the document produced at RISE0028824 under F.R.E. 401,

402, and 408. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████ Dkt. 382-

64.  This document reflects "compromise negotiations."  F.R.E. 408 (a)(2).  Pepsi's efforts to use

it to establish the priority rights of third parties, central to the liability claims at issue in the

underlying dispute, is prohibited, and does not fall within the exemplary purposes of 408(b), nor

does Pepsi allege any other proper purpose.  Rise further objects to its admissibility under F.R.E.

402, as this document is an attorney-generated statement, and reflects the puffery and strategy of

that context.  The weight of this statement is likely to be misconstrued by the fact finder.

**PepsiCo Response**:  **The facts stated in RBC's response do not controvert PepsiCo's asserted**

**facts.[5]**

---

[5] RBC's evidentiary objection under Federal Rule of Evidence 408 should be disregarded along with the rest of its evidentiary objections, but nevertheless, PepsiCo responds as follows: RBC's attempt to shield Smith Ex. 62, RISE0028824 from the Court's consideration should be rejected because the document is not covered by Rule 408.  "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was ***the subject of the compromise, not some other claim***."  *Williams v. Regus Mgmt. Grp, LLC*, No. 10-CV-8987, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (Furman, J.) (emphasis added); *see also Starter Corp. v. Converse*, 170 F.3d 286, 298 (2d Cir. 1999) ("evidence of a settlement agreement . . . otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' *i.e.*, for a purpose other than to prove or disprove the validity of the claims ***that [the agreement was] meant to settle***") (emphasis added); Fed. R. Evid. 408 advisory comm. note ("As a matter

14.     After the United States Patent & Trademark Office initially refused RBC's

application to register the RISE COFFEE CO. mark, citing a likelihood of confusion with other

"rise"-formative trademarks, RBC submitted in May 2016 a letter to the PTO in which it stated:

> "The fact that there are multiple Rise-formulated coffee marks owned by different
> registrants peacefully coexisting without confusion shows that there is room for another
> Rise-formulated mark, particularly one with a completely different appearance and
> sound."

> "As a result of being exposed to numerous coffee marks containing 'Rise,' relevant
> consumers are likely to consider the entire mark in ascertaining the source of the goods,
> and to differentiate goods and services using the entire mark.  Therefore, the Applicant
> maintains that the word 'Rise' is not the dominant portion of the Applicant's mark and
> should not be given special weight in comparing the Applicant's mark to the cited
> marks."

Dkt. 108-6 at 4-5.

**Rise Response:**  Disputed.  Rise objects to the admissibility of these statements under F.R.E. 401,

as these statements were made in May 2016, almost five years prior to the window of competition

between the products at issue in this case, and were made regarding the mark RISE COFFEE CO.,

not one of Rise's registered RISE Marks.

**PepsiCo Response**: There are no new facts asserted in RBC's response.

### C.     Facts Relating To Actual Confusion

15.     RBC has not proffered any survey evidence of actual confusion.  Smith ¶ 14.

**Rise Response:**  Disputed.  Rise cannot discern the meaning of this statement to the extent it

discusses "survey evidence of actual confusion."  Undisputed that Rise did not submit a made-for-

---

of general agreement, evidence of an offer to compromise a claim is not receivable in evidence as an admission of, as
the case may be, the validity or invalidity of *the* claim.") (emphasis added).  Because Smith Ex. 62 reflects ████
████████████████████████████████████████████████████████  Rule 408 is inapplicable in the context of this lawsuit.  *See
Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 133 (D. Conn. 2010) ("the policy
concerns animating the Rule will not generally be present—or at least not to the same degree—when the evidence of
settlement negotiations concerns claims not at issue in the trial for which the evidence is introduced"); WEINSTEIN'S
FEDERAL EVIDENCE 408.03[1] (the core purpose of FRE 408 is to preclude parties from using settlement offers by
their opponents as "an admission of the validity . . . of the claim" the offer is meant to settle).

litigation survey regarding *likelihood* of confusion.  Rise disputes any allegation that it did not

produce evidence of actual confusion.  Rise identified the following instances:

- On March 3, Rise employee Rachel Ratliff encountered managers at a Midwest grocery store who were confused upon seeing a request for a RISE promotional display.  Dkt. 34, ¶¶ 7–9.

- On March 9, Rise founder Jarrett McGovern got a text message from a friend who incorrectly thought Rise had partnered with Pepsi.  Welch Ex. 10 at RISE0028069.

- On March 18, Rise received a message through its online contact form ██████████████ ████████████████████████████████████████████████ Welch Ex. 11 at RISE0028066.

- On March 25, Rise employee Corey Guidi encountered mis-stocked MTN DEW RISE product in the area designated for Rise's beverages in California.  Dkt. 28, ¶¶ 5–6.

- On April 6, an industry contact emailed Rise CEO Grant Gyesky asking if Rise and Pepsi had "formed a partnership" to launch MTN DEW RISE.  Welch Ex. 12.

- On April 16, an industry contact emailed Rise employee Melissa Kalimov asking "[i]s this your product" attaching a photo of Pepsi's product.  Welch Ex. 13.

- On April 30, an industry contact emailed Rise employee Melissa Kalimov that a MTN DEW RISE display was "super confusing.  I see coffee on here and Rise.  Is this new?" Dkt. 31-1.

████████████████████████████████████████████████████████████████

- Around May 19, a Rise investor received a text from a friend regarding a possible affiliation between Pepsi and Rise based on the new "lebron commercial for a rise energy drink."  Welch Ex. 15 at RISE0028061–62.

- On May 20, Rise employee Nia Kaye encountered a retail employee who was confused by her reference to "RISE" (Dkt. 32, ¶ 3) despite the fact that she usually used the mark RISE to refer to Rise's products, and wears branded Rise shirts when visiting stores.  *Id.*, Welch Ex. 16, Kaye Tr. 89:3–18.

- On August 11, a Rise contractor told Rise employees that "[t]here is definitely confusion when [he] mention[s] 'RISE'" during business pitches.  Welch Ex. 17, at RISE0020885-886.

- On August 23, Alex Tanev saw an ad on Instagram for MTN DEW RISE and incorrectly assumed that there was an association between Rise and Pepsi.  Tanev Dec., ¶¶ 3-4; Welch Ex. 18.

- In August of 2021, Sarah Pelfrey, who was associated with an event Rise wished to sponsor, was confused by the two products.  Dkt. 113, ¶¶ 5-6.

- In August of 2021, a Cincinnati Kroger employee told Rise employee Allison Schmidt that he wrongly thought MTN DEW RISE and Rise's products were connected.  Dkt. 113, ¶¶ 7-9.

- Another Kroger Store manager told Rise employee Allison Schmidt that he incorrectly thought that the two products were owned by the same company, resulting in loss of promotional display opportunities for Rise.  Dkt. 113, ¶¶ 10-11.

- A grocery manager mistakenly placed an order for MTN DEW RISE when a Rise employee asked him to place an order for "Rise," resulting in empty shelf space.  Dkt. 160, 78:3-79:24.

- A customer accidentally purchased Pepsi's product when intending to purchase Rise's.  Welch Ex. 19, Gyesky Tr. at 284:5–21.

- Another potential customer saw Rise's CEO wearing a RISE branded hat, said that he "loved the product" but then pointed to a cooler of Pepsi's product, further stating that the situation was "confusing."  Welch Ex. 19, Gyesky Tr. at 283:9–23.

- Rise employee Allison Schmidt experienced consumer confusion at product tastings at such a rate that it was the "norm... not the exception."  Dkt. 160, 85:12-15.

Rise does not dispute that this actual confusion evidence arose outside of the context of a made-for-litigation survey.

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, PepsiCo addresses each of RBC's alleged instances of confusion individually below, in response to paragraphs 46 to 64 of RBC's Rule 56.1 Statement of Additional Facts.**

16.     RBC proffered only nine pieces of anecdotal evidence purporting to show actual confusion in support of its motion for preliminary injunction, even though 50 million cans of MDRE were sold in the United States by the time of the preliminary injunction hearing.  Dkt. 32 (Kaye Decl.) ¶ 3; Dkt. 31 (Kalimov Decl.) ¶ 3; Dkt. 28 (Guidi Decl.) ¶¶ 4-7; Dkt. 34 (Ratliff Decl.) ¶¶ 7-9; Dkt. 114 (Tanev Decl.) ¶ 4; Dkt. 113 (Schmidt Decl.) ¶ 5; *id.* ¶¶ 7-8; *id.* ¶ 11; Dkt. 160 at 84:21-85:2; *id.* at 127:7-12 (Lyons:  "almost 50 million to date").

**Rise Response:**  Disputed.  Rise disputes the argumentative description of its evidence of actual confusion put forth in support of preliminary injunction as "only nine pieces of anecdotal

evidence." Rise admits that it put forth the declaration of Nia Kaye. Dkt. 32. Rise admits that it put forth the declaration of Melissa Kalimov (Dkt. 31) but notes that Ms. Kalimov's declaration was supported by an email from Brandon Lutz. Dkt. 31-1. Rise admits that it put forth the declaration of Corey Guidi. Dkt. 28. Rise admits that it put forth the declaration of Rachel Ratliff. Dkt. 34. Rise admits that it put forth the declaration of Alex Tanev. Dkt. 114, but notes that the Court did not consider that evidence. Dkt. 104, pp. 4-5. Rise resubmits that declaration in association with this filing. Rise admits that it put forth the declaration of Allison Schmidt (Dkt. 113) and presented Ms. Schmidt for testimony at the P.I. hearing, Dkt. 160 at 71-85, but disputes that Ms. Schmidt relayed a single instance of confusion. Ms. Schmidt's declaration referenced "numerous instances of actual confusion." Dkt. 113 ¶ 3. Ms. Schmidt relayed actual confusion by third party Sarah Pelfrey (*id.*, ¶¶ 5-6) and testified regarding the same at the hearing. Dkt. 160 at 81:9-16. Ms. Schmidt relayed a separate instance at Kroger Store #915 in Cincinnati in which a Kroger employee said that a display of MTN DEW RISE was placed near the RISE coffee on the warm shelf "because of where you [referring to RISE Nitro Cold Brew] are on the shelf! They do that sometimes" and further clarified that he thought the two products were connected. Dkt. 113, ¶¶ 7-9. Ms. Schmidt further testified that she later called and asked to put RISE coffee in a checkout cooler in the front of a store, only to be incorrectly told RISE coffee was already there because the employee she communicated with had incorrectly believed that both products were owned by the same company. Dkt. 113, ¶¶ 10-11. Ms. Schmidt also testified at the hearing regarding a grocery manager mistakenly ordering MTN DEW RISE instead of Plaintiff's RISE, resulting in empty shelf space Dkt. 160, 78:3-79:24. Ms. Schmidt also testified at the hearing regarding multiple instances of confusion from customers participating in product tastings in retailers, which, at the time of the hearing had "become the norm. Not the exception." Dkt. 160,

84:21-85:15.  A list of Rise's actual confusion evidence appears in Rise's response to alleged fact No. 17, above.

**PepsiCo Response**: **Disputed that Ms. Schmidt relayed numerous instances of actual confusion and disputed as to the facts about Sarah Pelfrey, but immaterial.  There is no evidence that Ms. Pelfrey had ever seen an RBC product when she saw MTN DEW RISE ENERGY at the store.  Dkt. 160 at 89:20-22.  Undisputed and immaterial as to the facts about Kroger Store #915.  As to the facts concerning the checkout cooler, undisputed and immaterial as to what a Kroger manager said to Ms. Schmidt, but disputed (though nonetheless immaterial) regarding RBC's implication that it lost promotional display opportunities for its product, which is not referenced in the cited document.  As to the facts about the grocery manager mistakenly ordering MTN DEW RISE ENERGY, disputed and immaterial.  The cited testimony does not show that any grocery manager made mistaken purchasing decisions based on requests from an RBC employee, but rather, at most, gave the employee information about MTN DEW RISE ENERGY in response to her inquiry about "Rise."  As to the facts about the product tastings, undisputed that Ms. Schmidt claimed to experience "confusion" but disputed as to whether her experiences amounted to confusion, as Ms. Schmidt described the "confusion" as customer inquiries, though immaterial to resolution of PepsiCo's motion.  *See* Dkt. 160, 84:21-85:2 (testifying that consumers asked "you are the new, you know, the new coffee version of Mountain Dew, right . . . Is that what you are?").  PepsiCo addresses each of RBC's remaining alleged instances of confusion individually below, in response to paragraphs 46 to 64 of RBC's Rule 56.1 Statement of Additional Facts.**

17.     Other than the declaration of Alex Tanev, who is a "casual social acquaintance of Melissa Kalimov, the Chief Operating Officer of [RBC]," Dkt. 114 ¶ 2, all of the anecdotal evidence of supposed actual confusion referenced in the above paragraph consists of the testimony of RBC's own employees.

**Rise Response:**  Disputed.  Rise admits that Alex Tanev is a casual social acquaintance of Melissa Kalimov.  Rise disputes the argumentative characterization of its evidence as "anecdotal evidence of supposed actual confusion."  Rise disputes the characterization of the evidence discussed above as consisting of the testimony of Rise's own employees.  The declaration of Melissa Kalimov is supported by the attached email from third party Brandon Lutz.  Dkt. 31-1.  The declaration of Corey Guidi is supported by photographic evidence.  Dkt. 28 ¶ 5.  The declaration of Rachel Ratliff is supported by photographic evidence.  Dkt. 34, ¶ 7.  The declaration of Allison Schmidt is supported by photographic evidence.  Dkt. 113, ¶ 9.

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts, but immaterial.**

18.     Between March 2021 and the time PepsiCo took MDRE off the market, over 70 million cans of MDRE were sold in the United States.  Britven Decl. ¶ 4.

**Rise Response:**  Disputed.  Rise disputes this statement as unsupported by citation to admissible evidence.  Rise has sought leave to file a motion to strike the declaration of Thomas Britven as untimely and exceeding the bounds of his initial report, as "[e]xpert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)."  *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998).

**PepsiCo Response: There are no new facts asserted in RBC's response. PepsiCo disagrees with RBC's arguments regarding Mr. Britven's declaration, but regardless, additional record evidence confirms the fact asserted by PepsiCo. *See, e.g.*, LJS Ex. 80, Tousignant Dep. at 108:1-19 (70,405,531 cans sold).**

19.     Since the preliminary injunction hearing, RBC has proffered only four additional instances of alleged actual confusion, consisting of **(a)** the testimony of RBC's CEO, Grant Gyesky, regarding a ████████████████████████████ (Dkt. 308 at 283:9-23); **(b)** the testimony of Gyesky regarding the ██████████ of a former RBC employee (*id.* at 284:5-15); **(c)** a single entry on a PepsiCo call center log reflecting that a caller asked ████████ ██████████, Torres ¶ 22, and **(d)** a comment from RBC's online consumer portal consisting entirely of the words ████████████████████████████████ ████████████████████████████ Smith Ex. 43.

**Rise Response:**  Disputed.  Rise disputes the argumentative description of its produced evidence as "only four additional instances of alleged actual confusion."  During discovery Rise presented the confusion evidence outlined in response to alleged fact No. 17, above.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs. Regardless, PepsiCo addresses each of RBC's alleged instances of confusion individually below, in response to paragraphs 46 to 64 of RBC's Rule 56.1 Statement of Additional Facts.**

20.     RBC has not proffered any direct testimony from consumers who mistakenly purchased, or chose not to purchase, one of the parties' products as a result of alleged confusion. Smith ¶ 15.

**Rise Response:**  Disputed.  Rise disputes the description of its evidence as not "direct testimony" as constituting attorney argument, and not fact.  In the examples discussed in the foregoing paragraphs, Rise has presented evidence of actual confusion, including confusion which could inflict commercial injury on Rise in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.

**PepsiCo Response: RBC's response does not controvert PepsiCo's asserted facts as it is a non-responsive non-sequitur.  The cited examples are not "direct testimony from consumers who mistakenly purchased, or chose not to purchase, one of the parties' products as a result of alleged confusion."  Regardless, PepsiCo addresses each of RBC's alleged instances of confusion individually below, in response to paragraphs 46 to 64 of RBC's Rule 56.1 Statement of Additional Facts.  None of RBC's "confusion evidence" is direct testimony from supposedly confused consumers who mistakenly purchased, or chose not to purchase, one of the parties' products as a result of alleged confusion.**

D.      **Facts Relating To Proximity**

21.     MDRE is a fruit-flavored energy drink.  Dkt. 104 ¶ 6.

**Rise Response:**  Disputed.  MTN DEW RISE was a canned morning caffeine drink.  Dkt. 35, ¶¶ 7-12; Dkt. 104, ¶ 4.

**PepsiCo Response: The fact stated in RBC's response does not controvert PepsiCo's asserted fact as it is a non-responsive non-sequitur.  Regardless, disputed but immaterial.  *See* Dkt. 160 at 99:10-14 (Jim Lee testimony that "[T]here is no such thing as morning beverage caffeinated beverage category.  That's not something the retailer or industry experts recognize.").**

22.     The canned ready-to-drink products that RBC sold between March 2021 and December 2021 were coffees and one tea beverage.  Dkt. 29 ¶ 12.

**Rise Response:**  Disputed.  Rise disputes that its canned ready-to-drink products sold between March 2021 and December 2021were coffees and one tea beverage.  Rise's canned RTD products sold between sold between [sic] March 2021 and December 2021 were nitro cold-brew coffee and tea products, specifically Original Black flavor, Oat Milk Mocha flavor, Oat Milk Latte flavor, London Fog tea flavor, Oat Milk Vanilla flavor, Classic Latte flavor, Blood Orange flavor, and Lemonade flavor, each of which are often sold in the same section of stores as energy drinks, and in fact next to MTN DEW RISE.  Gyesky Dec., ¶ 5; Welch Exs. 34-38; Dkt. 113 ¶ 9; Dkt. 28, ¶ 5. Further, disputed to the extent it implies that consumers were not exposed to Rise's other product offerings, such as Blood Orange, Lemonade, and Classic Latte which remain listed on ecommerce websites and were still available to consumers in the first quarter of 2021.  *E.g.*, Welch Exs. 53-54, (screenshots of RISE Blood Orange and RISE Lemonade from Walmart.com); Geysky [sic] Dec. ¶ 54.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts, except disputed that (1) the Classic Latte remains listed on the Walmart.com ecommerce website, because RBC cites no evidence of that, (2) the Blood Orange flavor was sold between March 2021 and December 2021, because the only cited evidence is Gyesky's declaration, which does not identify the SPINS data he is using or attest that it was produced; moreover, the data of which PepsiCo is aware in the discovery record shows that there were** ███████

████████████████████████████████████████████████████

█████████████████████ **in that time, LJS Ex. 90, RISE0004397; (3) the listed RBC**

products are often sold in the same section of stores as energy drinks, and in fact next to
MTN DEW RISE ENERGY, because, for example, RBC's own employee admitted that it
would be "odd" for products to appear near each other in retail stores. *See, e.g.*, Dkt. 113 ¶
7.  In any event, RBC's new facts are immaterial to resolution of PepsiCo's motion.

23.     The parties' products have different taste profiles:  when MDRE was on the market,
it came in a variety of fruit flavors, including "Pomegranate Blue Burst," "Tropical Sunrise,"
"Strawberry Melon Spark," "Peach Mango Dawn," "Berry Blitz," and "Orange Breeze," Dkt. 104
(Torres Decl. ¶ 6); ███████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ Smith Ex. 41.

**Rise Response:**  Disputed.  Rise disputes these statements for the reasons set forth in response to
alleged fact 22, above.

**PepsiCo Response**: **PepsiCo's response is provided above, in response to alleged fact 22.**

24.     ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Smith Ex. 40 at RISE0003298.

**Rise Response:**  Disputed.  Rise disputes the implication that there is a consistent distinction
between coffee and energy products.  *E.g.*, Welch Ex. 16, Kaye Tr., 145:23-146:17 (discussing
"Bang Coffee" and the "primary lineup" of Bang as energy, but manufacturing products with
coffee in them).  Further, the survey cited by Pepsi was performed informally by Rise employees,
who acknowledge that it is of limited trustworthiness.  Welch Ex. 60, Kalimov Tr. 174:2-23
(discussing the document including Dkt. 382-39).  Further, ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ and Pepsi

believed that "83 percent of energy drink consumers are also coffee drinkers" Welch Ex. 23 at

72:3-20; Welch Exhibit 41, p. 2.

**PepsiCo Response**: The facts stated in RBC's response do not controvert PepsiCo's asserted

**fact as they are non-responsive non-sequiturs. Regardless, undisputed as to RBC's new facts,**

**except disputed that there is not a "consistent distinction between coffee and energy**

**products."** *See* **Dkt. 160 at 98:7-101:9 (Jim Lee testimony explaining that energy drinks and**

**ready-to-drink coffee drinks are different categories in the liquid refreshment beverage**

**industry). In any event, RBC's new facts are immaterial to resolution of PepsiCo's motion.**

25. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Smith Ex. 29 at PEPSICO0006495.

**Rise Response:** Disputed.  Rise objects to the characterization of PEPSICO0006495 as showing

that ██████████████████████████████████████████████████ as

attorney argument.  Pepsi was also aware that "83 percent of energy drink consumers are also

coffee drinkers" (Welch Exhibit 41, p. 2) and that ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Welch Ex. 23 at 72:3-20.

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts, and immaterial.**

E.    **Facts Relating to Buyer Sophistication**

26.    RBC's typical consumers ████████████████████████████████
████████████████████ Smith Ex. 40 at RISE0003284.

**Rise Response:**   Disputed to the extent this is an excerpt of the information conveyed in RISE0003284, which also states that ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, undisputed as to RBC's new facts, and immaterial.**

F.    **Facts Relating to Bridging-The-Gap**

27.    RBC has not proffered any evidence regarding any imminent or definite plans to launch an energy drink in the future.  Smith ¶ 35.

**Rise Response:**   Disputed.  Rise has presented evidence that it is ████████████████
████████████████████████████████████████. Welch Ex. 43, RISE0026639;
Welch Ex. 33 at RISE0027355-356; Welch Ex. 65; Gyesky Dec. ¶ 6.

**PepsiCo Response**: **The fact stated in RBC's response does not controvert PepsiCo's asserted fact as it is a non-responsive non-sequitur.  Regardless, disputed as to RBC's stated fact: none of the cited documents show any current consideration of launching** ████████████
████████████████**; Welch Ex. 33 shows** ████████████████████████████

███████████████████████████████████████ **Welch Exs. 43 and 65 are from early**

**2020; and Mr. Gyesky's declaration that** ███████████████████████████

**lacks factual support in the record (and is the subject of a motion to strike).  In any event,**

**RBC's cited evidence is immaterial to resolution of PepsiCo's motion because it reflects only**

**RBC** ███████████████████████████

      28.    RBC has not proffered any evidence that consumers were aware of any plans by

RBC to launch an energy drink in the future.  Smith ¶ 36.

**Rise Response:**  Disputed.  Rise has presented evidence that it is ███████████████

████████████████████████████████████████████████████

███████████████████████████ Welch Ex. 43, RISE0026639;

Welch Ex. 33 at RISE0027355-356; Welch Ex. 65; Gyesky Dec. ¶ 6.

**<u>PepsiCo Response</u>: The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact as those documents do not reflect consumer awareness of any plans by RBC and are thus**

**non-responsive non-sequiturs.  Regardless, disputed as to RBC's new facts for the reasons**

**set forth in response to alleged fact 27, above, and immaterial.**

      29.    PepsiCo has no intention of launching a coffee version of MDRE.  Dkt. 104 ¶ 17.

**Rise Response:**  Disputed.  The cited statement was made on August 10th, 2021, and Pepsi has

failed to establish that the same holds true today, over a year later.  The cited testimony states that

"PepsiCo already distributes Starbucks shelf-stable coffee drinks and would not market its own

coffee drinks."  Rise does not dispute that Pepsi distributes numerous shelf-stable RTD coffee

drinks, but disputes the veracity of any claims regarding Pepsi's ability to invest in, market, or

distribute coffee based products, including in conjunction with MTN DEW or MTN DEW RISE

in light of the ██████████████████████████████████ *E.g.*, Welch

Ex. 44 ███████████████████████████████████████████████

██████████ Welch Ex. 2 ██████████████████████████████████

██████████████ Welch Ex. 1 at PEPSICO0011818, 820 ██████████████████

████████████ Welch Ex. 54 █████████████████████████████

**PepsiCo Response**: The facts stated in RBC's response do not controvert PepsiCo's asserted fact and are non-responsive non-sequiturs.  Regardless, disputed as to RBC's new facts because the cited evidence reflects communications among individuals in their capacities as executives or directors of the NACP, not in their capacity as PepsiCo executives.  In any event, RBC's new facts are immaterial to resolution of PepsiCo's motion.

**G.     Facts Relating To RBC's Disgorgement Claim**

30.    PepsiCo did not ███████████████████████████████████

████████████████████████████████████████████████████████

██████████. Britven Ex. 1; Britven Decl. ¶¶ 8-12; *see also* Smith Ex. 2 at 97:1-101:2 █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████; Britven

Decl. ¶¶ 12-14 (explaining that he used full absorption accounting and the quarterly updates for

Mtn Dew Rise Energy did not); Britven Decl. ¶ 14 (██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████); Smith Ex. 12 at 223:19-225:16 (██████████

████████████████████████████████████████████████████████

███████████████████████████████████████).

**Rise Response:** Disputed. ███████████████████████████████████

██████████████████████████████████████Welch Ex. 49, Reed Rebuttal Report. p. 41.

Furthermore, Rise has sought leave to motion to strike the declaration of Thomas Britven. As the declaration of Mr. Britven should be struck, this discussion is unsupported by citation.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact because RBC's expert did not "account[] for all costs," *i.e.*, did not use full absorption accounting. Disputed to the extent RBC implies that its expert concluded that PepsiCo made ██████████████████████████████████████████████ when accounting for all costs (*i.e.*, when using the fully allocated or full absorption method of accounting) because he undisputedly did not use full absorption accounting. Dkt. 381-1; Dkt. 381 ¶¶ 8-12; Smith Ex. 12 at 223:19-225:16.**

### H.   Facts Relating To RBC's Corrective Advertising Claim

31.   ████████████████████████████. Dkt. 308 at 308:11-24.

**Rise Response:**   Undisputed.   Rise has been unable to perform the necessary corrective advertising.

**PepsiCo Response: The fact stated in RBC's response does not controvert PepsiCo's asserted fact. Disputed as to RBC's new asserted fact (for which RBC cites no evidence) because** ██
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████. Dkt. 382-63.

32.   In 2021 and the first quarter of 2022, RBC raised roughly █████████ in capital, and spent at least ██████████ in marketing when the following categories of expenses are

included: █████████████████████████████████████████

████████████████████████ Smith Ex. 64 (Model Tab).

**Rise Response:** Disputed. Rise does not dispute that it raised ███████████

██████████████. Rise disputes the allegation that its marketing expenditures should have

been entirely converted to counter Pepsi's infringement, as Rise did not have the necessary funds

for that endeavor. Gyesky Dec. ¶ 26.

**PepsiCo Response:** **The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact as they are non-responsive non-sequiturs.**

33.    Mr. Kamins further stated ████████████████████████

██████████████████████████████████████████████

███████████████████ Smith Ex. 19 ¶ 107.

**Rise Response:** Disputed. Rise does not dispute that Dr. Kamins made the above statement when

discussing the faulty underpinnings of the consumer survey of Mr. Ezell. Rise disputes the

applicability of this statement to "Facts Relating to [Rise's] Corrective Advertising" as Dr. Kamins

was evaluating Mr. Ezell's likelihood of confusion study, which assessed consumer recall of

Pepsi's MTN DEW RISE product, and not the harm caused to Rise's products by Pepsi's conduct.

Rise further disputes the implication that "dissipate" means that the impact of Pepsi's conduct

disappeared from the mind of consumers. Further, Rise's expert, Dr. Russell Winer, evaluated the

issue of harm to Rise caused by the ████████████████ made by Pepsi's MTN DEW RISE

product and established that those impressions caused extensive harm. Welch Ex. 50, Winer

Report at pp. 50-51.

**PepsiCo Response:** **The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact as they are non-responsive non-sequiturs. Regardless, undisputed that there were**

█████████████████ generated by PepsiCo's Mtn Dew Rise Energy, but immaterial. Disputed that those impressions caused "extensive harm" because the six surveys PepsiCo conducted both during the time both parties' products were on the market and shortly after show no likelihood of confusion, which is the basis on which RBC asserts harm. *See, e.g.*, Dkt, 387 ¶ 7 (PepsiCo offered six surveys, none of which showed a likelihood of confusion between the parties' marks). In addition, ████████████████████████████████ ████████████. *See* Dkt. 381 ¶17.

I.    **Facts About RBC's Business Harm/Lost Cost Savings Damages Claim**

*Facts About the Timing of RBC's Capital Raise and Causation of Delay*

34.    To support its damages claims for business harm and lost cost savings, RBC claims it needed ███████████████████████ Smith Ex. 12 at 62:14-63:24.

**Rise Response:** Disputed. Rise's damages claims arising from business harm and lost cost savings are premised on the general unavailability of capital caused by Pepsi's infringement. Welch Ex. 47, Reed Opening Report at p. 24-35; Gyesky Dec. ¶¶ 9-16. Rise was unable to raise necessary investment capital of ████████ in time to prevent the harm caused by Pepsi. Welch Ex. 52; Welch Ex. 19, Gyesky Tr., 287:16-288:7, 301:3-8; Gyesky Dec. ¶¶ 9-25.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact that RBC/s damages calculations are based on ████████████████████████, and are therefore non-responsive non-sequiturs. RBC's new "facts" are also controverted by its admissions herein. *See, e.g.* Dkt. 400, RBC's Resp. to 56.1 Fact Nos. 53 (undisputed that "RBC claims ███████████████████████████████████████ ████████████████████████████████████████") & 55 (undisputed that Reed testified that ████████████████████████**

███████████████████████████████████████████████████████████

████████████████ identified as "RISE 28804.")

35.    The advisor RBC ended up hiring, Arlington, pitched RBC that it could do a capital

raise ████████████████████████████████████. Smith Ex. 58 at RISE0023801.

**Rise Response:** Disputed.  Rise does not dispute that the document produced at ████████████

███████████████████████████████████████████████████████████

██████████████████████. Rise disputes the characterization of the relationship

between ████████████ as the "advisor [Rise] ended up hiring" to the extent the same implies

that ████████████ was the sum total of Rise's investment activities.  Notably, Rise's efforts

were not solely focused on the ████████████████ and were ongoing throughout Pepsi's

infringement.  *E.g.*, ████████████████████████████████████████

████████; Welch Ex. 61, RISE0023159 (same in April); Gyesky Dec. ¶¶ 8-10; Dkt. 160, 61:19-

24 (Salzinger testifying that "after this happened, there were several attempts at raising capital.

There was at least three, possible four, attempts at raising capital.")

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact as they are non-responsive non-sequiturs. Regardless, disputed (though immaterial) as**

**to RBC's new facts because they are not supported by RBC's evidence and are contrary to**

**the discovery record.  Once Arlington was hired in mid-May 2021,** ████████████████

████████████████; with Mr. Gyesky instructing potential investors that RBC would use**

████████████████████████████ (LJS Ex. 85, RISE0022360)**

**and** █████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████ (Dkt. 382-51.)   RBC's evidence does not show**

otherwise, as it only shows that █████████████████████████████████

██████████████████████████████. *See* **Dkt. 382-55 & Welch Ex.**

**61.**

     36.     RBC did not hire Arlington until mid-May 2021.  Smith Ex. 56 at RISE0022871.

**Rise Response:**  Disputed.  Rise does not dispute that the document produced at ███████████

████████████████████████████████████████████████████████████

█████████████████████████ Dkt. 382-55, but disputes the implication that Rise's

investment efforts were solely its ██████████, for the reasons discussed above in response

to alleged fact number 35.

**PepsiCo Response**: **There are no new facts asserted in RBC's response.**

     37.     RBC did not begin ███████████████████████████████

██████████████.  Smith Ex. 52 at RISE0022086 (████████████████████████

████████████████████████████████), Smith Ex. 51 at RISE0021581 (████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████); Smith

Ex. 15 ¶ 61 (█████████████████████████████████████████████████████

█████████████████████████).

**Rise Response:**  Disputed.  The timeline of Rise's capital raise is heavily disputed, and were not

solely focused on the efforts ██████████.  *See supra*, Rise response to alleged fact number 35

(discussing multiple capital raise efforts throughout the first half of 2021).

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact.  RBC's new "facts" are disputed but immaterial, for the same reasons provided above**

**in response to asserted fact 35.**

38.     The only investor who testified that he was unwilling to invest due to PepsiCo was an investor whose June 2021 investment was capped at less than ██████ and who testified that ████████████████████████████████████████████████████████████████████████ Smith Ex. 13 at 277:8-20; Smith Ex. 46; Smith Ex. 15 ¶ 56.

**Rise Response:** Disputed.  Rise does not dispute that Mr. Salzinger testified that he was unwilling to invest due to Pepsi's infringement.  Rise disputes that Mr. Salzinger's June 2021 investment was capped, as Mr. Salzinger was free to pursue additional investment.  Gyesky Dec. ¶ 9.  Rise does not dispute that Mr. Salzinger testified as recited above.  Rise disputes this fact to the extent it implies that Mr. Salzinger is the only investor Rise identified as unwilling to invest in Rise because of PepsiCo's launch of MTN DEW RISE.  ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████Welch Ex. 19, Gyesky Tr., 296:4-297:2; Gyesky Dec. ¶ 9.

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  RBC's new "facts" are disputed but immaterial.  RBC's evidence shows only that Mr. Salzinger** ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ **structures.  Dkt. 382-12 at 277:8-20.  As to** ██████ **disputed but immaterial.  The record evidence shows the opposite:** ██████ *did invest in RBC after the launch of MTN DEW RISE ENERGY.* **LJS Ex. 84, RISE0018586 at '86; Dkts. 382-52 & 382-53; Dkt. 382-46.  Immaterial because there is no indication that** ██████ **ever intended to invest what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.**

**As to** ███████████████████████████████████████████████

███ **, disputed but immaterial.  Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial.  RBC does not cite (and it did not produce) a single communication from these investors (or any other investor) indicating they were declining to invest *due to* Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-23; LJS Decl. ¶ 6).  RBC also failed to disclose these investors in its Initial Disclosures.  Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures).  And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations.  Immaterial because there is no indication that these investors ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.**

<em><u>Facts About the Purported Amount of Funds Needed and Intended Use Thereof</u></em>

39.     RBC claims it ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████   ).  Smith Ex. 12 at 84:9-20, 117:4-118:8; Smith Ex. 22 at 22-23.

**Rise Response:**  Disputed.  Rise disputes that it needed ████████████ Rise needed █████████

in investment.  Gyesky Dec., ¶ 9; Welch Ex. 52, p. 4. ████████████████████████

███████████████████████████████████████████████

██████

**PepsiCo Response:** **The facts stated in RBC's response do not controvert PepsiCo's fact that**

**RBC** ███████████████████████████████████████████ **, nor that**

RBC seeks damages based on its expert Reed's calculations, which are based on his assertion that ███████████████████████████████. **Disputed but immaterial as to RBC's new "fact" that** ███████████████ **because Mr. Reed (RBC's expert) testified that** █ ████████████████, **with more coming later, would have sufficed. Smith Ex. 12 at 63:20-24. RBC's new "facts" are also controverted by its admissions herein.** *See, e.g.* **RBC's Resp. to 56.1 Fact Nos. 53 (undisputed that "RBC claims** ██████████████████████ ████████████████████████████████████████████████ ████████████████") **& 55 (undisputed that Reed testified that** ████████████ ████████████████████████████████████████████████ ████████████████████ **identified as "RISE 28804.").**

40.     The presentation that RBC used ████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ Smith Ex. 50 at RISE0020961.

**Rise Response:** Disputed.  Rise disputes that the document excerpted at Smith Ex. 50 is "*[t]he* presentation that [Rise] used."  (emphasis added).  Rise was constantly seeking investment, including via personal conversations, power point decks, and meetings.  *E.g.,* ████████████ ████████████████████████████████████████████; Welch Ex. 61, RISE0023159 (same in April); Gyesky Dec. ¶¶ 8-10; Dkt. 160, 61:19-24 (Salzinger testifying that "after this happened, there were several attempts at raising capital.  There was at least three, possible four, attempts at raising capital.")  Furthermore, the presentation excerpted at Smith Ex. 50 was circulated via email in August 2021, months after Pepsi's infringement began, and reflects the reality of Rise's capital raise efforts in that environment.   Welch Ex. 62, RISE0020904.

Further, while Rise admits that the heading ████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████ .

**PepsiCo Response: The facts stated in RBC's response do not controvert PepsiCo's fact that**
████████████████████████████████████████████████████████████████
████████████████████████████████████ **Disputed (but immaterial) as to RBC's**
**new "facts" because RBC does not dispute that (a) this presentation was *a* presentation that**
**it used (regardless of whether it was "the" only such presentation); and (b)** ███████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████ **(LJS Ex. 85, RISE0022360) and** ████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████ **" (Dkt. 382-**
**51.)  RBC's evidence does not show otherwise, as it shows only that there were two occasions**
**(both *before* RBC hired** ████████████ **in which RBC communicated with investors directly in**
**2021.  Disputed but immaterial that** ████████████████████████████████████████
████████████████████████████████████████████

      41.     Twenty percent of $15 million is $3 million.

**Rise Response:**  Undisputed.

      42.     Twenty percent of $25 million is $5 million.

**Rise Response:**  Undisputed.

43.    RBC █████████████████████████. Smith Ex. 53 at RISE0022601;

Smith Ex. 54 at RISE0022604 (███████████████████████████████

███████████████).

**Rise Response:** Disputed ████████████████████████████████████

█████████████████████████████████████████████████████████

Dkt. 382-53, Gyesky Dec. ¶ 11.

**PepsiCo Response**: **The fact stated in RBC's response does not controvert PepsiCo's fact as
it is a non-responsive non-sequitur.  Regardless, disputed but immaterial that** ████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████.  **The fact is also unsupported by any cognizable evidence, as the**

**cited statements in Mr. Gyesky's declaration are too conclusory and speculative to provide**

**support.  Dkt. 406.  Mr. Gyesky's declaration is the subject of PepsiCo's motion to strike.**

*Facts About RBC's Inventory Levels and Sufficiency Thereof*

44.    RBC's expert testified ████████████████████████████████

█████████████████████████████████████████████████████████

███████████████. Smith Ex. 12 at 121:19-122:23.

**Rise Response:**  Undisputed.  Rise does not dispute that Mr. Reed testified as written.

45.    RBC's document shows that ███████████████████████████████

█████████████████████████████████████████████████████████

██████████████.  Smith Ex. 63 at Model tab, line 234.

**Rise Response:**  Undisputed.  Rise does not dispute that its ███████████████████

████████████████████.  This inventory was not considered available for expansion

opportunities as it was anticipated that it would have been sold through existing retail channels. Gyesky Dec. ¶¶ 23-24.

**PepsiCo Response**: **The fact stated in RBC's response does not controvert PepsiCo's asserted fact as it is a non-responsive non-sequitur.  Disputed as to the last sentence of RBC's Response because it contradicts Mr. Reed's testimony that RBC** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**(Dkt. 382-11 at 121:19-122:23), and RBC's own admission in response to No. 44.  Moreover, this statement is supported only by Mr. Gyesky's sham declaration that is the subject of PepsiCo's motion to strike.  In any event, the facts stated in RBC's response are immaterial to resolution of PepsiCo's motion.**

46.     The difference between 128.6 and 58.8 is 69.8.

**Rise Response:** Undisputed.

47.     69.8 days is in between two and three months.

**Rise Response:** Undisputed.

48.     An increase of 69.8 days' worth of inventory is an increase of between two and three months' worth of inventory.

**Rise Response:** Undisputed.

49.     RBC's document also shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Smith Ex. 63 at Model tab, line 234.

**Rise Response:** Undisputed.  Rise does not dispute that its finished goods inventory increased between June 2021 and December 2021.  This inventory was not considered available for

expansion opportunities as it was anticipated that it would have been sold through existing retail channels.  Gyesky Dec. ¶¶ 23-24

**PepsiCo Response**: The fact stated in RBC's response does not controvert PepsiCo's asserted fact as it is a non-responsive non-sequitur.  Regardless, disputed but immaterial as to the last sentence for the reasons discussed in PepsiCo's response regarding PepsiCo's fact No. 45, above.

50.     The difference between 353.2 and 128.6 is 224.6.

**Rise Response:**  Undisputed.

51.     224.6 days is over 7 months (whether there are 30 or 31 days in those months).

**Rise Response:** Undisputed.

52.     An increase of 224.6 days' worth of inventory is an increase of more than two to three months' worth of inventory.

**Rise Response:**  Undisputed.

*Facts About RBC's Capital Needs in June 2021 and Basis for Assertions*

53.     RBC claims ███████████████████████████████████████████████
████████████████████████████████████████████████████████ Smith Ex. 12 at 262:7-263:25.

**Rise Response:**  Undisputed.

54.     RBC has not produced any evidence showing that it needed ████████████████ in capital for use in June 2021 to increase inventory and/or switch production of all its canned coffee products to the U.S. Torres Decl. ¶ 10; Smith Ex. 50 at RISE0020961 (████████████
████████████████████████████████████████████████ ).

**Rise Response:**  Disputed.  Mr. Reed's report discussed the needed capital.  Welch Ex. 47, p. 2225.  Further, Rise's CEO, Mr. Gyesky, will testify regarding the need for capital.  Gyesky Dec.

¶¶ 8–25.  Mr. Gyesky previously testified regarding Rise's need for capital, and the disruption to Rise's normal capital-raise efforts caused by Pepsi's conduct.  Welch Ex. 19, Gyesky Tr., 287:16-288:7 ("Q.... can you explain to me how, if at all, your sales have been negatively impacted by the presence of MTN DEW RISE [] on the market? A.  That was one example.  An additional – in addition, it's been – you know, our normal capital-raising process has been disrupted and so we were unable to raise capital throughout 2021.  That is what fuels our growth, it fuels our inventory, it fuels our marketing, it fuels our sales team, and so the inability to raise capital impacted the business – entirely across the business, but you know, a very clear connection to things like inventory and our non-ability to sell because we didn't have product.") *id.*, 301:3-8 ("We continued to try and raise capital throughout the rest of the summer and fall [of 2021] and we weren't able to raise any additional capital until after the hearing from the courts, which I believe was in late October, early November.").  Rise's [sic] identified in response to interrogatory that "Rise was unable to raise necessary investment capital ████████████.  The inability to raise necessary investment capital had negative impacts on Rise's ability to operate, its growth and valuation, its ability to complete orders and operate."  Welch Ex. 52, Rise Response to Rog. No. 25.

**PepsiCo Response:  The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, disputed, but immaterial that Mr. Reed's report is "evidence" or that these sources state that RBC ███████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████  Moreover, Mr. Gyesky's declaration is subject to PepsiCo's motion to strike.**

55.   Reed testified that ███████████████████████████████████ ███████████████████████████████████████████████████████████████

██████ identified as "RISE 28804."  Smith Ex. 12 at 63:15-65:22.

**Rise Response:**  Undisputed the Mr. Reed so testified.

56.     When asked how much more RBC needed beyond ████████, Reed testified that ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Smith Ex. 12 at 263:4-12.

**Rise Response:**  Rise does not dispute that Mr. Reed so testified, but disputes the allegation that Rise did not disclose the ████████ figure during discovery.  Welch Ex. 52, Rise Response to Rog. No. 25.

**PepsiCo Response**:  **The fact asserted in RBC's response does not controvert PepsiCo's asserted fact.**

57.     Apart from Reed's testimony, there is no deposition testimony (including from Gyesky) indicating that RBC needed ████████ in June 2021.  Torres Decl. ¶ 10.

**Rise Response:**  Disputed.  Rise's CEO, Mr. Gyesky, will testify regarding the need for capital. Gyesky Dec. ¶¶ 8–25.  Mr. Gyesky previously testified regarding Rise's need for capital, and the disruption to Rise's normal capital-raise efforts caused by Pepsi's conduct.  Welch Ex. 19, Gyesky Tr., 287:16-288:7 301:3-8.  Rise's [sic] identified in response to interrogatory that "Rise was unable to raise necessary investment capital ████████.  The inability to raise necessary investment capital had negative impacts on Rise's ability to operate, its growth and valuation, its ability to complete orders and operate."  Welch Ex. 52, Rise Response to Rog. No. 25.

**PepsiCo Response**:  **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Disputed but immaterial as to RBC's assertions concerning Mr. Gyesky's declaration, which is the subject of PepsiCo's motion to strike.**

58.     The planning document Reed identified, with Bates number ending in '28804, shows that ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Smith Ex. 12 at 201:15-18, 204:7-24.

**Rise Response:**   Disputed.   PepsiCo misinterprets RISE0028804, which states that Rise's anticipated capital burn on ongoing expenses was ██████████████. Gyesky Dec. ¶¶ 26–27. Rise's anticipated capital burn on ongoing expenses was ████████████. Gyesky Dec. ¶ 27.  Rise intended to invest the capital it sought in a variety of ways.  Gyesky Dec. ¶¶ 13–16, 26–27.  Rise's [sic] identified in response to interrogatory that "Rise was unable to raise necessary investment capital ██████████.  The inability to raise necessary investment capital had negative impacts on Rise's ability to operate, its growth and valuation, its ability to complete orders and operate."  Welch Ex. 52, Rise Response to Rog. No. 25.

**PepsiCo Response:  The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  In this context of RBC's expert asserting that RBC needed ██████████████████████, there is no material difference between needing ██████████████████ and needing ████████████████.**

59.     The only evidence in the record shows that in June 2021, ██████████████ ████████████████████████████████████████████████████Smith Ex. 50 at RISE0020961 (██████████████████████████████████████████████ ██████████████████████████████████████████"); Smith Ex. 53 at RISE0022601 (████████████████████████████████████████████████ ████████).

**Rise Response:**  Disputed.  While Rise admits that the heading ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████; Gyesky Dec. ¶ 12.  Rise

identified in response to interrogatory [sic] that "Rise was unable to raise necessary investment

capital ███████████.  The inability to raise necessary investment capital had negative impacts on

Rise's ability to operate, its growth and valuation, its ability to complete orders and operate."

Welch Ex. 52, Rise Response to Rog. No. 25.  Rise further disputes that, upon receipt of the ██

███████████, it was able to allocate the entirety of that note to the increased inventory

projects, without allocating any of the funds to existing operations, and other projects.  Gyesky

Dec. ¶¶ 14–16, 27; *see also*, Welch Ex. 47, Reed Opening Report pp. 22-23 (discussing that the

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████" and how capital

would have █████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████).

**PepsiCo Response:**  **The facts stated in RBC's response do not controvert PepsiCo's asserted**

**fact as they are non-responsive non-sequiturs.  Regardless, RBC's new "facts" are disputed**

**but immaterial as they are not supported by either the evidence in the record that RBC cites**

**or Mr. Gyesky's sham declaration, which is the subject of PepsiCo's motion to strike.**

*Facts About the Existence of the Alleged Domestic Copacking Opportunities, Timing, and Terms*

60.    RBC has produced no draft or final contracts, offers, term sheets, or negotiation correspondence with domestic copacker ████ or the ███ Copacker (or any copacker, for that matter) that reflected an opportunity whereby RBC would be able to move production of all of its canned coffee products to the U.S. for a ████████████ Torres Decl. ¶5 (RBC has not produced any draft or final contracts, offers, term sheets, or negotiation correspondence with domestic copacker ████ or the domestic ████ copacker or any such documents with any other copacker reflecting an opportunity to move production of all RBC's canned coffee products to the U.S. for a ████████); Smith Ex. 12 at 103:19-107:20, 111:4-116:4-7, 203:2-204:24 (████████████████).

**Rise Response:**  Disputed.  Rise identified in response to interrogatory that "Rise was unable to raise necessary investment capital of ████████.  The inability to raise necessary investment capital had negative impacts on Rise's ability to operate, its growth and valuation, its ability to complete orders and operate."  Welch Ex. 52, Rise Response to Rog. No. 25.  Mr. Gyesky will testify as to the specifics of these lost opportunities.  Gyesky Dec. ¶¶ 13–16.

**PepsiCo Response:  The fact stated in RBC's response does not controvert PepsiCo's asserted fact as it is a non-responsive non-sequitur.  Disputed but immaterial as to the last sentence regarding Mr. Gyesky as his sham declaration still does not include the "specifics of these lost opportunities" and is subject to PepsiCo's motion to strike.**

61.    To the extent RBC had any such opportunities with ████ or the ███ copacker, RBC's expert testified that ████████████████████████████ ████████████████████████.  Smith Ex. 12 at 116:8-16, 268:9-14 (████████ ████████████████████████████).

**Rise Response:**  Disputed.  While the opportunities remained available, they did not remain available at the same pricing.  Furthermore, Rise was unable to convert its investment into capturing those opportunities due to its extremely late closing brought on by Pepsi's infringement, unfair competition, and unjust enrichment.  Gyesky Dec. ¶¶ 13–25.

**PepsiCo Response:  Disputed as to RBC's new asserted facts because there is no evidence that the alleged opportunities "did not remain available at the same pricing".  In fact, Mr. Reed confirmed that the ██████ opportunity was ████████████████████ ████████████████████████████████████████████.  *See* Dkt 382-11 at 267:7-268:14.  The last sentence is also unsupported by any cognizable evidence, as the cited statements in Mr. Gyesky's declaration are too conclusory and speculative to provide support.  They are also subject to PepsiCo's motion to strike.**

62.   ████████████████████████████████████ ████████████████████████████████████ ████████████████████████. Smith Ex. 48 at RISE0019952; Smith Ex. 49 at RISE0019953 (████████████████████████████████████ ████████████████████████); Smith Ex. 15 at Ex. V.C.1 (████████████████ ████████████████████████████████); Dkt. 149 (November 4, 2021 order granting preliminary injunction).

**Rise Response:**  Disputed.  Rise does not dispute that December 2021 is after the preliminary injunction in this case.  Rise does not dispute that it completed a ████████████████████ ████████████ received between November 2021 and January 2022.  Gyesky Dec. ¶ 20.  Rise disputes the implication that it should have been able to convert its received investment into capturing manufacturing opportunities in a few short weeks.  Gyesky Dec. ¶ 20; *see also* Welch

Ex. 47, Reed Opening Report, pp. 22-23 (discussing that the ███████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████)" and how capital would have "████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████.").

**PepsiCo Response**: **The facts stated in RBC's response do not controvert PepsiCo's asserted fact as they are non-responsive non-sequiturs.  Regardless, disputed as to RBC's new asserted facts, as the cited portions of Mr. Gyesky's Declaration and Mr. Reed's Opening Report do not address** ████████████████████████████████

██████████████████████████████ **or whether it could have begun doing so as it received the investments, but immaterial to the resolution of PepsiCo's motion for summary judgment.**

63.    RBC's documents show ██████████████████████████████

██████  Smith Ex. 12 at 201:15-18, 204:7-24.

**Rise Response:**  Disputed.  Mr. Gyesky will testify that domestic production would have yielded

a ████████████████.  Gyesky Dec. ¶ 25.

**PepsiCo Response**: **The facts stated in RBC's response (i.e., what Mr. Gyesky will testify) do not controvert PepsiCo's asserted fact (i.e., that** ████████████████████████

██████████████████████████ **) and is thus a non-responsive non-sequitur.  Regardless, disputed as to RBC's new fact because Mr. Gyesky's conclusory statement in his sham declaration does not show** *how* **he calculated this purported** ████

██████

### *Facts About RBC's Claim to Disgorge Starbucks Nitro "Enhanced" Profits*

64.    Starbucks Nitro has never borne the MTN DEW RISE ENERGY mark or used the word "rise." Dkt. 257 ¶ 10.

**Rise Response:**  Undisputed.

## II. PEPSICO'S RESPONSES TO RBC'S RULE 56.1 STATEMENT OF ADDITIONAL FACTS

1.      Rise holds all right, title and interest in Federal Trademark Registration No. 5,168,377 for the word mark Rise Brewing Co. Dkt. 80-1 pp. 1-8.

**PepsiCo Response**: **Undisputed.**

2.      Federal Trademark Registration No. 5,168,377 for the word mark Rise Brewing Co. was declared incontestable under § 15 of the Trademark Act, 15 U.S.C. §1065 on September 21, 2022. Welch Ex. 6.

**PepsiCo Response**: **Undisputed.**

3.      Rise holds all right, title and interest in Federal Trademark Registration No. 5,333,635 for the design mark RISE BREWING CO. depicted below. Dkt. 80-1 pp. 9-15.



**PepsiCo Response**: **Undisputed.**

4.      Rise holds all right, title, and interest in Federal Trademark Registration No. 6,140,084 for the design mark RISE NITRO BREWING CO. depicted below. Dkt. 80-1, pp. 16-20.



**PepsiCo Response: Undisputed.**

5.       Rise holds all right, title, and interest in Federal Trademark Registration No. 5,188,284, for the word mark Rise Nitro. Dkt. 80-1, pp. 21-27.

**PepsiCo Response: Undisputed.**

6.       Rise holds all right, title, and interest in Federal Trademark Registration No. 4,396,118 for the word mark Rise & Grind. Dkt. 80-1, pp. 28-34.

**PepsiCo Response: Undisputed.**

7.       Rise holds all right, title, and interest in Federal Trademark Registration No. 6,007,308 for the word mark RISE MAKES YOU SHINE. Dkt. 80-1, pp. 35-38.

**PepsiCo Response: Undisputed.**

8.       Rise holds all right, title, and interest in Federal Trademark Registration No. 3,253,782 for the word mark RISE-N-SHINE BLEND. Dk. 80-1, pp. 39-42.

**PepsiCo Response: Undisputed.**

9.       Rise used the standalone mark RISE for itself as a company and in connection with its canned caffeinated beverages. Welch Ex. 4. (referring to itself as RISE in a presentation to Kroger); Welch Ex. 5 at ███████████████████████████████████ in presentation to investors); Dkt. 30, 14-18 (use of the standalone RISE Mark on Rise's kegs of nitro-brewed coffee and website).

**PepsiCo Response: Disputed, but immaterial.  RBC does not own a standalone "RISE" mark. RBC has no registration for the word "rise" alone (Dkt. 80 at ¶ 59), the cited examples show use of the word "Rise" (at best) as a shortform for its company name, not consistent use as a mark. And, as reflected in the cited exhibits, RBC's coffee products are not branded with a standalone "rise" mark.  Dkt. 404-04; Dkt. 404-05; Dkt. 30, ¶ 14; *id.* ¶¶ 15-16; *id.* ¶ 17; *id.* ¶ 18; *see also* LJS Ex. 83 (ESV-0000841 at 853) (** ████████████████████ **████████████████████████████████████ ███████ **).**

10.    Pepsi referred to Plaintiff Rise and its products ████████████████ . Welch Ex. 2; Welch Ex. 1 at PEPSICO0011818, 820; Welch Ex. 2.

**PepsiCo Response: Disputed, but immaterial.  The cited documents are internal emails that are not using "marks."  For example, the emails also refer to Starbucks as SBUX.**

11.    Rise distributes its products nationally, both online and in grocery and other stores across the United States. Dkt. 30 ¶ 23.

**PepsiCo Response: Undisputed.**

12.    From 2015 through June 2021, Rise spent approximately 17.5 million dollars promoting its coffee and tea-based caffeinated drinks, all of which involved some combination of Rise's RISE Marks. Dkt. 30, ¶ 19.

**PepsiCo Response: Undisputed.**

13.    From July 2021 to March 2022 Rise spent at least ████████████ marketing and promoting its products under its RISE Marks when the following relevant categories of expenses are included: ██████████████████████████ ████████████████████████████████████████

 Welch Ex. 56, p. 2-4; Gyesky Dec. ¶ 5.

Rise also spent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Gyesky Dec. ¶ 5.

**PepsiCo Response**: **Undisputed.**

14.     Rise promotes its products through placement in the locker rooms of the New York Yankees, the New York Mets, New York Giants, and various mixed martial arts facilities. Dkt. 30, ¶ 21.

**PepsiCo Response**: **Undisputed.**

15.     Rise has partnered with the USA Surf Team, USA Climbing Team, US Ski and Snowboard Team, and sponsored FOX Sports' 2020 college football season. Dkt. 30, ¶ 21.

**PepsiCo Response**: **Undisputed.**

16.     In 2017 Rise won Best New Product from BevNet for its nitro cold brew coffee. Dkt. 30 ¶ 22.

**PepsiCo Response**: **Undisputed.**

17.     In 2018 Rise won the Beverage Innovation of the Year award from Beverage Industry magazine. Dkt. 30 ¶ 22.

**PepsiCo Response**: **Undisputed.**

18.     In 2018 Rise won the NEXT [sic] Best New Organic Beverage Award, administered by New Hope Network. Dkt. 30 ¶ 22.

**PepsiCo Response**: **Undisputed.**

19.    In 2019 Rise won People Magazine's award for Best Canned Coffee for its canned nitro cold brew product. Dkt. 30 ¶ 22.

**PepsiCo Response**: **Undisputed.**

20.    On June 8, 2022, Rise won the 2022 Mindful Awards Program award for Beverage, Coffee, Cold Brew Product of the Year. Gyesky Dec. ¶ 29.

**PepsiCo Response**: **Undisputed.**

21.    Ryan Collis, GM Pepsi-Starbucks NACP was unable to name any products other than Plaintiff and Defendant using the term "rise." Welch Ex. 20, Collis Tr. 139:12–17. (Q: As you sit here today, can you name any product whatsoever that uses the term "Rise" in the name, other than [plaintiff and defendant]? A. *No as I sit here today, no, not off the top of my head*.) (emphasis added).

**PepsiCo Response**: **Undisputed.**

22.    Matthieu Aquino, VP Global Beverages Design at Pepsi was not personally aware of any other morning drinks using the term "rise" in their name. Welch Ex. 21, Aquino Tr. 63:18–25. (Q. [W]ere you personally aware of any other morning drinks that used the term "RISE" in their name? A. *No*. Q. Were you aware of any coffee drinks that used the word "RISE" in their name? A. *No*.) (emphasis added).

**PepsiCo Response**: **Undisputed, with the clarification that RBC's quotation is incomplete, and immaterial.  Mr. Aquino was only asked about his knowledge at one point in time (June of 2020).  Welch Ex. 21, Aquino Tr. 63:18-25.**

23.    Wing-Yan Choi, VP Corporate M&A at Pepsi was unable to recall any beverages using the word "rise." Welch Ex. 22, Choi Tr. 119:15-19 (Q… we talked about earlier you didn't

know any beverages that have the word "rise" in it; is that right? A. I don't – I don't recall right now. I don't know any as of right now).

**PepsiCo Response**: **Undisputed.**

24.     Bryan Welsh, former GM Pepsi-Starbucks NACP could not recall any brands in food or beverage that use the word "rise" in their name other than Plaintiff. Welch Ex. 23, Welch Tr. 88:1-88:11. (Q… Other than [Plaintiff] can you name any other product at all that uses the name RISE in any portion of the name? A. I don't recall any brands in food or beverage that use the word "rise" in their name.).

**PepsiCo Response**: **Undisputed.**

25.     Rebecca Messina, Pepsi's "beverage industry" expert, was unaware, prior to her work on this matter, of any beverage products named "Rise" that were on the market. Welch Ex. 24, Messina Tr. 18:24–19:10. (Q… [A]re you aware prior to your work on this case any beverage products named Rise that were on the market? A ***Sitting here today, I cannot recall one prior to this case that comes to mind***.) (emphasis added).

**PepsiCo Response**: **Undisputed.**

26.     Thomas Britven, Pepsi's damages expert could not recall seeing any beverage product using the word "Rise" in its name. Welch Ex. 25, Britven Tr. 17:10–13. (Q. Have you ever seen any beverage product on the shelf in any store that has the word "Rise" in the name? A. I don't know.).

**PepsiCo Response**: **Undisputed.**

27.     Matthew Ezell, one of Pepsi's Surveyors was not personally [sic] of drinks other than those of Plaintiff and Defendant including the word Rise. Welch Ex. 26, Ezell Tr. 11:20-12:3 (Q… Other than [Plaintiff and Defendant] are you personally aware of any other drinks on the

market with a name that includes the term "Rise"? A. I don't believe I'm personally aware of other drinks that include the word "Rise.").

**PepsiCo Response**: Undisputed.

28.  Edward Fox, one of Pepsi's experts has never seen a ready-to-drink coffee product other than Plaintiff that uses the word "Rise." Welch Ex. 27, Fox Tr. 131:13-18. (Q.... [Y]ou've never see a ready-to-drink coffee product other than [Plaintiff] that uses the word "Rise," have you? A. Personally I'm not a coffee drinker and I don't look. So no, I haven't.).

**PepsiCo Response**: Undisputed.

29.  Wendy Wood, one of Pepsi's Surveyors could not think of any products other than Plaintiff and Defendant in the ready-to-drink coffee or energy space that uses the word "rise." Welch Ex. 28, Wood Tr. 134:1-6. (Q. Sitting here today, can you think of any other product in the ready-to-drink coffee or energy drink space that incorporates the word "rise"? A. I do not know of any personally, no, at this point.)

**PepsiCo Response**: Undisputed.

30.  In September of 2017, Rise CEO Grant Gyesky exchanged emails with Thomas Gros of the PepsiCo Innovation team, and, along with other Rise team members, met with Pepsi team members on September 20, 2017 to discuss Rise's business model, corporate history, and drinks, including nitro beverages. Dkt 30, ¶ 24, Dkt. 29-1.

**PepsiCo Response**: Undisputed.

31.  On March 6 2018, ███████████████████████████ ████████████████████████████████████████ Welch Ex. 44.

**PepsiCo Response**: Undisputed.

32.     On March 6, 2018, ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Welch Ex. 2.

**PepsiCo Response: Undisputed.**

33.     Bryan Welsh, then GM of the Pepsico-Starbucks North American Coffee

Partnership ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████ Welch Ex. 1 at PEPSICO0011819-920.

**PepsiCo Response: Undisputed.**

34.     In a later email on March 6, 2018, ██████████████████████████

█████████████████████████████████████████████████████ Welch Ex. 1

at PEPSICO0011818.

**PepsiCo Response: Undisputed, except a more complete excerpt of the email in Welch Ex. 1**

**reads:** ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████. **In any event, immaterial to resolution of PepsiCo's motion.**

35.     On May 10, 2018, Rise hosted a team from Pepsi to discuss the RISE story and new

innovations and thoughts on the nitro beverage movement, and the specific caffeine levels of

Rise's products. Dkt. 33, ¶¶ 4-5, Dkt. 33-1 at 2-7.

**PepsiCo Response: Disputed, but immaterial.  After a diligent investigation, PepsiCo has**

**been unable to identify any employee that may have met with anyone associated with RBC**

**on or around this time.  Furthermore, RBC has not identified any PepsiCo employee by name**

nor produced documents reflecting the names of any PepsiCo employees in attendance at this May 10, 2018 visit.  Emails produced by RBC and by Butter and Egg Road (a third-party) indicate that Ivy Ackerman of Butter and Egg Road arranged the introduction as part of a larger tour coordinated by Ms. Ackerman of different locations, including a café where RBC's coffee was available on tap, and that Ms. Ackerman paid RBC $250 to attend, *see* Dkt. 33-1 at 2-3 and LJS Ex. 86, BUTTERANDEGGROAD0001, but neither RBC's documents nor documents produced by Butter and Egg Road reflect the names of any PepsiCo employees in attendance or who were invited to attend.  *See* LJS Ex. 89, PepsiCo's Supp. Resp. to RBCs ROG No. 2 at 3.  In any event, immaterial to resolution of PepsiCo's motion.



36.   On June 4, 2018, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [sic]. Welch Ex. 63.▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**PepsiCo Response**: **Undisputed.**

37.   On June 6, 2018, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Welch

Ex. 45.

PepsiCo Response: **Undisputed.**

38.   On January 24, 2019, Rise hosted a team from Pepsi to discuss the RISE story and the emerging Nitro movement. Dkt. 33, ¶¶ 7-8, Dkt. 33-1 at 8-16.

**PepsiCo Response**: **Undisputed.**

39.     On April 30, 2019, Rise hosted a team described as the "PepsiCo President and C-suite group" where Rise discussed its corporate history and mark selection process. Dkt. 33, ¶¶ 9-11, Dkt. 33-4, 33-1 at 17-19.

**PepsiCo Response: Undisputed with the clarifications that: (1) the author of the cited email, a third party, Ivy Ackerman (of Butter and Egg Road), described the group in advance to RBC as the "PepsiCo President and C-Suite group" (Dkt. 33-1 at 21-22) but the group that actually engaged in the walking tour were PepsiCo Foodservice employees, LJS Ex. 89, PepsiCo's Supp. Resp. to RBCs ROG No. 2 at 4-5, (2) the PepsiCo Foodservice employees engaged in a walking tour of different food service concepts as part of a broader off-site meeting of PepsiCo Foodservice employees; the PepsiCo Foodservice employees split into two groups for the tour, and the second group visited the Phliud Café where RBC was on tap, among other stops, LJS Ex. 89, PepsiCo's Supp. Resp. to RBCs ROG No. 2 at 4-5. RBC has not identified any PepsiCo employee by name nor produced documents reflecting the names of any PepsiCo employees in attendance at this tour, and third party Butter and Egg Road did not produce any documents reflecting the names of any PepsiCo employees in attendance or who were invited to attend.  LJS Ex. 89, PepsiCo's Supp. Resp. to RBCs ROG No. 2 at 4-5.  In any event, immaterial to resolution of PepsiCo's motion.**

40.     On August 6, 2019, Rise founder Jarrett McGovern met Wing-Yan Choi, who confirmed that Rise was on Pepsi's radar and that Pepsi was "gearing up to make moves in the Nitro space." Mr. McGovern exchanged emails after the introduction through September 10, 2019. Dkt. 33, ¶¶ 12-13, Dkt. 33-1 at 30-34.

**PepsiCo Response: Undisputed.**

41.    Pepsi viewed ███████████████████████████████████

███████████████████████████████████. Welch Ex. 46.

**PepsiCo Response: Disputed, but immaterial. The document concerns only the** ████████

████████████████████████████████████. **Welch Ex. 46.**

**(LJS Ex. 76, Collis Tr. at 57:18-58:4, 58:12-58:25). There is no evidence that Dkt. 404-46 is**

**anything other than a North American Coffee Partnership document. *See also* LJS Ex. 88**

**(PEPSICO0018693, Cover slide of slide deck in Dkt. 404-46); LJS Ex. 87 (PEPSICO0018692,**

**(parent email to presentation). Moreover, Ryan Collis, VP and General Manager for the**

**PepsiCo-Starbucks North American Coffee Partnership testified that** ████████████████

████████████████████████ **(LJS Ex. 76, Collis Tr. at 61:22-62:4). Immaterial**

**because Starbucks Nitro is not accused by RBC of infringement. Dkt. 80.**

42.    In June 2020, ████████████████████████████████████

████. Welch Ex. 7.

**PepsiCo Response: Undisputed.**

43.    In July 2020, Pepsi's Lead Designer on the project that ultimately launched as MTN

DEW RISE Carl Gerhards, ████████████████████████████████████

████████████████████████████████████████████████

████ Welch Ex. 8, Gerhards Tr. 4:25-44:9, 73:3-19, 90:20-91:19; Welch Ex. 3.

**PepsiCo Response: Undisputed (but immaterial) that Carl Gerhards was the senior design**

**director for PepsiCo Energy and sent the text message excerpted above about** ████████

████████████. **Welch Ex. 3. Otherwise disputed (but nonetheless immaterial) because**

**RBC's stated fact misrepresents record evidence. Mr. Gerhards did not** ██████████████

████████████████████████████████████████████████

██████████████   **Welch Ex. 8, Gerhards Tr. 73:3-12.  Mr. Gerhards testified that he used**

**the** ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ **), and that** ██████████

██████████████████████████████████████████████████████████████

██████████ **LJS Ex. 77, Gerhards Tr 78:12-21; Welch Ex. 8, Gerhards Tr. 95:7-96:5, LJS**

**Ex. 77, 223:6-13;** *see, e.g.*, **Dkt. 189-05 at '887, '891, '896, '898; Dkt. 104 ¶ 7.**[6]

44.     Rise sent Pepsi a cease-and-desist letter regarding the forthcoming MTN DEW

RISE product in January 2021. Dkt. 30, ¶ 32.

**PepsiCo Response: Undisputed.**

45.     Pepsi launched MTN DEW RISE in or around March, 2021. Dkt. 30, ¶ 34.

**PepsiCo Response: Undisputed.**

46.     On March 3, 2021, Rise employee Rachel Ratliff encountered managers at a

Midwest grocery store who were confused upon seeing a request for a RISE promotional display.

Dkt. 34, ¶¶ 1, 7–9.

**PepsiCo Response: Disputed, but immaterial.  Managers at the store did not indicate they**

**were confused; Ms. Ratliff's declaration indicates that they "seemed" confused, and the**

**Mariano's document lists "Rise Energy Singles" for the promotional display, not "Rise".**

**Dkt. 34 at ¶¶ 7-9.**

47.     On March 9, 2021, Rise founder Jarrett McGovern got a text message from a friend

who incorrectly thought Rise had partnered with Pepsi. Welch Ex. 10.

---

[6] RBC incorrectly refers to PepsiCo's MTN DEW RISE ENERGY product as "MTN DEW RISE" throughout its Rule
56.1 statements.

**PepsiCo Response**: **Disputed, but immaterial.  Welch Ex. 10 (Dkt. 404-10) includes a text message** ███████████████████████████████████████████████████████ **which indicates that he knew the source, not that he believed the parties had a partnership.**

48.     On March 18, 2021, Rise received a message through its online contact form asking ████████████████████████████████████████████ Welch Ex. 11.

**PepsiCo Response**: **Undisputed.**

49.     On March 25, 2021, Rise employee Corey Guidi encountered mis-stocked MTN DEW RISE product in the area designated for Rise's beverages in California. Dkt. 28, ¶¶ 1, 5–6.

**PepsiCo Response**: **Undisputed except that the product was not "mis-stocked"; Mr. Guidi's declaration states that the store manager on duty "had notified beverage representatives that day that they could stock their products on the empty shelves to fill the space, rather than in their designated product areas."  Dkt. 28 ¶ 6.  In any event, immaterial to resolution of PepsiCo's motion.**

50.     On April 6, 2021, an industry contact emailed Rise CEO Grant Gyesky asking if Rise and Pepsi had "formed a partnership" to launch MTN DEW RISE. Welch Ex. 12.

**PepsiCo Response**: **Undisputed.**

51.     On April 16, 2021, an industry contact emailed Rise employee Melissa Kalimov asking "[i]s this your product" and attaching a photo of Pepsi's product. Welch Ex. 13.

**PepsiCo Response**: **Undisputed.**

52.     On April 30, 2021, an industry contact emailed Rise employee Melissa Kalimov that a MTN DEW RISE display was "super confusing. I see coffee on here and Rise. Is this new?" Dkt. 31-1.

**PepsiCo Response**: **Undisputed.**

53.     On May 6, 2021, ███████████████████████████████████████████████
███████████████████████████████████████ Welch Ex. 14.

**PepsiCo Response: Undisputed.**

54.     Around May 19, 2021, a Rise investor received a text from a friend regarding a possible affiliation between Pepsi and Rise based on the new "lebron commercial for a rise energy drink." Welch Ex. 15.

**PepsiCo Response: Undisputed, with the clarification that the full text message in Welch Ex. 15 (Dkt. 404-15) reads** ████████████████████████████████████████████████
██████████████████████ **In any event, immaterial to resolution of PepsiCo's motion.**

55.     On May 20, 2021, Rise employee Nia Kaye encountered a retail employee who was confused by her reference to "RISE" (Dkt. 32, ¶¶ 1, 3) despite the fact that she usually used the mark RISE to refer to Rise's products, and wears branded Rise shirts when visiting stores. *Id.*, Welch Ex. 16, Kaye Tr. 89:3-18.

**PepsiCo Response: Disputed but immaterial.  In Ms. Kaye's Declaration, she states that she "asked the manager on duty to check if there was any more RISE in the back room to put out as stock.  His immediate reaction was 'Mountain Dew RISE?'  [She] replied to him with 'No, the coffee' and held up a can."  Dkt. 32, ¶ 3. Ms. Kaye testified at her deposition that the shirts she wore included the entire RBC company name/trademark, not the word "rise" standing alone.  LJS Ex. 78, Kaye Dep. Tr. 89:7-90:4.**

56.     On August 11, 2021, a Rise contractor told a Rise employees that "[t]here is definitely confusion when [he] mention[s] 'RISE'" during business pitches. Welch Ex. 17.

**PepsiCo Response: Undisputed.**

57.     On August 23, Alex Tanev saw an ad on Instagram for MTN DEW RISE and incorrectly assumed that there was an association between Rise and Pepsi. Tanev Dec., ¶¶ 1, 3-4; Welch Ex. 18.

**PepsiCo Response**: **Undisputed.**

58.     In August of 2021, Sarah Pelfrey, who was associated with an event Rise wished to sponsor, was confused by the two products. Dkt. 113, ¶¶ 1, 5-6.

**PepsiCo Response**: **Disputed.  There is no evidence that Ms. Pelfrey had ever seen an RBC product when she saw MTN DEW RISE ENERGY at the store.  Dkt. 113, ¶¶ 5-6; Dkt. 160 at 81:13-82:16, 88:20-89:22.  In any event, immaterial to resolution of PepsiCo's motion.**

59.     In August of 2021, a Cincinnati Kroger employee told Rise employee Allison Schmidt that he wrongly thought MTN DEW RISE and Rise's products were connected. Dkt. 113, ¶¶ 1, 7-9.

**PepsiCo Response**: **Undisputed.**

60.     Another Kroger Store manager told Rise employee Allison Schmidt that he incorrectly thought that the two products were owned by the same company, resulting in loss of promotional display opportunities for Rise. Dkt. 113, ¶¶ 1, 10-11.

**PepsiCo Response**: **Undisputed as to what a Kroger manager said to Ms. Schmidt but disputed regarding RBC's assertion of the "loss of promotional display opportunities for Rise," which is not referenced in the cited exhibit.   In any event, immaterial to resolution of PepsiCo's motion.**

61.     A grocery manager mistakenly placed an order for MTN DEW RISE when a Rise employee asked him to place an order for "Rise," resulting in empty shelf space and a loss of potential sales.  Dkt. 160, 78:3-79:24.

**PepsiCo Response: Disputed but immaterial.  The cited testimony does not show that any grocery manager made mistaken purchasing decisions based on requests from an RBC employee, but rather, at most, gave the employee information about MTN DEW RISE ENERGY in response to her inquiry about "Rise."**

62.     A customer accidentally purchased Pepsi's product when intending to purchase Rise's. Welch Ex. 19, Gyesky Depo. Tr. at 284:4-21.

**PepsiCo Response: Undisputed (though PepsiCo notes that the "customer" mentioned is the mother-in-law of a former RBC employee (Dkt. 308 at 284:5-15)) and immaterial.**

63.     Another potential customer saw Rise's CEO wearing a RISE branded hat, said that he "loved the product" but then pointed to a cooler of Pepsi's product, further stating that the situation was "confusing." Welch Ex. 19, Gyesky Depo. Tr. at 282:13-23.

**PepsiCo Response: Disputed but immaterial.  The cited testimony does not include the quoted text or facts.**

64.     Rise employee Allison Schmidt experienced consumer confusion at product tastings at such a rate that it was the "norm… not the exception." Dkt. 160, 85:12-15.

**PepsiCo Response: Undisputed that Ms. Schmidt claimed to experience "confusion" but disputed as to whether her experiences amounted to confusion, as Ms. Schmidt described the "confusion" as customer inquiries.  *See* Dkt. 160, 84:21-85:2 (testifying that consumers asked: "oh, so you are the new, you know, the new coffee version of Mountain Dew, right … Is that what you are").  In any event, immaterial to resolution of PepsiCo's motion.**

65.     Pepsi used the social media account handle @MTNDEWRISE and hashtags #MTNDEWRISE and #MTNDEWRISEPartner in association with its MTN DEW RISE drinks. Dkt. 35, ¶¶ 7, 9-10 (showing Pepsi's Twitter and Instagram account handles @MTNDEWRISE,

and a MTN DEW RISE Instagram post in which the term "Energy" is printed vertically on the can is cropped to show only "GY"); Welch Ex. 29 at PEPSICO0008791.

**PepsiCo Response**: **Undisputed.**

66.     Pepsi used the domain mountaindewrise.com in association with its MTN DEW RISE products. Dkt. 104, ¶¶ 1, 4.

**PepsiCo Response**: **Undisputed.**

67.     Pepsi called its product ███████████████████████████████ Welch Exs. 30 ████████████████████ 31 ████████████████

**PepsiCo Response**: **Undisputed.**

68.     Pepsi was ████████████████████████████████████████ ████ Welch Ex. 32.

**PepsiCo Response**: **Disputed that PepsiCo was developing any future advertising campaigns using "MTN DEW RISE" without also using "MTN DEW RISE ENERGY" (as in Welch Ex. 32, Dkt. 404-32). In any event, immaterial to resolution of PepsiCo's motion.**

69.     Pepsi's MTN DEW RISE product received at least ██████████████ Welch Ex. 51.

**PepsiCo Response**: **Undisputed.**

70.     Pepsi earned between ██████████████ in net revenues from its sales of MTN DEW RISE. Welch Ex. 49, p. 41.

**PepsiCo Response**: **Undisputed that PepsiCo's net revenues were ██████████ but disputed because the high end of the range does not account for trade spend, but immaterial because ████████████████████████████████████████████ ████████████. Dkt. 381 ¶ 9-11.**

71.     Steven Salzinger was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-2; Dkt. 160, 57:22-60:11 (Mr. Salzinger testifying that he "would absolutely consider future investment in the company" but for the "existential threat" posed by MTN DEW RISE).

**PepsiCo Response: Undisputed and immaterial that Mr. Salzinger testified that he would "consider future investment" but for MTN DEW RISE ENERGY.   Disputed (but nonetheless immaterial) that Mr. Salzinger refused to invest in the past due to MTN DEW RISE ENERGY.   Mr. Salzinger (whose total investment was $250,000) testified that he had no interest in investing in SAFE notes, which was the type of investment opportunity that RBC presented to him at that time.   Dkt. 160 at 56:15-22; LJS Ex. 79 Salzinger Dep. at 261:8-262:5, 264:22-265:15; Dkt. 382-12 at 277:18-20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.**

72.     ▮▮▮▮▮▮▮▮ unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-13; Gyesky Dec. ¶ 9.

**PepsiCo Response: Disputed but immaterial.   The record evidence shows the opposite: ▮▮▮▮▮▮▮ *did invest in RBC after the launch of MTN DEW RISE ENERGY.*   LJS Ex. 84, RISE0018586 at '86; Dkts. 382-52 & 382-53; Dkt. 382-46.   Immaterial because there is no indication that ▮▮▮▮▮▮ ever intended to invest what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.   Dkt. 382-21.**

73.     ▮▮▮▮▮▮▮ was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-15; Gyesky Dec. ¶ 9.

**PepsiCo Response:   Disputed but immaterial.   Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial. RBC does not**

cite (because it did not produce) a single communication from ███████████ (or any other investor) indicating he was declining to invest *due to* Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-297:5; LJS Decl. ¶ 6).  RBC also failed to disclose ███████████ in its Initial Disclosures.  Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures).  And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations.  Immaterial because there is no indication that ███████████ ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.

74.  ███████████ was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-21; Gyesky Dec. ¶ 9.

**PepsiCo Response**:   **Disputed but immaterial.   Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial.   RBC does not cite (because it did not produce) a single communication from ███████████ (or any other investor) indicating it was declining to invest *due to* Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-297:5; LJS Decl. ¶ 6).  RBC also failed to disclose ███████████ in its Initial Disclosures. Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures).  And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations. Immaterial because there is no indication that ███████████ ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.**

75. ▮▮▮▮▮▮▮▮▮ was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-23; Gyesky Dec. ¶ 9.

**PepsiCo Response**: **Disputed but immaterial.   Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial. RBC does not cite (because it did not produce) a single communication from ▮▮▮▮▮▮▮▮ (or any other investor) indicating it was declining to invest _due to_ Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-297:5; LJS Decl. ¶ 6).  RBC also failed to disclose ▮▮▮▮▮▮▮ in its Initial Disclosures. Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures). And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations. Immaterial because there is no indication that ▮▮▮▮▮▮▮ ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.**

76. ▮▮▮▮▮▮▮ was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-25; Gyesky Dec. ¶ 9.

**PepsiCo Response**: **Disputed but immaterial.   Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial. RBC does not cite (because it did not produce) a single communication from ▮▮▮▮▮▮▮ (or any other investor) indicating it was declining to invest _due to_ Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-297:5; LJS Decl. ¶ 6).  RBC also failed to disclose ▮▮▮▮▮▮ in its Initial Disclosures. Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures). And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations.  Immaterial**

because there is no indication that ███████ ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.

77.    ███████ was unwilling to invest in Rise due to Pepsi's launch of Mtn Dew RISE. Welch Ex. 19, Gyesky Tr. 296:4-297:2; Gyesky Dec. ¶ 9.

**PepsiCo Response**: Disputed but immaterial.  Disputed because the stated fact is not supported by any evidence that could be presented in admissible form at trial. RBC does not cite (because it did not produce) a single communication from ███████ (or any other investor) indicating it was declining to invest *due to* Pepsi's launch of MDRE, despite being ordered to search for and produce such documents (Dkt. 314 at 2; Dkt. 300-4 at 296:4-297:5; LJS Decl. ¶ 6).  RBC also failed to disclose ███████ in its Initial Disclosures.  Dkt. 425-1 (08/22/2022 Third Amended Initial Disclosures). And, Mr. Gyesky lacks relevant personal knowledge and cannot attest to another person's subject desires or motivations.  Immaterial because there is no indication that ███████ ever intended to invest any amount, let alone what RBC's expert claims RBC needed at the time he claims RBC needed it in order to avoid the damages he calculates.  Dkt. 382-21.

Dated: December 14, 2022

Respectfully Submitted,

*/s/ Dale M. Cendali*
Dale M. Cendali
Luke Budiardjo
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
dale.cendali@kirkland.com
luke.budiardjo@kirkland.com

Diana Torres (admitted *pro hac vice*)

Allison W. Buchner (admitted *pro hac vice*)
Saghar Esfandiarifard
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Tel: (213) 680-8338
diana.torres@kirkland.com
abuchner@kirkland.com
saghar.esfandiarifard@kirkland.com

Lauren Schweitzer (admitted *pro hac vice*)
Maria Monica Beltran (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Tel.: (213) 680-8252
lauren.schweitzer@kirkland.com
maria.beltran@kirkland.com

Paul J. Reilly
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2634
paul.reilly@bakerbotts.com

Susan Kennedy (admitted *pro hac vice*)
Monica H. Smith (admitted *pro hac vice*)
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201


Tel: (214) 953-6500
susan.kennedy@bakerbotts.com
monica.smith@bakerbotts.com

*Attorneys for Defendant PepsiCo, Inc.*