UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                        :

RISEANDSHINE CORPORATION d/b/a     :
RISE BREWING,                               :
                            Plaintiff,    :        21 Civ. 6324 (LGS)
                                          :

        -against-                  :        **OPINION AND ORDER**
                                          :

PEPSICO INC.,                             :
                            Defendant.   :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff RiseandShine Corporation d/b/a Rise Brewing ("Rise Brewing") brings this trademark infringement suit against Defendant Pepsico Inc. ("PepsiCo").  Plaintiff owns certain registered marks that it uses on its canned coffee-based and tea-based drinks.  Plaintiff alleges Defendant infringed on Plaintiff's marks with its canned energy drink "MTN DEW RISE ENERGY" (or "Mtn Dew Rise").  Plaintiff asserts five claims in the First Amended Complaint ("FAC"): trademark infringement, unfair competition and false designation of origin under federal law; and trademark infringement, unfair competition and unjust enrichment under New York law.  Following the close of fact and expert discovery, Defendant moves for summary judgment on all claims.  For the reasons below, Defendant's motion is granted.

I.      **BACKGROUND**

The following facts are drawn from the parties' Rule 56.1 statements and other submissions on this motion.  The facts are undisputed or based on record evidence drawing all reasonable inferences in favor of Plaintiff as the non-moving party.  *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Rise Brewing holds federal trademark No. 5,168,377 for the word mark "Rise Brewing Co." and No. 5,333,635 for the design mark "Rise Brewing Co." depicted to the right.  Rise Brewing uses these marks, and other word marks containing the word "rise" in connection with its coffee-based and tea-based drinks.  It first used  these marks on its products beginning in May 2015.  Rise Brewing distributes its products nationally.  Between 2015 and 2021, it spent approximately $17.5 million in advertising, all of which featured some form of the marks.

Mtn Dew Rise is a fruit-flavored caffeinated energy drink sold by Defendant, launched in 2021.  The packaging for both products is depicted below, with certain of Plaintiff's products on the left and Mtn Dew Rise on the right:

 

In January 2021, Plaintiff learned of the forthcoming launch of Mtn Dew Rise and sent Defendant a cease-and-desist letter.  In March 2021, Defendant began selling Mtn Dew Rise.  Shortly after the launch of Mtn Dew Rise, industry and personal contacts began contacting Rise Brewing employees, making inquiries or statements that suggested a perceived partnership between Rise Brewing and PepsiCo.  Defendant's customer service center also received an inquiry asking if Mtn Dew Rise was associated with Plaintiff.  Employees of stores that sold both products reported that they believed the products were connected.

On June 15, 2021, Plaintiff commenced this lawsuit in the Northern District of Illinois, alleging federal and state trademark infringement. Plaintiff then moved for a preliminary injunction. The case was transferred to the Southern District of New York. In November 2021, Plaintiff's motion for a preliminary injunction was granted, and Defendant was enjoined from using the "Mtn Dew Rise Energy" mark in connection with canned energy beverages. *See RiseandShine Corp. v. PepsiCo., Inc.*, No. 21 Civ. 6324, 2021 WL 5173862, at *11-12 (S.D.N.Y. Nov. 4, 2021). On July 22, 2022, following briefing and oral argument, the Second Circuit vacated the preliminary injunction. *See RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 125 (2d Cir. 2022) ("*RiseandShine II*"). Defendant now moves for summary judgment.

## II.    STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).[1] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

3

B.      **Trademark Disputes**

"To prevail on a [federal] trademark infringement and unfair competition claim . . . in addition to demonstrating that the plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009); *accord Gayle v. Allee*, No. 18 Civ. 3774, 2021 WL 120063, at *3 (S.D.N.Y. Jan. 13, 2021).  The analysis regarding Plaintiff's state law trademark and unfair competition claims mirrors this standard.  *See Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) ("For a trademark infringement claim under New York common law, it is well-established that its elements mirror the Lanham Act claim's."); *Gayle v. Home Box Office, Inc.*, No. 17 Civ. 5867, 2018 WL 2059657, at *4 (S.D.N.Y. May 1, 2018) ("[T]here are no material differences between the standards that apply to Lanham Act claims and the standards that apply to New York trademark and unfair competition claims.").

"To determine whether there is a likelihood of consumer confusion, [courts in the Second Circuit] look to . . . eight . . . *Polaroid* factors."  *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  Those non-exclusive factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Id.*  "[T]he modern test of infringement is whether the defendant's use is likely to cause confusion not just as to source, but also as to sponsorship, affiliation or connection."  *Int'l Info.*

*Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016).

Here, Plaintiff relies on a theory of "reverse confusion" -- that when Defendant, the junior user

and much larger company, uses the same mark as Plaintiff, the senior user, "consumers might

believe that the senior user's success in promoting its brand had led the larger junior user to

acquire the senior." *RiseandShine II*, 41 F.4th at 124.

       The Second Circuit recently has acknowledged ambiguity in its trademark jurisprudence

regarding questions of law versus questions of fact.  *See Souza*, 68 F.4th at 108-09; *Car-*

*Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 328 n.11 (2d Cir. 2020); *Kelly-Brown v.*

*Winfrey*, 659 F. App'x 55, 58 n.3 (2d Cir. 2016) (summary order).  Distinguishing questions of

law from questions of fact (or mixed questions of law and fact) is particularly important at

summary judgment when questions of fact may not be resolved by the court, while questions of

law must be.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.").  The Circuit has emphasized that this familiar principle governs

equally in trademark disputes.  *See Souza*, 68 F.4th at 109 ("[P]ast cases hinting at deference to

the district court should not be read to suggest that a district court deciding a motion for

summary judgment in a trademark infringement case has greater discretion than it would have in

a non-trademark case.").  "As in any other area of law, then, if a factual inference must be drawn

to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a

different conclusion, the district court may not properly resolve that issue on summary

judgment." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020).

Traditionally, mixed questions of law and fact are submitted to and decided by the jury but are

reviewed on appeal "either *de novo* or under the clearly erroneous standard, depending on

whether the question is predominantly legal or predominantly factual." *United States v. Skys*, 637 F.3d 146, 152 (2d Cir. 2011); *accord Nat'l Union Fire Ins. Co. of Pittsburgh v. Garpo Marine Servs., Inc.*, 773 F. App'x 22, 24 (2d Cir. 2019) (summary order).  These distinctions, which determine who decides what, are particularly important in this case because the Second Circuit's legal conclusions in *RiseandShine II* are binding for purposes of Defendant's present motion.

Application of the *Polaroid* factors involves several levels of analysis involving questions of law and fact.  These include (1) the review of evidence as to a particular factor, (2) the determination of whether those facts weigh in favor of one party or another and to what degree and (3) the final weighing of all of the factors together to determine the likelihood of consumer confusion.

As to each individual *Polaroid* factor, any evidentiary disputes about foundational facts raise questions of fact.  For purposes of analyzing consumer confusion on summary judgment, these disputes are resolved in favor of the non-moving party.  *See, e.g.*, *Tiffany*, 971 F.3d at 85 ("[Circuit precedent] should not be read to suggest that a district court deciding a motion for summary judgment in a trademark infringement case has greater discretion than it would have in a non-trademark case to resolve disputed issues of fact or draw inferences against the non-moving party.").

Having construed disputed facts in favor of the non-moving party, the next question is whether a particular factor favors one party or another and, if so, to what degree.  Recently the Second Circuit has treated this inquiry as, at least at times, a question of law.  *Tiffany*, 971 F.3d at 86 ("[I]nsofar as the determination of whether one of the *Polaroid* factors favors one party or another involves a legal judgment -- which it often does -- we must review that determination *de*

*novo* [as a question of law].").  When following this approach, the Circuit has declined to speak

in terms of what a reasonable jury could find as to each factor and instead treats the

determination of an individual *Polaroid* factor as a legal conclusion to be made by the court, on

the basis of the record with all factual issues resolved and all permissible inferences drawn in

favor of the non-moving party.  *See, e.g.*, *Souza*, 68 F.4th at 110-15; *Car-Freshner*, 980 F.3d at

328, 333 (for each factor, "set[ting] out the District Court's rulings, and then our own assessment

of the factor" and giving "conclusions with respect to each factor" on *de novo* review); *Saxon*

*Glass Techs, Inc. v. Apple Inc.*, 824 F. App'x 75, 79-80 (2d Cir. 2020) (summary order)

(affirming a grant of summary judgment after determining which party each factor favored,

viewing the evidence for each factor in favor of the non-moving party).  *But see Guthrie*

*Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37-38 (2d Cir. 2016) ("We generally review

determinations as to individual *Polaroid* factors [following a bench trial] for clear error, at least

to the extent they involve factual determinations[.]"); *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412

F.3d 373, 384 (2d Cir. 2005) ("The district court's resolution of each separate factor [at a bench

trial] is treated as a finding of fact which we review for clear error."); *Bristol-Myers Squibb Co.*

*v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1043 (2d Cir. 1992) ("In this Circuit, a district court's

determination of the individual *Polaroid* factors are subject to review as findings of fact, subject

to review only if clearly erroneous[.]").

Having evaluated each *Polaroid* factor individually, the final step of the analysis is to

balance the various factors to answer the ultimate question of whether consumers are likely to be

confused.  This determination is a question of law.  *See Car-Freshner*, 980 F.3d at 326 (stating

that the ultimate question of "whether the plaintiff has shown a likelihood of confusion . . . [is] a

question of law"); *Souza*, 68 F.4th at 109 ("[W]e have always held that the district court's balancing of those factors should be reviewed *de novo* [i.e., as a question of law]").[2]

      As necessary to adjudicate Defendant's motion, this decision applies the Circuit's recent decisions regarding the *Polaroid* factor analysis at summary judgment as follows: (1) as to each *Polaroid* factor, when there is disputed evidence, construe the facts and draw inferences in favor of the non-moving party, *see Souza*, 68 F.4th at 109, understanding that the court has no greater latitude in a trademark case than in any other "to resolve disputed issues of fact or draw inferences against the non-moving party," *Tiffany*, 971 F.3d at 85; (2) determine as a matter of law which party each *Polaroid* factor favors and how strongly it favors that party, *see, e.g., Car-Freshner*, 980 F.3d at 333-34, (stating its conclusions with respect to each *Polaroid* factor, including that certain factors "strongly favor[]" or "barely favor[] a party); *Saxon Glass Techs.*, 824 F. App'x at 79-80 (similar); (3) weigh these factors and any other relevant facts, *Souza*, 68 F.4th at 110 ("Th[e] [*Polaroid*] factors are neither exhaustive nor applied mechanically. No single factor is dispositive; rather, each is evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product."); *Saxon Glass Techs.*, 824 F. App'x at 80 (reiterating that "no one factor should be treated as dispositive" and a court is to

---

[2] The Second Circuit acknowledged in *Car-Freshner* that, "[a]t an earlier time, we considered likelihood of confusion to be a question of fact. Now, however, we are one of three circuits, along with the Sixth and Federal Circuits, that consider likelihood of confusion to be a question of law." *Car-Freshner*, 980 F.3d at 326 n.4; *see also Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 70 (2d Cir. 1994) ("Whether likelihood of confusion exists is a matter of mixed fact and law reviewed *de novo*."). The court in *Car-Freshner* also noted that *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015), may cast doubt on treating consumer confusion as a question of law. *Hana* held that whether two trademarks are to be considered "legal equivalents[,] in that they create the same, continuing commercial impression" from "the perspective of an ordinary purchaser or consumer," is a question of fact. *Id.* at 420. Notwithstanding *Hana*, the Second Circuit treats the "determination of whether a given set of foundational facts establishes a likelihood of confusion [a]s a legal conclusion." *Car-Freshner*, 980 F.3d at 326 n.4.

"look[] at the products in their totality"); and (4) determine, as a matter of law, whether a jury could reasonably conclude that there is a likelihood of consumer confusion, *see Car-Freshner*, 980 F.3d at 326-27 (applying *de novo* review to "determin[e] whether the requisite likelihood of confusion has been shown (or, more precisely, on review of the summary judgment ruling, whether a genuine issue exists as to such likelihood)"); *Tiffany*, 971 F.3d at 91 ("We conclude that Costco's evidence has, when considered in the aggregate, created a genuine question as to the likelihood of customer confusion. . . . [A] jury could reasonably conclude that . . . ."). If a genuine issue exists as to the likelihood of confusion, the court should deny summary judgment.

### C.    Effect of the Preliminary Injunction Decision

A threshold question is the effect of *RiseandShine II* on Defendant's motion. There, the Second Circuit concluded that Plaintiff had not demonstrated a likelihood of success on the merits. 41 F.4th at 125. Under Second Circuit law, "[w]hen an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991); *accord In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 482 (S.D.N.Y. 2021) ("The law-of-the-case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. This is the so-called mandate rule."). "The mandate rule . . . forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Serby v. First Alert, Inc.*, 783 F. App'x 38, 40 (2d Cir. 2019) (summary order).

Even so, "ordinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial." *Cayuga Indian Nation of N.Y. v. Seneca Cnty.*, 978 F.3d 829, 834 (2d Cir. 2020) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)); *see also DiLaura v. Power Auth.*, 982 F.2d 73, 77 (2d Cir. 1992) ("[T]he decision of both the trial and appellate court on

9

whether to grant or deny a temporary injunction does not preclude the parties in any way from litigating the merits of the case."). This is because a preliminary injunction order is "by its very nature, tentative," and "it would be anomalous in most cases . . . to regard the initial preliminary injunction ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions." *Cayuga Indian Nation*, 978 F.3d at 834.

The words "ordinarily" and "in most cases," signify that the room left for reexamination is not without exception. *See id.* Other circuit courts have described more fully when a court's holding at the preliminary injunction stage becomes the law of the case -- specifically, when the holding is not tentative, is based on a fully developed record or is entirely a conclusion of law. *See, e.g.*, *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) ("[W]e must ask whether the appellate panel considering the preliminary injunction has issued a fully considered appellate ruling on an issue of law. If so, then that opinion becomes the law of the case."); *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607, 612 (1st Cir. 2021) ("Under the law of the case doctrine, a panel decision on a preliminary injunction motion constitutes binding precedent, at least when the record before the panel was sufficiently developed and the facts necessary to shape the proper legal matrix were sufficiently clear."); *Fish v. Schwab*, 957 F.3d 1105, 1140-41 (10th Cir. 2020) ("[O]ur sister circuits and a leading treatise agree that a fully considered appellate ruling on an issue of law made on a preliminary injunction appeal becomes the law of the case for further proceedings in the trial court on remand and in any subsequent appeal." (quoting 18B Charles Alan Wright et al., Federal Practice & Procedure § 4478.5 n.6 (2d ed., database updated 2020))); *Rodriguez v. Robbins*, 804 F.3d 1060, 1080 (9th Cir. 2015) ("Because preliminary injunction decisions are often made hastily and on less than a full record, they may provide little guidance as to the appropriate disposition on the merits. However, there is an exception to the

general rule for conclusions on pure issues of law."), *rev'd on other grounds by Jennings v. Rodriguez*, 138 S.Ct. 830 (2018); *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012) ("[W]here the earlier ruling, though on preliminary-injunction review, was established in a definitive, fully considered legal decision based on a fully developed factual record and a decisionmaking process that included full briefing and argument without unusual time constraints, why should we not follow the usual law-of-the-case jurisprudence?").  As discussed below, this decision treats as binding the conclusions of law in *RiseandShine II* based on a substantially similar factual record.

## III.   DISCUSSION

Defendant's motion for summary judgment on all claims is granted for the reasons set out below.

### A.   *Polaroid* Factors

#### 1.   Strength of the Trademark

The strength of a mark "is analyzed based on two components: (1) the degree to which the mark is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace."  *Car-Freshner*, 980 F.3d at 329.

##### a. Inherent Distinctiveness

Plaintiff's mark is inherently weak as a matter of law per the Second Circuit's binding conclusion in *RiseandShine II*.  Discussing the first *Polaroid* factor -- the strength of the trademark -- the Circuit held that "the strong logical associations between 'Rise' and coffee represent weakness and place the mark at the low end of the spectrum of suggestive marks."  *Id.* at 121.  This holding was a conclusion of law.  *Id*. at 121 & 122 n.1 (on *de novo* review, stating that to conclude otherwise was "legal error" and that "the discretion allowed to a factfinder in finding inherent strength is minimal at best"); *Tiffany*, 971 F.3d at 86 n.7 (finding "a

considerable component of law in the determination whether a mark has the degree of strength

necessary to weigh in favor of the party claiming infringement"); *Guthrie Healthcare Sys.*, 826

F.3d at 38 ("[A]ssessment of some of the *Polaroid* factors may involve issues of law . . .

particularly so for determinations as to whether the senior user's mark is . . . a strong mark, or in

contrast, . . . [is] unenforceable or weak.").

      The Circuit's holding was based on the nature of the mark and not on extrinsic evidence.

The Circuit relied on the nature of the word "rise" and its logical associations to find that the

mark "is inherently weak and commands a narrow scope of protection." *Id.* at 122. Plaintiff

argues that the Circuit relied "in large part" on hearsay evidence of third-party uses, which may

be considered on a motion for a preliminary injunction, but not one for summary judgment.

However, this ignores that the Circuit characterized the mark as "inherently" and "decidedly"

weak before continuing, "[a] survey of the use of the term 'Rise' in the beverage market *further*

*underlines* the weakness of the mark." *Id.* (emphasis added). The Circuit's decision compels a

finding that, even in the absence of third-party uses, the mark is inherently weak as a matter of

law.

### b. Acquired Distinctiveness

      *RiseandShine II* found that Plaintiff "has not shown that its RISE mark has achieved

sufficient acquired strength to counterbalance the inherent weakness of its mark." 41 F.4th at

124. This finding is not binding here because it was made on a somewhat lesser factual record

and under a different legal standard -- i.e., what a reasonable jury was *likely* to find (i.e.,

likelihood of success on the merits), rather than the standard here, what a reasonable jury *could*

find.

"Acquired distinctiveness, sometimes called secondary meaning, is determined by analyzing six factors: advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use." *Car-Freshner*, 980 F.3d at 329.  While Plaintiff has proffered some evidence of acquired strength, no reasonable jury could conclude "that the mark's primary significance to relevant consumers is to identify the trademark holder as the source of the product." *See Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 160 (2d Cir. 2016) (discussing acquired strength in the context of whether a mark is entitled to protection).

Plaintiff offers evidence that it spent $17.5 million in advertising, but provides no context to determine whether this amount is significant in the relevant market.  *See Capri Sun GmbH*, 595 F. Supp. 3d at 150 ("[M]erely showing that a certain amount was spent on advertising provides little support for secondary meaning.").  Plaintiff also offers evidence of various awards for its products.  Of the five awards Plaintiff cites, three are from industry publications, limiting their probative value as to consumer perceptions, and one award post-dates the introduction of Defendant's product.  Plaintiff also submitted evidence showing the fastest year-over-year growth compared to certain competitors.  But this evidence in the aggregate is insufficient to show acquired distinctiveness.  *See E.A. Sween Co., v. A&M Deli Express, Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019) (summary order) (affirming dismissal of a trademark dilution claim after analyzing the six factors, one of which is "the degree of inherent or acquired distinctiveness," when a plaintiff "did not allege that the . . . brand was widely recognized beyond the fact that it won industry awards and had 'significant' sales").  Plaintiff also offers evidence that certain of Defendant's employees were unaware of other beverages using "Rise" beyond Plaintiff's

products and Mtn Dew Rise.  But this is not evidence of consumer recognition, much less widespread consumer recognition.

Finally, Plaintiff offers no "consumer studies linking the mark to the source."  *Car-Freshner*, 980 F.3d at 329.  Plaintiff offers two surveys that seek to profile its consumers, but this evidence is not probative of secondary meaning.  Under Second Circuit law, survey evidence is not required to establish secondary meaning.  *See, e.g.*, *Car Freshner*, 980 F.3d at 329 & n.15 (finding evidence of unsolicited news and social media coverage and in popular culture sufficient to allow "a reasonable juror [to] interpret the record evidence as a whole to indicate widespread recognition").   But the absence of survey evidence is probative, especially now at the conclusion of all discovery when evidence of acquired distinctiveness is "hardly overwhelming."  *Capri Sun GmbH*, 595 F. Supp. 3d at 154 ("Although failure to undertake a consumer survey concerning recognition of its mark is not by itself fatal to a plaintiff's assertion of secondary meaning, where the other evidence of consumer recognition is hardly overwhelming, the absence of survey evidence weighs heavily against plaintiff's position.").

Although *RiseandShine II*'s discussion with respect to acquired meaning is not binding, the similarity between the record before the Circuit and the record on summary judgment gives that discussion strong persuasive force.  Plaintiff still relies principally on evidence of advertising spending and product awards, as well as a declaration of its CEO previously filed to support the preliminary injunction motion.  That Plaintiff offers no survey evidence in support of acquired meaning, despite having the opportunity to do so, and the relative lack of other evidence support the conclusion that Plaintiff's mark has not achieved a secondary meaning linking the Rise mark to Plaintiff's product.

14

### c. Strength of the Mark and Reverse Confusion

Plaintiff's theory of liability is reverse confusion. "Reverse confusion occurs when consumers believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user." *RiseandShine II*, 41 F.4th at 119. Plaintiff argues that, in a reverse confusion case, a reasonable jury could find a likelihood of confusion despite a weak mark, because a plaintiff with a commercially weak mark (i.e., a mark without a strong secondary meaning; a mark that consumers do not strongly associate with the plaintiff) is more likely to be able to show reverse confusion claim against a junior user with a far stronger mark. In effect, Plaintiff argues that in a reverse confusion case, a weak mark should not weigh strongly against a Plaintiff in determining the likelihood of consumer confusion.

This argument is only half right. The basic premise in a strong reverse confusion case, as reflected in Plaintiff's cited cases, is that a mark that is inherently strong, but not strongly associated with the plaintiff (i.e., one that has not acquired a secondary meaning), is both deserving of protection and is likely to be the subject of consumer confusion.[3] In such a case, the first *Polaroid* factor tips strongly in favor of a plaintiff who holds such a mark. However, this argument does not help Plaintiff, because its mark is inherently weak, as discussed above, and therefore less deserving of trademark protection. *See RiseandShine II*, 41 F.4th at 122, 124

---

[3] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 232 (3d Cir. 2000) (warning of the "perverse result that less imaginative marks would be more likely to win reverse confusion claims than arbitrary or fanciful ones"); *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 586 (S.D.N.Y. 2015) ("In a reverse confusion case such as this, strength of mark favors the senior user when the senior user's mark is inherently distinctive and where the junior user is apt to drown out the moderate success of the senior user."); *First Nat'l Bank of Omaha, Inc. v. Mastercard Int'l Inc.*, No. 02 Civ. 3691, 2004 WL 1575396, at *12 (S.D.N.Y. July 15, 2004) ("For both forward and reverse confusion claims, a plaintiff with a conceptually weak mark is less likely to prevail. A plaintiff with a mark that is commercially weak, however, is more likely to succeed in establishing reverse confusion, particularly against a defendant with a far stronger mark.").

(calling the mark "decidedly weak" and finding "[w]eak marks are entitled to only an extremely narrow scope of protection").

*       *       *

In sum, Plaintiff's mark is inherently weak.  Although Plaintiff offers some evidence of acquired distinctiveness, the record as a whole with respect to acquired meaning, construed in favor of Plaintiff, does not overcome the inherent weakness of the mark.  Accordingly, this factor strongly favors Defendant.

### 2.  Similarity

The second Polaroid factor, similarity of the marks, favors Defendant based on *RiseandShine II*.  The Circuit "[c]ompar[ed] the two products . . . in size, proportion, style, color, and artwork" and "overall appearances of the cans" to find that "the differences appear far more notable than the similarities." *Id.* at 125.

The Circuit in *RiseandShine II* implied that this factor presents a factual question by stating that it was "clear error" to find the products similar.  However, there is no dispute about how the respective products look -- what size, what font, what color, etc.  The question is whether, in the aggregate, these characteristics warrant describing the products as similar or not. This inquiry can be viewed in two ways -- either as calling for a factual inference (mindful that all reasonable inferences must be drawn in favor of Plaintiff as the non-movant) or as a legal inquiry into the extent to which the resemblance between the parties' products warrants weighing this factor in favor of Plaintiff or Defendant.  *See Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 149 (2d. Cir. 2003) (concluding that district court erred in its finding on similarity, because visual dissimilarities were legally irrelevant to marks communicated over radio and through word of mouth, and finding that the factor "favored the plaintiff as a matter of law").  Under the first approach, the record has not changed since the Second Circuit's decision, and under the

16

second, the inquiry is a question of law.  Either way, *RiseandShine II* controls.  This factor

weighs strongly against Plaintiff.

### 3.   Proximity

Construing the evidence and drawing all reasonable inferences in favor of Plaintiff, the

proximity factor weighs in favor of Plaintiff.  "The proximity factor . . . depends on the logical

proposition that the public is less likely to draw an inference of relatedness from similar marks

when the marks' users are in dissimilar areas of commerce[.]"  *Guthrie Healthcare Sys.*, 826

F.3d at 39.  The parties' products are canned caffeinated beverages, distributed nationally in

grocery stores and online.  Defendant notes that *RiseandShine II* remarks that, in contrast to

Plaintiff's coffee and tea drinks, Defendant sells "a product that is distinct from coffee."  41

F.4th at 123.  However, Plaintiff offers evidence that consumers treat coffee-based and tea-based

beverages and energy drinks as alternatives.  A reasonable jury could find this evidence

sufficient to resolve the proximity factor in favor of Plaintiff.

### 4.   Bridging the Gap

Because the proximity factor weighs in favor of Plaintiff, the "bridging the gap" factor is

irrelevant.  This factor speaks to whether the senior user may develop a product for sale in the

market of the alleged infringer's product.  *See Star Indus., Inc.*, 412 F.3d at 387.  When the

parties directly compete, "there is no competitive gap to be bridged," and this factor does not

apply.  *Starbucks Corp.*, 588 F.3d at 115.

### 5.   Actual Consumer Confusion

Construing the evidence and drawing all reasonable inferences in favor of Plaintiff, the

actual confusion factor weakly favors Plaintiff.  "[F]or the fifth *Polaroid* factor to weigh in its

favor, [a party alleging infringement] must show instances of actual consumer confusion that

could inflict commercial injury . . . in the form of either a diversion of sales, damage to goodwill,

or loss of control over reputation." *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 397 (2d Cir. 2021) (summary order).  Actual confusion can be shown "through survey evidence or anecdotal examples." *Id.*

Plaintiff does not submit its own survey evidence but does offer expert testimony criticizing Defendant's survey evidence that tends to show lack of actual confusion.  *Cf. Tiffany*, 971 F.3d at 87 (in reversing summary judgment for plaintiff, holding that defendant had raised a question of fact merely by attacking the sufficiency of plaintiff's anecdotal and survey evidence of confusion where plaintiff had the burden of showing confusion).  While Plaintiff's failure to provide survey evidence "is not fatal," *Car-Freshner*, 980 F.3d at 332, the lack of such evidence is probative of lack of confusion, *Reply All Corp.*, 843 F. App'x at 397 ("[T]he absence of surveys is evidence that actual confusion cannot be shown."); *Star Indus., Inc.*, 412 F.3d at 387-88 ("[Defendant] . . . submitted consumer surveys tending to rebut charges of actual consumer confusion.  [Plaintiff] points out, and the district court noted, various flaws with these surveys.  But . . . [Plaintiff's] failure to present its own consumer survey weighs against a finding of consumer confusion.").

Plaintiff offers evidence of actual confusion in the form of seventeen anecdotes of confusion, as well as testimony of the existence of confusion generally during business pitches and from participants in product tastings.  Although the record is not clear, around half of these reports come from industry contacts and retail employees.  Defendant argues that Plaintiff's anecdotal evidence of confusion by non-consumers is wholly legally irrelevant.  This argument is misplaced, because Plaintiff also offers testimony from disinterested consumers sufficient to create an issue of fact on this factor.  Further, it is reasonable to infer some level of consumer

confusion from testimony of confusion from those who may be more knowledgeable about the beverage market, such as industry insiders and retail employees.

Defendant also frames some of the anecdotes of actual confusion as inquiries, arguing that under Circuit law any inquiries tend to disprove, rather than prove, confusion. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) ("Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a lack of confusion between the products such as to inspire the inquiry itself."). However, more recently, the Circuit has referred to "evidence of actual confusion . . . as where [a senior user] receives inquiries from the public about the junior user's products." *Guthrie Healthcare Sys.*, 826 F.3d at 44. In any event, it would not be unreasonable to construe "WHATS UP WITH THIS" as a statement of confusion, rather than an inquiry reflecting a consumer's ability to differentiate between the marks. *See Car-Freshner*, 980 F.3d at 332 (describing "an inquiry posted on Amazon.com" as evidence of a customer being "arguably confused").

If credited, Plaintiff's evidence is sufficient to find that the actual confusion factor favors Plaintiff, albeit weakly. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003) ("In view of the limited time that the Defendants were selling their sauce and the small number of their sales, these few instances of reverse confusion adequately support the District Court's weighing the actual confusion factor in favor of Patsy's Brand."), *abrogated in part on other grounds by 4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202 (2d Cir. 2019). As a reasonable jury could find consumer confusion on the basis of Plaintiff's evidence, this factor weighs in favor of Plaintiff, though only slightly, given the nature and quantum of evidence.

### 6. Bad Faith

Plaintiff has proffered evidence from which a reasonable jury could find that Defendant acted in bad faith. Construing the evidence and drawing all reasonable inferences in favor of Plaintiff, this factor weighs in favor of Plaintiff.

Plaintiff proffers evidence that before Defendant's release of its own product, Defendant was aware of Plaintiff's product and considered acquiring it. Defendant decided not to acquire it and released its own caffeinated, canned drink including "Rise" prominently in its name and packaging. A reasonable jury could conclude from this circumstantial evidence that Defendant's conduct was not entirely coincidental and unwitting, even in the absence of direct evidence of intentional copying. *See Car-Freshner*, 980 F.3d at 333 ("Rarely does an infringement case reveal such explicit evidence of bad faith."); *Star Indus., Inc.*, 412 F.3d at 389 ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark."); *see also Tiffany*, 971 F.3d at 88 ("[A]s we have consistently observed, subjective issues such as good faith are singularly inappropriate for determination on summary judgment."). Although the junior user's intent may be uninformative about the likelihood of consumer confusion, *see Virgin Enters. Ltd.*, 335 F.3d at 151, it can be probative because an intent to mirror the appearance of an existing product may result in the products being confusingly similar. *See Car-Freshner*, 980 F.3d at 332 ("The emails from the Handstands employees as they choose names for their new products are highly probative of their intent to mislead consumers -- which, in turn, is probative of whether such efforts would succeed."). Particularly since "subjective issues such as good faith are singularly inappropriate for determination on summary judgment," *Tiffany*, 971 F.3d at 88, and drawing reasonable inferences in favor of Plaintiff, this factor weighs in favor of Plaintiff.

### 7.  Respective Quality

As relevant for the likelihood of confusion inquiry, the product quality factor is neutral. This factor may be relevant for two reasons: on the one hand, "[if] defendant's products or services are inferior to plaintiff's, [they] thereby tarnish[] plaintiff's reputation if consumers confuse the two," while on the other, "[p]roducts of equal quality may tend to create confusion as to source because of that very similarity of quality." *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 142 (2d Cir. 1999); *accord Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 22 Civ. 5772, 2022 WL 17733156, at *51 (S.D.N.Y. Dec. 7, 2022).  Plaintiff cites evidence that the parties both promoted their respective products with "better-for-you attributes like less sugar, real juice, and similarity to coffee."  Crediting Plaintiff's evidence, "the products are similar in quality, which favors neither party." *Car-Freshner*, 980 F.3d at 334.

### 8.  Sophistication of Consumer Base

Finally, the sophistication factor favors Plaintiff.  "In general, the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace.  Likewise, the greater the value of an article, the more careful the typical consumer can be expected to be." *Tiffany*, 971 F.3d at 90.  Plaintiff notes the similar, low price point for both Plaintiff's products and Mtn Dew Rise and the fact that Plaintiff's internal surveys indicate its consumers are "driven by the perception of value."  Such "ordinary consumers of inexpensive retail products" are treated as unsophisticated for purposes of the *Polaroid* factors and trademark law, increasing the likelihood of confusion between products. *See Patsy's Brand, Inc.*, 317 F.3d at 219; *City of New York v. Henriquez*, No. 22 Civ. 3190, 2023 WL 2186340, at *23 (E.D.N.Y. Feb. 23, 2023) ("[C]onsumers of relatively inexpensive goods and consumers who make impulsive purchases are generally considered unsophisticated.").  This factor favors Plaintiff.

### 9. Weighing the *Polaroid* Factors

"[T]he evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins." *Souza*, 68 F.4th at 117 (quoting *RiseandShine II*, 41 F.4th at 124). In weighing the *Polaroid* factors, a court should "consider[] in the aggregate" the evidence proffered by the non-moving party and "should focus on the ultimate question of whether consumers are likely to be confused." *Tiffany*, 971 F.3d at 85, 91. As discussed, the balancing of the *Polaroid* factors and ultimate question of consumer confusion (or more precisely, whether a reasonable jury could find consumer confusion) is a question of law. *See Souza*, 68 F.4th at 109; *Car-Freshner*, 980 F.3d at 326.

*RiseandShine II* provides the legal framework for balancing the *Polaroid* factors applicable to this case, beginning with the Circuit's holding that the strength of the mark -- "what is often the most important factor," 41 F.4th at 119 -- weighs against Plaintiff. "Weak marks are entitled to only an extremely narrow scope of protection, unless a convincing combination of other *Polaroid* factors militates strongly in favor of likelihood of confusion." *Id.* at 124. In addition to the weakness of the mark, a lack of similarity between the parties' products can be grounds for summary judgment in and of itself. *See Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166-67 (2d Cir. 2004) ("In an appropriate case, the similarity-of-marks factor may alone be dispositive."), *superseded on other grounds as recognized in Starbucks Corp.*, 588 F.3d at 107-08.

Given this framework, the Circuit's finding as a matter of law that Plaintiff's mark is weak, its conclusion that it is "clear error" to find that the parties' products are similar and its statement that "[t]o the extent that Defendant's use of its marks caused any likelihood of confusion, this was because Plaintiff chose a weak mark in a crowded field," summary judgment is granted to Defendant, as a matter of law. *RiseandShine II*, 41 F.4th at 121, 124-25. Crediting

Plaintiff's evidence as to proximity and customer sophistication -- i.e., assuming the parties'

products are sold side-by-side and purchased by an unsophisticated consumer base -- does not

change this result.  Nor do Plaintiff's anecdotes of actual confusion between the products.  The

issue of Defendant's bad faith is not "of high relevance to the issue of likelihood of confusion."

*Virgin Enters. Ltd.*, 335 F.3d at 151.  The remaining *Polaroid* factors are insufficient to

overcome the weakness of the mark and the Circuit's finding of dissimilarity.  In short, there is

no genuine question of fact to be put to a jury on the likelihood of consumer confusion.

Defendant is therefore entitled to summary judgment on Plaintiff's federal and state trademark

and unfair competition claims, all of which incorporate the *Polaroid* factor analysis.

### B.    Unjust Enrichment

Summary judgment is granted to Defendant on Plaintiff's unjust enrichment claim.

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation

imposed by equity to prevent injustice, in the absence of an actual agreement between the

parties."  *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012).  As pleaded in the

FAC, the gravamen of Plaintiff's unjust enrichment claim is Defendant's infringing use of

Plaintiff's marks.  As discussed, Plaintiff's trademark claims under federal and New York law

fail as a matter of law.  Accordingly, there is no basis to conclude that "it is against equity and

good conscience" to allow Defendant to retain any profits from the sales of its products.  *Id.*

In opposition to the motion, Plaintiff also argues that Defendant "used its meetings with

[Plaintiff] -- under the guise of interest in acquisition -- to procure Rise's know-how on nitro."

However, neither this theory nor its underlying facts appear in the FAC and cannot be raised for

the first time in a party's briefing on summary judgment.  *See Soules v. Conn., Dep't of

Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("[A] party is not entitled to

amend its complaint through statements made in motion papers").

\*     \*     \*

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.  In connection with Defendant's motion, Plaintiff moved to strike portions of the Declaration of Thomas Britven, Defendant's expert on damages, and Defendant moved to strike or exclude the Declaration of Grant Gyesky, Plaintiff's CEO.  Both motions are **DENIED** as moot.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 378, 393, 394, 422 and 424 and to terminate the case.

Dated:  August 2, 2023
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**